# Exhibit A

# GLATFELTER HEALTH
# AND WELFARE BENEFITS PLAN

**Amendment and Restatement
Effective January 1, 2010**

CD000080

# GLATFELTER HEALTH AND WELFARE BENEFITS PLAN

**Amendment and Restatement**
**Effective January 1, 2010**

TABLE OF CONTENTS

## ARTICLE 1 DEFINITIONS

1.1    ADMINISTRATOR ........................................................................... 1
1.2    BENEFIT ACCOUNT ...................................................................... 1
1.3    BENEFIT CREDITS ........................................................................ 1
1.4    BENEFITS ....................................................................................... 1
1.5    CODE .............................................................................................. 1
1.6    COMPANY ...................................................................................... 1
1.7    COMPONENT PLAN ....................................................................... 1
1.8    DEPENDENT ................................................................................... 1
1.9    DOMESTIC PARTNER .................................................................... 4
1.10  EFFECTIVE DATE ......................................................................... 4
1.11  ELECTION FORM ........................................................................... 4
1.12  EMPLOYEE .................................................................................... 4
1.13  EMPLOYER .................................................................................... 4
1.14  ERISA ............................................................................................ 4
1.15  INSURER ........................................................................................ 5
1.16  PARTICIPANT ................................................................................ 5
1.17  PARTICIPANT ACCOUNT ............................................................. 5
1.18  PARTICIPATION DATE .................................................................. 5
1.19  PLAN .............................................................................................. 5
1.20  PLAN YEAR ................................................................................... 5
1.21  SALARIED EMPLOYEE ................................................................. 5
1.22  STATUS CHANGE ......................................................................... 5
1.23  UNION EMPLOYEE ....................................................................... 6

## ARTICLE 2 ELIGIBILITY AND PARTICIPATION

2.1    PARTICIPATION ............................................................................ 6
2.2    TERMINATION OF PARTICIPATION ............................................. 7
2.3    REHIRED EMPLOYEES ................................................................. 8

## ARTICLE 3 ELECTION OF BENEFITS

3.1    ELECTION OF BENEFITS: IN GENERAL ..................................... 8
3.2    ELECTION FORM: CONTENTS ..................................................... 8
3.3    ELECTION FORM:  INITIAL ELECTION PERIOD ......................... 8
3.4    ELECTION FORM: ELECTION PERIODS AFTER INITIAL ELECTION PERIOD ........................................................................ 9
3.5    CHANGES OF ELECTION TO REFLECT STATUS CHANGE OR TO REFLECT THE EXERCISE OF SPECIAL ENROLLMENT RIGHTS; OTHER ELECTION CHANGES .......................................................... 9

CD000081

### ARTICLE 4PARTICIPANT ACCOUNTS AND BENEFIT ACCOUNTS

4.1    PARTICIPANT ACCOUNTS AND BENEFIT ACCOUNTS ...........................16
4.2    CREDITING AND ALLOCATING ACCOUNTS ...............................................17
4.3    DEBITING OF ACCOUNTS ..............................................................................17
4.4    ACCOUNTS AS BOOK ENTRIES ONLY .........................................................17

### ARTICLE 5CREDITS AND DEBITS TO ACCOUNTS

5.1    BENEFIT CREDITS ............................................................................................17
5.2    SALARY REDUCTION CONTRIBUTIONS ......................................................17
5.3    ALLOCATIONS TO AND DEBITING OF BENEFIT ACCOUNTS .................18
5.4    CHANGES DURING PLAN YEAR ....................................................................18

### ARTICLE 6BENEFITS

6.1    AVAILABLE BENEFIT ELECTIONS .................................................................18
6.2    UNUSED BENEFIT CREDITS ...........................................................................23
6.3    INSURANCE CONTRACTS ...............................................................................23
6.4    SOURCE OF BENEFITS ....................................................................................23
6.5    MAXIMUM CONTRIBUTIONS AND BENEFITS ...........................................23
6.7    MINIMUM REIMBURSEMENT AMOUNTS ....................................................23
6.8    REQUESTS EXCEEDING ACCRUED DEPENDENT CARE FLEXIBLE
       SPENDING ACCOUNT BALANCE ....................................................................23
6.9    REQUESTS EXCEEDING ACCRUED HEALTH CARE FLEXIBLE SPENDING
       ACCOUNT BALANCE ........................................................................................24

### ARTICLE 7 HEALTH INFORMATION PRIVACY AND SECURITY

7.1    SCOPE OF ARTICLE ..........................................................................................24
7.2    PROTECTED HEALTH INFORMATION ..........................................................24
7.3    DISCLOSURE OF PROTECTED HEALTH INFORMATION TO THE
       EMPLOYER ........................................................................................................24
7.4    SEPARATION OF HEALTH PLAN AND THE COMPANY .............................26
7.5    PRIVACY NOTICE .............................................................................................26
7.6    SECURITY STANDARDS ..................................................................................26

### ARTICLE 8ADMINISTRATION

8.1    THE ADMINISTRATOR .....................................................................................27
8.2    ADMINISTRATIVE RULES AND DETERMINATIONS .................................27
8.3    DELEGATION AND RELIANCE ......................................................................28
8.4    INDEMNIFICATION AND INSURANCE..........................................................28
8.5    COMPENSATION, EXPENSES AND BOND.....................................................28
8.6    ADMINISTRATIVE EXPENSES PAID BY EMPLOYER.................................28

### ARTICLE 9CLAIMS PROCEDURES

9.1    CLAIMS PROCEDURES–IN GENERAL............................................................28
9.2    INITIAL CLAIMS ...............................................................................................29
9.3    REVIEW PROCEDURES ....................................................................................32
9.4    CALCULATION OF TIME PERIODS ................................................................34
9.5    FAILURE OF PLAN TO FOLLOW PROCEDURES..........................................34
9.6    FAILURE OF CLAIMANT TO FOLLOW PROCEDURES ...............................34
9.7    PREEMPTION OF STATE LAW ........................................................................34

CD000082

### ARTICLE 10AMENDMENT OR TERMINATION OF PLAN

10.1  AMENDMENT ...................................................................35
10.2  TERMINATION ................................................................35
10.3  REDUCTION OR TERMINATION OF BENEFITS ...................35
10.4  EFFECTIVE DATES ...........................................................35
10.5  PROCEDURE ...................................................................35

### ARTICLE 11GENERAL PROVISIONS

11.1   NO EMPLOYMENT CONTRACT ..........................................35
11.2   APPLICABLE LAW ...........................................................35
11.3   NON-ALIENATION PROVISIONS .......................................35
11.4   PAYMENTS TO INCOMPETENTS ......................................36
11.5   INABILITY TO LOCATE RECIPIENT ...................................36
11.6   PLAN COMMUNICATIONS ..............................................36
11.7   SOURCE OF BENEFITS ....................................................36
11.8   INTERPRETATION ..........................................................36
11.9   SUBROGATION ..............................................................36
11.10  MEDICARE AND MEDICAID SECONDARY PAYOR RULES.......37
11.11  NON-DISCRIMINATION AND OTHER RULES .......................37
11.12  HEALTH CARE CONTINUATION COVERAGE RULES ..............37
11.13  HIPAA RULES ................................................................37
11.14  STATUTE OF LIMITATIONS ..............................................37
11.15  COORDINATION OF BENEFITS .........................................37
11.16  HEALTHCARE INTEGRITY AND PROTECTION DATA BANK .................37
11.17  FAMILY AND MEDICAL LEAVE REQUIREMENTS ...................38
11.18  MEDICAL NECESSITY REQUIREMENT ................................38
11.19  NON-ASSIGNMENT OF BENEFITS ................................... 38
11.20  PATIENTS TO EVALUTE CARE .......................................... 38
11.21  FAMILY AND MEDICAL LEAVE REQUIREMENTS ................... 39

SCHEDULE A–HIPAA PRIVACY-TRAINED EMPLOYEES ...................................39
SCHEDULE B–REQUIRED NOTICES ...................................................40
SCHEDULE C– QUALIFIED MEDICAL CHILD SUPPORT ORDER
PROCEDURES...............................................................41
SCHEDULE D-NOTICE OF HEALTH INFORMATION PRIVACY PRACTICES... 43

<u>APPENDIX</u>

CD000083

## GLATFELTER HEALTH AND WELFARE BENEFITS PLAN

### Amendment and Restatement
### Effective January 1, 2010

### PREAMBLE

This amendment and restatement of the Glatfelter Health and Welfare Benefits Plan (the "Plan") is effective January 1, 2010.

The purpose of the Plan is to allow eligible employees of the Employer to choose benefits from among those benefits provided under the Plan.

The Plan is intended to be a "cafeteria plan" meeting the requirements of §125 of the Internal Revenue Code of 1986, as amended.

### ARTICLE 1
### DEFINITIONS

The following terms have the meanings indicated unless the context clearly requires otherwise:

1.1    ADMINISTRATOR means the Plan Administrator referred to in Article 8.

1.2    BENEFIT ACCOUNT is defined in Section 4.1.

1.3    BENEFIT CREDITS means the benefit credits, if any, allocable to a Participant in any Plan Year, as determined by the Employer, and communicated to Participants from time to time.

1.4    BENEFITS means those benefits or coverage available for election by a Participant under Article 6.

1.5    CODE means the Internal Revenue Code of 1986, as amended, together with applicable regulations and other authoritative guidance issued thereunder.

1.6    COMPANY means P.H. Glatfelter Company and any successor entity.

1.7    COMPONENT PLAN means any plan or program referred to in Article 6 and any other plan or program designated by the Company as a Component Plan.

1.8    DEPENDENT includes, and is limited to:

(a)    the spouse of a Plan Participant (or a same gender Domestic Partner of a Plan Participant who is a Salaried Employee);

(b)    a child of a Participant who is a Code Section 152 dependent who receives over half of his or her support from the Participant and who is

(i)    unmarried and under age nineteen (19); or

Page 1

CD000084

(ii)     unmarried and age nineteen (19) or over but under age twenty-five (25) and a full-time student (as defined in Code Section 152(f)(2)) in the case of a Participant who is a Salaried Employee; or

(iii)     unmarried and age nineteen (19) or over but under age twenty-three (23) and a full-time student (as defined in Code Section 152(f)(2)) in the case of a Participant who is a Union or a Pulpwood Non-Union Hourly Employee working at the Spring Grove, Pennsylvania operation; or

(iv)     unmarried and age nineteen (19) or over but under age twenty-five (25) in the case of a Participant who is a Union Employee working at the Chillicothe, Ohio operation; or

(v)     physically or mentally incapable of self-support, regardless of the child's age, provided the child became physically or mentally incapable of self-support before reaching age nineteen (19) (or age twenty-five (25) if the child was enrolled as a full-time student when he or she became incapable of self-support);

(c)     any child of a Participant who does not qualify as a Dependent under Section 1.8(b) above solely because the child is not primarily dependent upon the Participant for support, so long as the child's principal place of abode is the same as that of the Participant for more than half of the applicable tax year of the Participant and the child does not provide more than half of his or her own support during the calendar year in which the applicable tax year of the Participant begins;

(d)     any child of a Participant who is a Code Section 152 dependent but who does not qualify as a Dependent under Section 1.8(b) above solely because the child is not primarily dependent upon the Participant for support, so long as either (i) over half of the support of the child is treated as having been received from the Participant pursuant to a multiple support agreement as described in Code §152(d)(3) or (ii) the Participant is entitled to claim the child as a dependent under Code §151 pursuant to an agreement with a spouse or former spouse described in Code §152(e); and

(e)     any other person who is a Code Section 152 dependent and whose welfare is the legal responsibility of the Participant pursuant to a written divorce settlement, written separation agreement, court order or order by an administrative process having the force and effect of State law.

For purposes of this Section 1.8, the word "child" includes natural children, legally adopted children who are under eighteen (18) years of age at the time of the adoption, eligible foster children (as defined in Code Section 152(f)(1)(C), but limited to eligible foster children who are not wards of the state), stepchildren, children of a Domestic Partner who live with the Employee and children placed for adoption who are under eighteen (18) years of age at the time of the placement. Notwithstanding any provision of this Plan to the contrary, Dependent also includes any child of a Domestic Partner or a same-sex spouse of the Participant (in the case of a Salaried Employee only) who, without regard to this sentence, would qualify as a Dependent under this Section if the Domestic Partner or same-sex spouse qualified as the Participant's spouse for purposes of federal law and the child was treated as a stepchild of the Participant.

Notwithstanding any provision of this Plan to the contrary, for purposes of any Health Care Flexible Spending Account Component Plan, "Dependent" means a participant's spouse (determined under federal law) or a Code Section 152 dependent and, for purposes of any Dependent Care Flexible Spending Account Component Plan, "Dependent" means a "Qualifying Individual", as defined in Section 6.1(l)(v).

CD000085

For purposes of this Section 1.8, "Code Section 152 dependent" means anyone who is a dependent of the Participant, for the applicable tax year of the Participant, under Code §152(a) (determined, for purposes of any Component Plan providing accident or health benefits, without regard to subsections (b)(1), (b)(2) and (d)(1)(B) of Code Section 152).

An individual is physically or mentally incapable of self-care if, because of a physical or mental defect, he or she is incapable of caring for his or her own hygiene or nutritional needs, or requires full-time attention of another person for his or her own safety or the safety of others.

Notwithstanding the preceding, "Dependent" does not include any person (other than the Participant's spouse (determined under federal law)), who is not a citizen or national of the United States unless he or she is a resident of the United States, Canada or Mexico. However, the preceding sentence shall not apply to exclude a legally adopted child of the Participant from the definition of Dependent, if, for the applicable tax year of the Participant, the child is a member of the Participant's household whose principal place of abode is in the Participant's home and the Participant is a citizen or national of the United States.

For purposes of this Plan, a person is a Salaried Employee's "spouse" only if he or she is treated as a "spouse" under applicable law (in the State described in the next sentence) because of (i) a marriage, including a "common law" marriage, or (ii) a civil union ceremony or similar ceremony or process that is generally treated as the legal equivalent of marriage in the State in which it occurred. The Administrator will determine whether a person is a spouse pursuant to the preceding sentence by referring to (and interpreting, in its discretion, as needed) applicable law of the State in which the Salaried Employee resides, except that, if the marriage or ceremony would not be recognized under applicable law of that State solely because that State does not recognize same-sex marriages, the person will be considered the Salaried Employee's spouse. For purposes of this Plan, an Union Employee's spouse is the person of the opposite sex, if any, who is legally married (including as a result of a "common law" marriage, if applicable) to the Union Employee under applicable State law in the State in which the Union Employee resides, as determined by the Administrator. For purposes of this Section 1.8, "State" includes the District of Columbia, Puerto Rico, Guam, the Virgin Islands and American Samoa. If an Employee does not reside in a State, the Employer will apply the requirements of this paragraph as if the Employee resides in the State described in Section 11.2.

In addition, a spouse, Domestic Partner, or child will not otherwise qualify as an eligible dependent if he or she is on active duty in the armed forces of any country. Finally, a person otherwise qualifying as an eligible dependent will not be covered for any coverage providing benefits to dependents unless the Participant has elected to pay and has paid the required additional contributions, if any, for dependent coverage.

Notwithstanding any other provision of this Plan, for purposes of any Component Plan (other than a Health Care Flexible Spending Account) that provides health benefits (as determined by the Employer), if a Dependent of an Employee is also an Employee, he or she may not be covered as both a Dependent and a Participant at the same time.

If a child would otherwise be a Dependent of more than one Participant, the child may be treated as the Dependent of only one Participant.

In determining whether a person qualifies as a Dependent of the Participant under this

Page 3

CD000086

Section, the Administrator may require a Participant to provide adequate evidence (as determined by the Administrator) that the person meets the applicable requirements of this Section. The Administrator, in its discretion, may also conclusively rely on representations from a Participant with regard to any applicable requirement, unless it is unreasonable to do so under the circumstances.

1.9    DOMESTIC PARTNER means any person who qualifies as the Domestic Partner of a Salaried Employee under the Employer's Domestic Partner Policy, which is incorporated into the Plan's Appendix by this reference, but only while he or she continues to qualify as a Domestic Partner. Notwithstanding the preceding sentence or any provision of this Plan to the contrary, no person who is the spouse of an Employee (as determined by the Administrator pursuant to Section 1.8) will be treated as a Domestic Partner for any purpose under the Plan.

1.10    EFFECTIVE DATE means the effective date of this amendment and restatement, January 1, 2010.

1.11    ELECTION FORM means the form provided by or process designated by the Administrator by which an Employee or a Participant enrolls or re-enrolls in the Plan and elects Benefits in accordance with Article 3.

1.12    EMPLOYEE means (i) a Union Employee, (ii) a Salaried Employee or (iii) a person who has retired from the Employer who (a) worked for the Employer in the Pennsylvania operations and was age fifty-five (55) or older and had at least ten (10) years of service (as determined by the Employer) as of the date or his or her retirement, or (b) worked for the Employer in the Ohio operations and was age fifty-five (55) or older and had at least five (5) years of service (as determined by the Employer) as of the date of his or her retirement. Notwithstanding the foregoing, the term Employee shall not include (a) any employee of the Employer (other than a Union Employee) who is a member of a collective bargaining unit covered under a collective bargaining agreement unless the collective bargaining agreement provides for the employee's participation in the Plan, or (b) any leased employee of the Employer, or (c) any person who is not classified by the Employer as a common law employee of the Employer for the period during which the person is not so classified by the Employer notwithstanding the later reclassification by a court or any regulatory agency of the person as a common law employee of the Employer or (d) any person classified by the Employer as a temporary employee of the Employer (as determined by the Employer). In addition, if the Employer is or at any time becomes a sole proprietorship, a partnership, a limited liability company (taxed for federal income tax purposes as a partnership), a limited liability partnership or a subchapter S corporation, sole proprietors, partners, limited liability company principals, limited liability partners and 2% shareholders (as defined in Code §1372(b)) may not participate in the Code §125 salary reduction feature of the Plan.

1.13    EMPLOYER means the Company and any other entity which, with the consent of the Board of the Company, adopts the Plan by action of its Board.

1.14    ERISA means the Employee Retirement Income Security Act of 1974, as amended, together with applicable regulations and other authoritative guidance issued pursuant to that Act.

1.15    INSURER means any insurance company to which premiums are paid and which provides benefits with respect to a Participant in accordance with Article 6.

1.16    PARTICIPANT means an Employee who becomes a Participant pursuant to Article 2.

CD000087

1.17    PARTICIPANT ACCOUNT is defined in Section 4.1.

1.18    PARTICIPATION DATE is the first date on which an Employee may participate in the Plan (or a particular Component Plan, if applicable), as set forth in Section 2.1.

1.19    PLAN means, collectively, the Glatfelter Health and Welfare Benefits Plan, as described in this document and as amended from time to time, and the Component Plans.

1.20    PLAN YEAR means the twelve (12) consecutive month period beginning each January 1 and ending each December 31.

1.21    SALARIED EMPLOYEE means any person employed by the Employer who is compensated on a salary basis and who is a regular (a) full-time salaried employee of the Employer (as determined by the Employer), (b) part-time salaried employee of the Employer regularly scheduled to work more than thirty (30) hours per week for the Employer (as determined by the Employer), (c) non-union full-time hourly employee of the Employer (as determined by the Employer) or (d) non-union part-time hourly employee of the Employer regularly scheduled to work more than thirty (30) hours per week for the Employer (as determined by the Employer).

1.22    STATUS CHANGE means, and is limited to:

(a)    an event that changes an Employee's legal marital status, including marriage, death of spouse, divorce, legal separation, or annulment;

(b)    an event that changes an Employee's number of Dependents, including the birth, adoption, placement for adoption (as defined in regulations under Code §9801) or death of a Dependent;

(c)    an event that changes the employment status of an Employee or the Employee's Dependent including the termination or commencement of employment by the Employee or the Employee's Dependent, the change in worksite of the Employee or the Employee's Dependent, the reduction or increase in hours of employment (including a switch between part-time and full-time employment, a strike or lockout, or commencement or return from an unpaid leave of absence) of the Employee or the Employee's Dependent and any change in the employment status of an Employee or the Employee's Dependent that results in that person becoming (or ceasing to be) eligible under a plan sponsored by that person's employer;

(d)    an event that causes the Employee's Dependent to satisfy or cease to satisfy the requirements for coverage due to attainment of age, student status, or any similar circumstance as provided in the Component Plan(s) under which the Employee is covered;

(e)    the change in location of the residence of the Employee or the Employee's Dependent;

(f)    for purposes of a Component Plan offering dependent care assistance benefits, an event that changes the number of Qualifying Individuals, as defined in Section 6.1(l)(v); or

(g)    for any election that is not accomplished on a pre-tax basis, any other

CD000088

event that, in the Administrator's sole discretion, qualifies as a Status Change.

1.23    UNION EMPLOYEE means any person employed by the Employer in the Ohio operations or at the Spring Grove, Pennsylvania operation who is (a) compensated on an hourly basis and (b) a member of the United Steelworkers of America Local 731, the United Steelworkers of America Local 988, the United Steelworkers of America Local 10-1303 or the Office and Professional Employees International Union, AFL-CIO Local 422.

## ARTICLE 2
## ELIGIBILITY AND PARTICIPATION

2.1    PARTICIPATION Each Employee is eligible to participate in the Plan beginning on the later of the Effective Date or his or her "Participation Date," which will be the day after the Employee completes thirty (30) days of continuous employment with the Employer. However, individual Component Plans may impose certain eligibility and participation requirements as provided therein. Notwithstanding the preceding, a part-time employee is not eligible to receive Short Term Disability coverage or Long Term Disability coverage under the Plan.

Each Employee will become a Participant on his or her "Participation Date", provided that the Employee completes and submits an Election Form on or before that date, or is deemed to be enrolled in the Plan pursuant to Section 3.3(b), and provided further that the Employee is an active Employee on that date, as determined by the Employer. If an Employee does not become a Participant on his or her "Participation Date", the Employee shall become a Participant on the first day of a Plan Year following his or her completion and submission of an Election Form or, if applicable, the date of coverage resulting from an election pursuant to Section 3.5; provided, however, that, except in the case of Component Plans providing medical coverage, any Employee who does not become a Participant on the earliest possible date under the Plan, and his or her Dependents, may be required by the Employer, at his or her own expense, to submit such proof of good health as the Employer, in its discretion, may require before the Participant or Dependent, as applicable, commences participation in the Plan. The Dependents of a Participant are eligible for benefits under the Plan through and only through the Participant.

This paragraph applies only for purposes of Component Plans providing health benefits that are subject to the Health Insurance Portability and Accountability Act of 1996. For purposes of satisfying the Plan's continuous employment requirement (as described in this Section 2.1), if an Employee is absent from work because of a health condition, any service performed immediately before that absence (and not interrupted by any other type of absence) will apply toward the continuous employment requirement and will be added to any service completed (and not interrupted by any other type of absence) after the absence due to health condition ends. Also, for purposes of the Plan's requirement that an Employee be an active Employee on his or her Participation Date to become a Participant, an Employee who has commenced employment but who is absent from work on his or her Participation Date because of a health condition, will be treated as an active Employee on that date.

CD000089

2.2    <u>TERMINATION OF PARTICIPATION</u>

(a)    A Participant's participation in the Plan terminates on the earliest of the following dates (except for Chillicoth Ohio Union participants, which terminate on the last day of the month in which their employment terminates):

(i)    The day on which the Participant terminates employment (unless the Participant is otherwise eligible to participate in the retiree Component Plan).

(ii)    The day on which the Participant ceases to qualify as an Employee or a Participant.

(iii)    For any coverage requiring Participant contributions, if those contributions are discontinued, the last day of the period for which contributions by the Participant are paid.

(iv)    The 30th day after which the Participant reports for active duty as a member of the armed forces of any country.

(v)    The day on which all benefits, or the applicable benefit(s), are terminated by amendment of the Plan, by whole or partial termination of the Plan or by discontinuation of contributions by the Employer.

(b)    A Dependent's participation in the Plan terminates on the earliest of the following dates:

(i)    The day on which the Participant terminates employment (unless the Dependent is otherwise eligible to participate in the retiree Component Plan).

(ii)    The day on which the Participant ceases to qualify as an Employee or a Participant.

(iii)    For any coverage requiring Participant contributions, if those contributions are discontinued, the last day of the period for which contributions by the Participant are paid.

(iv)    The day on which the Dependent reports for active duty as a member of the armed forces of any country.

(v)    The day on which all benefits, or the applicable benefit(s), are terminated by amendment of the Plan, by whole or partial termination of the Plan, by exclusion of the applicable benefit(s), or all benefits, as to Dependents, or by discontinuation of contributions by the Employer.

(vi)    The day on which the Dependent ceases to be a Dependent.

(viii)    For Dependents of a deceased Chillicothe Ohion Union Employee, coverage terminates the last day of the month in which the death occurs.   Beginning 2/1/2010, Dependents of a deceased Chillicothe Ohion Union Employee, coverage terminates sixty (60) days

CD000090

following the last day of the month in which the death occurs.

(viiii) Exception: Surving Spouses and Depednents may remain eligible to participate after the Employee's death as specified in their Summary Plan Description (SPD).

Notwithstanding the preceding, if a Participant takes a leave of absence from employment with the Employer by reason of "service in the uniformed services" as defined in section 4303(b)(13) of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), he or she may elect to continue to participate in the Plan to the extent required by USERRA with respect to the Participant and his or her Dependents, if any. Such a Participant shall be required to pay for such coverage in an amount as determined under USERRA section 4317(a)(1)(B). The coverage for such a Participant and his or her Dependents, shall end upon the earlier of: (1) the last day of the twenty-four (24) month period beginning on the date on which the Participant's absence begins; or (2) the day after the date on which the Participant fails to apply for or return to a position of employment with the Employer as determined under USERRA section 4312(e).

Notwithstanding the preceding, if a Participant or a Dependent is eligible for and elects continuation coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") or any similar State law, he or she will remain a participant for purposes of any Component Plan under which continuation coverage is elected while that continuation coverage remains in effect, as determined by the Administrator pursuant to applicable law.

2.3    REHIRED EMPLOYEES    For purposes of Section 2.1, if a former Participant once again becomes an Employee, his or her Participation Date will be determined under Section 2.1 without regard to any previous period of employment.

Notwithstanding the preceding, if a former Participant again becomes an Employee within thirty (30) days after his or her employment terminated and during the same Plan Year, he or she may not make a new Code §125 pre-tax salary reduction election until the election period for the next Plan Year, except (i) to the extent that an earlier election change is permitted under Section 3.5 (because of some event other than the termination of employment and rehiring) or (ii) to the extent that an election change would have been permitted during an election period that occurred pursuant to Section 3.4 during the period beginning with the Employee's termination of employment and ending on the date he or she again became an Employee.

## ARTICLE 3
## ELECTION OF BENEFITS

3.1    ELECTION OF BENEFITS: IN GENERAL    An Employee may elect, on his or her Election Form and in accordance with the following provisions of this Article, any one or more of the Benefits available under Article 6.

3.2    ELECTION FORM: CONTENTS    An Employee's Election Form shall contain such information as the Administrator may deem appropriate.

3.3    ELECTION FORM:  INITIAL ELECTION PERIOD

(a)    In General.  An Employee who becomes eligible to become a Participant must complete, sign and file an initial Election Form with the Administrator during the period preceding

CD000091

his or her Participation Date (as defined in Section 2.1) that is identified by the Administrator as the Employee's initial "enrollment period" to enroll during his or her initial coverage period. Such an Employee's initial coverage period is the period beginning on his or her Participation Date and ending on the last day of the Plan Year in which falls the Participation Date. The elections made by the Employee on this initial Election Form shall be effective, subject to Section 3.5, for the period beginning on the Participant's Participation Date and ending on the last day of the Plan Year during which the Participant changes his or her initial elections pursuant to Section 3.4.

(b)     Employees Who Fail to File an Initial Election Form. An eligible Employee who fails to complete, sign and file an Election Form with the Administrator in accordance with Section 3.3(a) above before his or her initial coverage period will automatically receive Employer-paid Life Insurance/Accidental Death & Dismemberment, Business Travel Accident, Employee Assistance Plan, Short Term Disability and Long Term Disability, but he or she will not participate automatically in any other portion of the Plan. Such an Employee may become a Participant in other features of the Plan on a later date in accordance with Sections 3.4 or 3.5. Notwithstanding anything in this Plan to the contrary, part-time employees regularly scheduled to work more than thirty (30) hours per week, but less than forty (40) hours per week (as determined by the Employer) shall not be eligible for Short Term Disability or Long Term Disability coverage under the Plan.

3.4     ELECTION FORM: ELECTION PERIODS AFTER INITIAL ELECTION PERIOD
A Participant's initial elections shall continue indefinitely, subject to Section 3.5. Notwithstanding the preceding, a Participant may change his or her initial elections for any subsequent Plan Year by requesting, completing and submitting a new Election Form for the applicable Plan Year during the period preceding the applicable Plan Year that is identified by the Administrator as the Plan's annual "election period". The elections made by the Participant on each such Election Form shall be effective, subject to Section 3.5, beginning on the first day of the Plan Year following the applicable election period and continuing until such elections are changed pursuant to this Section. Notwithstanding the preceding, with respect to any Component Plan under which the Employee becomes ineligible following the completion of an Election Form with respect to such Component Plan, the election made by the Participant on each such Election Form shall not remain in effect beyond the date on which the Employee becomes ineligible. If a Participant fails to complete and submit an Election Form during the Plan's annual "election period", he or she will be deemed to have elected the same Benefits and coverage then in effect for that Participant, at the cost determined by the Employer; provided, however, that the Employee shall not be deemed to have elected any coverage under the Health Care Flexible Spending Account or the Dependent Care Flexible Spending Account.

3.5     CHANGES OF ELECTION TO REFLECT STATUS CHANGE OR TO REFLECT THE EXERCISE OF SPECIAL ENROLLMENT RIGHTS; OTHER ELECTION CHANGES

(a)     Status Change Rules. Within thirty (30) days after a Status Change occurs, a Participant may, with the approval of and pursuant to guidelines established by the Administrator, change his or her election of Benefits, and any salary reduction agreement referenced in Section 5.2, in a manner which is Consistent (as defined in Section 3.5(b)) with the Status Change.

With the approval of and pursuant to guidelines established by the Administrator, an Employee who is eligible to become a Participant but has failed to complete an Election Form may become a Participant and file an Election Form within thirty (30) days after a Status Change occurs, provided that the Employee's commencement of participation and election of Benefits is Consistent (as defined in Section 3.5(b)) with the Status Change.

Page 9

Elections made under this Section take effect as soon as practicable after the date the eligible Employee has properly filed his or her Election Form and the election has been approved by the Administrator (or on such other date specified by the Administrator), and remain in effect until the earlier of (i) the end of the Plan Year in which the Participant makes an election pursuant to Section 3.4 (or, in the case of elections relating to a Health Care Flexible Spending Account or a Dependent Care Flexible Spending Account, the end of the Plan Year in which the election is made), (ii) the date on which the Employee becomes ineligible for coverage under any Component Plan, or (iii) the date the Employee again changes his or her election in accordance with the Plan's procedures. Except for a change permitted under Section 3.5(c)(ii) because of a birth, adoption or placement for adoption, any change permitted by this Section 3.5 to an Employee's salary reduction agreement under Section 5.2 may be made on a prospective basis only and may not be used to fund costs of coverage provided before the effective date of such a change.

(b)    "Consistent" Defined.  Except as otherwise provided in this Section 3.5(b), an election change is "Consistent" with a Status Change only if the election change is on account of and corresponds with a Status Change that affects the Employee's or the Employee's Dependent's eligibility for coverage under an employer's plan. An election change to decrease or cancel coverage under a Component Plan is not Consistent with a Status Change because of an Employee or a Dependent becoming eligible for coverage under an employer's plan unless the Employee or Dependent actually elects such coverage. In determining whether an election change is Consistent for purposes of the preceding sentence, the Employer may rely on the Employee's certification that alternative coverage has been or will be obtained, unless the Employer has reason to question the accuracy of that certification.

Notwithstanding the above, all election changes by Employees with respect to Component Plans offering group term life insurance or disability coverage that are made upon the occurrence of Status Changes are automatically deemed to be Consistent with those Status Changes. For purposes of the preceding sentence, "disability coverage" means coverage under a Component Plan that provides benefits due to personal injury or sickness, but does not reimburse expenses incurred for medical care. Disability coverage also includes coverage that provides benefits because of the permanent loss or loss of use of a member or function of the body, or because of permanent disfigurement, if such coverage is provided without regard to the period that the Participant is absent from work.

An election change with respect to a Component Plan offering dependent care assistance or adoption assistance benefits is also Consistent with a Status Change if the election change is on account of and corresponds with a Status Change that affects expenses covered under that Component Plan.

(c)    Special Enrollment Rights.  This Section 3.5(c) applies notwithstanding any other provision of this Plan to the contrary. For purposes of the remainder of this Section 3.5(c) only, "Plan" refers only to coverage under the Component Plan(s) that offer medical benefits and that are subject to Code section 9801 (as determined by the Administrator). This Section 3.5(c) is included in the Plan to comply with the requirements of Code section 9801 and ERISA section 701 and any regulations or other authoritative guidance issued pursuant to those provisions and will be construed to provide only those enrollment rights that are required by those provisions, regulations or other authoritative guidance.

Notwithstanding any provision of this Plan to the contrary, for purposes of this

CD000093

Section 3.5(c), "Employee" is defined as described in Section 1.12, except that "Employee" does not include any person who is not, at the applicable time, a current employee of the Employer (as determined by the Employer).

(i)     Special Enrollment Rights Because of Loss of Alternative Coverage. An Employee or a Dependent who is otherwise eligible for coverage under the Plan (including, for an Employee's Dependent, any requirement that the Employee also be enrolled in the Plan) is eligible to enroll in the Plan during a Special Enrollment Period, as described in this Section 3.5(c)(i), if,

(A)     when coverage under the Plan was previously offered (e.g., during an initial enrollment period, a Special Enrollment Period or, if applicable, an open enrollment period), the Employee or Dependent had coverage under another group health plan or health insurance coverage ("Alternative Coverage"), and

(B)     the Employee or the Dependent satisfies one of the following conditions:

(1)     the Alternative Coverage is not COBRA continuation coverage and the Alternative Coverage terminates because of a "Loss of Eligibility" (as described later in this Section 3.5(c)(i));

(2)     the Alternative Coverage is not COBRA continuation coverage and employer contributions (including contributions by any current or former employer of the Employee or Dependent) toward the Employee's or Dependent's Alternative Coverage terminate; or

(3)     the Alternative Coverage is COBRA continuation coverage and the Alternative Coverage terminates because the COBRA continuation coverage is exhausted (as described later in this Section 3.5(c)(i)).

"Loss of Eligibility" includes, but is not limited to, a loss of eligibility because of legal separation, divorce, cessation of dependent status, death of an employee, termination of employment or a reduction in the number of hours of employment. For Alternative Coverage offered through an HMO or another arrangement that does not provide benefits to individuals who no longer reside or work in a service area, "Loss of Eligibility" also includes a loss that occurs because the Employee or Dependent no longer lives or works in the applicable service area (unless the HMO or other arrangement is part of a group plan that makes another benefit option available to the affected Employee or Dependent). In addition, a "Loss of Eligibility" occurs if an individual incurs a claim that would meet or exceed a lifetime limit on all benefits under the Alternative Coverage or if the Alternative Coverage no longer offers any benefits to the class of similarly situated individuals that includes the Employee or Dependent.

"Loss of Eligibility" for purposes of this Section 3.5(c)(i) does not include a loss of coverage because of a failure of the Employee or Dependent to pay for coverage on a timely basis or a loss of coverage for cause (such as for making a fraudulent claim or a misrepresentation of a material fact in connection with the Alternative Coverage).

For purposes of this Section 3.5(c)(i), exhaustion of COBRA coverage occurs when COBRA coverage ceases for any reason other than a failure of the Employee or Dependent to pay premiums on a timely basis or for cause. Exhaustion of COBRA coverage

CD000094

occurs when COBRA coverage ceases because an employer or other responsible party fails to remit premiums on a timely basis. For COBRA coverage provided through an HMO or another arrangement that does not provide benefits to individuals who no longer reside or work in a service area, exhaustion of COBRA coverage also occurs if coverage ceases because the Employee or Dependent no longer lives or works in the applicable service area (unless other COBRA coverage is available). In addition, exhaustion of COBRA coverage occurs if an individual incurs a claim that would meet or exceed a lifetime limit on all benefits and no other COBRA coverage is available to the individual.

If an Employee loses eligibility for Alternative Coverage (or exhausts COBRA Alternative Coverage), the Employee (and each otherwise eligible Dependent) is eligible for special enrollment during the Special Enrollment Period. If a Dependent loses eligibility for Alternative Coverage (or exhausts COBRA Alternative Coverage), only the Employee and any Dependent who loses eligibility for Alternative Coverage (or exhausts COBRA Alternative Coverage) is eligible for special enrollment. In any case, special enrollment rights are subject to any Plan eligibility rules that condition Dependent eligibility on enrollment of the Employee.

An Employee or a Dependent who is eligible for a special enrollment under this Section 3.5(c)(i) may be enrolled in the Plan, and the Employee may make a corresponding change in a salary reduction agreement under Section 5.2, if any, during the Employee's or Dependent's Special Enrollment Period. The Special Enrollment Period under this Section 3.5(c)(i) ends thirty (30) days after the termination of the Alternative Coverage. Notwithstanding the preceding, if the loss of coverage results from an individual reaching a lifetime limit on all benefits, the Special Enrollment Period ends thirty (30) days after a claim is denied because of the lifetime limit, except that, if the loss of coverage is exhaustion of COBRA coverage, the Special Enrollment Period ends thirty (30) days after the individual incurs a claim that would exceed the lifetime limit on all benefits.

Following an election by an Employee under this Section 3.5(c)(i), the Employee's or Dependent's coverage will become effective no later than the first day of the first month that begins after the Administrator receives an Election Form submitted during the Special Enrollment Period electing coverage for the Employee or Dependent under the Plan. A Special Enrollment Period election will be treated as an initial election of coverage pursuant to Section 3.3 and is subject to all Plan provisions that apply to initial elections, except that coverage begins only as described in this paragraph.

If an Employee declines coverage for the Employee or for any Dependent because the Employee or the Dependent is covered under Alternative Coverage, the Employer may require that the Employee provide a written statement at the time that coverage is declined stating that the Employee is declining coverage under the Plan for the Employee or for a Dependent because the Employee or the Dependent has Alternative Coverage. Notwithstanding any other provision of this Section 3.5(c)(i), if the Employer requires such a written statement and informs the Employee of the requirement (and of the consequences of failing to provide the statement), an Employee who fails to provide such a statement will not be treated as being entitled to a special enrollment right for the Employee or the Dependent under this Section 3.5(c)(i).

(ii)    <u>Special Enrollment Rights Following Marriage, Birth or Adoption</u>. Following the marriage of an Employee or a Participant, the birth of a child, or the adoption or placement for adoption of a child, the Employee, the Employee's Dependent or the Participant's Dependent, as applicable, may enroll in the Plan during a Special Enrollment Period, as follows:

CD000095

(A)    An otherwise eligible Employee may enroll himself or herself in the Plan, and make a corresponding change to a salary reduction agreement under Section 5.2, if any, during the Special Enrollment Period described in this Section 3.5(c)(ii) if an individual becomes a Dependent of the Employee through marriage, birth, adoption or placement for adoption.

(B)    An active Participant may enroll an individual who becomes or is his or her spouse (determined under federal law) and make a corresponding change to a salary reduction agreement under Section 5.2, if any, during the Special Enrollment Period described in this Section 3.5(c)(ii) if either (I) the individual becomes the Participant's spouse or (II) the individual is the Participant's spouse and a child becomes a Dependent of the Participant through birth, adoption or placement for adoption.

(C)    An otherwise eligible Employee may elect to enroll in the Plan the Employee and an individual who becomes or is his or her spouse (determined under federal law) and make a corresponding change to a salary reduction agreement under Section 5.2, if any, during the Special Enrollment Period described in this Section 3.5(c)(ii) if (I) the Employee and the individual become married or (II) the Employee and the individual already are married and a child becomes a Dependent of the Employee through birth, adoption or placement for adoption.

(D)    An active Participant may enroll an individual in the Plan and make a corresponding change to a salary reduction agreement under Section 5.2, if any, during the Special Enrollment Period described in this Section 3.5(c)(ii) if the individual becomes a Dependent of the Participant through marriage, birth, adoption or placement for adoption.

(E)    An otherwise eligible Employee may elect to enroll the Employee and an individual who becomes a Dependent of the Employee in the Plan, and make a corresponding change to a salary reduction agreement under Section 5.2, if any, during the Special Enrollment Period described in this Section 3.5(c)(ii) if the individual becomes a Dependent of the Employee through marriage, birth, adoption or placement for adoption.

The Special Enrollment Period under this Section 3.5(c)(ii) begins on the date of the marriage, birth, adoption or placement for adoption that gives rise to the Special Enrollment Period (or, if later, on the Participant's Participation Date) and ends thirty (30) days after that date. Following an election during a Special Enrollment Period for coverage under the Plan, the coverage will be effective, (A) in the case of a marriage, on a date specified by the Administrator that is no later than the first day of the first month beginning after the date the Employee submits to the Administrator an Election Form electing coverage for the Employee or Dependent under the Plan, (B) in the case of a Dependent's birth, on the date of birth, and, (C) in the case of a Dependent's adoption or placement for adoption, on the date of the adoption or placement for adoption. A Special Enrollment Period election will be treated as an initial election of coverage pursuant to Section 3.3 and is subject to all Plan provisions that apply to initial elections, except that coverage begins only as described in this paragraph.

For purposes of this Section 3.5(c)(ii), "marriage" is limited to a marriage that is recognized as a marriage for purposes of federal law.

(d)    <u>Significant Changes in Cost or Coverage</u>.  Any election change permitted under this Section 3.5(d) must be requested, pursuant to procedures established by the Administrator, within a reasonable time after the date of the event giving rise to the right to make the election

CD000096

change (as determined by the Administrator).

(i)    <u>Significant Cost Changes</u>.  If the cost payable by an Employee for coverage offered under a Benefit option significantly changes during a Plan Year, as determined by the Employer, the Employee may make corresponding changes to his or her election of Benefits and to a salary reduction agreement under Section 5.2, with the exception that they may not make changes to their Health Care Flexible Spending Account as a result of a siginficant cost change.  If the change is an increase in the Employee's cost of that coverage, an Employee who is a Participant may elect to replace his or her coverage with coverage available under another Benefit option, if any, that offers similar coverage, as determined by the Employer, or, if no other similar Benefit option is available, a Participant may drop the coverage.  If the change is a decrease in the Employee's cost of coverage under a Benefit option, a Participant or an Employee who is eligible to become a Participant may elect that coverage.

For purposes of the preceding paragraph, a cost increase or decrease means an increase or decrease in the amount of the Employee's cost for a Benefit option regardless of whether the increase or decrease results from an action taken by the Employee or from an action taken by the Employer.

Notwithstanding anything else in this Section 3.5(d)(i), for any change in costs associated with a Dependent Care Flexible Spending Account or any other Component Plan that is a dependent care assistance program described in §129 of the Code, an Employee may not change a salary reduction agreement or election of Benefits if the cost change is imposed by a dependent care provider who, with respect to the Employee, is a parent, grandparent, child, grandchild, brother, sister, niece, nephew, stepparent, stepchild, stepbrother, stepsister, son-in-law, daughter-in-law, mother-in-law, father-in-law, sister-in-law or brother-in-law.

(ii)    <u>Coverage Changes</u>.

(A)    <u>Curtailment Without Loss of Coverage</u>.  If a Participant or a Participant's Dependent experiences a significant curtailment of coverage under a Benefit option that is not a loss of coverage (under applicable law, as determined by the Employer), the Participant may elect to revoke his or her election of that Benefit option and, in lieu of that coverage, elect to receive coverage under another Benefit option, if any, that offers similar coverage, as determined by the Employer, and may make corresponding changes to a salary reduction agreement under Section 5.2. Coverage under a Benefit option is significantly curtailed only if there is an overall reduction in coverage that constitutes reduced coverage to Participants generally, as determined by the Employer.

(B)    <u>Loss of Coverage</u>.  If a Participant or a Participant's Dependent experiences a significant curtailment of coverage under a Benefit option that is a loss of coverage (under applicable law, as determined by the Employer), the Participant may elect to revoke his or her election of that Benefit option and, in lieu of that coverage, elect to receive coverage under another Benefit option, if any, that offers similar coverage, as determined by the Employer, and may make corresponding changes to a salary reduction agreement under Section 5.2.  If no similar coverage is available to replace the Benefit option for which a loss of coverage occurred, a Participant may elect to drop the coverage.

For purposes of this Section 3.5(d)(ii), "loss of coverage" means a complete loss of coverage under a Benefit option and includes, for example, the elimination of a Benefit option, the loss of availability of an HMO option in the area where the Participant or

CD000097

Dependent resides, a Participant's or Dependent's loss of coverage under a health plan option because expenses exceed an annual or lifetime limit and other similar events, as determined by the Employer. In addition, the Employer, in its discretion, may elect to treat as a loss of coverage any of the following: (1) a substantial decrease in the medical care providers available under the Benefit option; (2) with regard to a specific Participant or Dependent, a reduction in benefits provided under a health plan for a specific type of medical condition or treatment with respect to which the Participant or Dependent is currently in a course of treatment; or (3) any similar fundamental loss of coverage.

        (C)     <u>Addition of Option</u>. If the Employer adds a new Benefit option or if coverage under an existing Benefit option is significantly improved during a Plan Year, as determined by the Employer, a Participant who elected a Benefit option for the Plan Year that provides similar coverage, as determined by the Employer, may change his or her election of Benefits to replace that Benefit option with the new or improved Benefit option and may make corresponding changes to a salary reduction agreement under Section 5.2, if applicable. Any Participant, or any Employee who is eligible to become a Participant, who did not elect any Benefit option for the Plan Year that provides coverage similar to that offered under a new or improved Benefit option, as determined by the Employer, may change his or her election of Benefits to elect the new or improved Benefit option and may make corresponding changes to a salary reduction agreement under Section 5.2, if applicable.

        (iii)     <u>Changes Under Another Employer's Plan</u>. A Participant, or an Employee who is eligible to become a Participant, may change his or her election of Benefits and salary reduction agreement under Section 5.2 on account of and corresponding to (A) an election change made during a period of coverage by a Dependent or a former spouse under a plan sponsored by that person's employer, if the change is one that is permitted under that employer's plan under provisions similar to the provisions in this Section 3.5, or (B) an election change made by a Dependent or a former spouse under a plan sponsored by that person's employer that corresponds to a period of coverage that is different from the Plan Year.

        (iv)     <u>Loss of Other Group Health Coverage</u>. If a Participant, or an Employee who is eligible to become a Participant, or his or her Dependent loses coverage under any group health coverage sponsored by a governmental entity or educational institution, the Participant or Employee may change his or her election of Benefits and salary reduction agreement under Section 5.2 to elect coverage for the affected individual.

        Nothing in this Section 3.5(d) shall be construed to permit a change to an Employee's election of Benefits or salary reduction agreement under Section 5.2 with respect to a Health Care Flexible Spending Account or to permit a change of election with respect to any Component Plan because of cost or coverage changes associated with a health care flexible spending account sponsored by any employer of an Employee or a Dependent.

        (e)     <u>Other Election Changes</u>. Any election change permitted under this Section 3.5(e) must be requested, pursuant to procedures established by the Administrator, within a reasonable time after the date of the event giving rise to the right to make the election change (as determined by the Administrator).

        (i)     <u>Judgment, Decree or Order</u>. If an Employee is subject to a judgment, decree or order ("Order") resulting from a divorce, legal separation, annulment, or change in legal custody (including a qualified medical child support order defined in §609 of ERISA) that provides

CD000098

for accident or health coverage for the Employee's child, the Employee, or if required by the Order, the Employer or the Administrator, may change the Employee's election of Benefits and salary reduction agreement under Section 5.2, if any, to provide coverage for the child if the Order requires coverage under the Plan.  If the Order requires the Employee's spouse, former spouse or another individual to provide coverage for the child, the Employee may change his or her election of Benefits and salary reduction agreement under Section 5.2, if any, to cancel coverage for the child, if the Employee provides adequate proof, as determined by the Administrator, that the coverage required by the Order is actually being provided.

(ii)    Medicare/Medicaid Eligibility.  If a Participant or a Participant's Dependent who is enrolled in a Component Plan that offers accident or health coverage, becomes enrolled under Part A or Part B of Title XVIII of the Social Security Act (Medicare) or Title XIX of the Social Security Act (Medicaid), other than coverage consisting solely of benefits under section 1928 of the Social Security Act (the program for distribution of pediatric vaccines), the Participant may make an election change to cancel or reduce coverage of that Participant, or his or her Dependent, under the Component Plan that offers accident or health coverage, and may change a salary reduction agreement under Section 5.2 accordingly.  If an Employee or an Employee's Dependent, who was previously enrolled under Medicare or Medicaid as described in the previous sentence (other than coverage under section 1928 of the Social Security Act), loses eligibility for such coverage, the Employee may elect coverage for that individual under a Component Plan that offers accident and/or health coverage.

(iii)    Eligibility for Medicaid/CHIP.  If a Participant or his or her Dependent becomes eligible for or loses eligibility for Medicaid or CHIP coverage the Participant may make an election change to cancel, reduce or add coverage consistent with the eligiblity change for Medicaid or CHIP, provided the following conditions are met:

(a) The employee or dependent is covered under a Medicaid plan or under a state child health plan and the coverage is terminated due to loss of eligibility AND the employee requests coverage under the group health plan no later than 60 days after the loss of eligibility.

(2) The employee or dependent becomes eligible for assistance for coverage under the group health plan (see below), Medicaid plan or state child health plan AND the employee requests coverage under the group health plan no later than 60 days after the employee or dependent is determined to be eligible for assistance.

Since Internal Revenue Code §125 (specifically Treas. Reg. §1.125-4 (b)) permits a change to your pre-tax enrollment when you exercise a special enrollment right, the change to your coverage under the Plan can be done on a pre-tax basis.  Note that this is a longer enrollment period than the 30 days that applies to other special enrollment rights.  This is the only Special Enrollment period that lasts 60 days.

(iv)    Eligibility for COBRA.  If a Participant or his or her Dependent becomes eligible for and elects continuation coverage under a group health plan offered by the Employer as provided under COBRA or a similar State law, the Participant may change a salary reduction agreement under Section 5.2 to increase a salary reduction agreement to pay for the continuation coverage.

CD000099

(v)    <u>Family and Medical Leave Act</u>.  A Participant taking leave under the Family and Medical Leave Act of 1993 ("FMLA") may revoke an existing election of group health coverage and, upon return from FMLA leave, may make other elections concerning group health coverage that are permitted by FMLA.  A Participant may make corresponding changes to a salary reduction agreement under Section 5.2 to reflect these special FMLA-permitted changes.

## ARTICLE 4
## PARTICIPANT ACCOUNTS AND BENEFIT ACCOUNTS

4.1    <u>PARTICIPANT ACCOUNTS AND BENEFIT ACCOUNTS</u>The Employer or Administrator shall maintain records reflecting a Participant Account for each Participant.  The Participant Account shall be divided into sub-accounts ("Benefit Accounts") for each Benefit elected by the Participant.

4.2    <u>CREDITING AND ALLOCATING ACCOUNTS</u>.  Amounts shall be credited to Participant Accounts as provided in Sections 5.1 and 5.2, and allocated to Benefit Accounts as provided in Section 5.3.

4.3    <u>DEBITING OF ACCOUNTS</u>.  Benefit Accounts shall be debited as provided in Section 5.3.

4.4    <u>ACCOUNTS AS BOOK ENTRIES ONLY</u>.  Participant Accounts and Benefit Accounts shall be maintained by the Employer and/or the Administrator as entries on its books.

No money shall actually be paid into any Participant Account or Benefit Account.  No assets or funds shall be paid to, held in or invested in any separate trust.

No interest will be credited to or paid on amounts credited to any Participant Account or Benefit Account.

## ARTICLE 5
## CREDITS AND DEBITS TO ACCOUNTS

5.1    <u>BENEFIT CREDITS</u>On the first day of each period, as designated by the Employer and following a Participant's Participation Date, his or her Participant Account on such date shall be credited with an amount equal to the appropriate Benefit Credits, if any (as determined by the Employer), allocable to that Participant for that period.

5.2    <u>SALARY REDUCTION CONTRIBUTIONS</u>.  During the applicable election period determined under Article 3, a Participant may enter into a salary reduction agreement with the Employer which directs that the Participant's salary for the period to which the election relates shall be reduced each payroll period and that the amount of such reduction will be credited to the Participant's Participant Account. In the alternative, for certain Benefits and to the extent permitted by the Employer, a Participant may make contributions on an after-tax basis and that amount will be credited to his or her Participant Account.

The elected salary reduction, as applicable to any Participant, is subject to reduction by the Administrator to the extent deemed necessary by the Administrator to avoid the Plan being discriminatory as defined in the Code.

The elected salary reduction, as applicable to any Participant's health coverage election, is subject at all times to the Employer's right to increase or decrease the elected salary

CD000100

reduction if the Employer determines that there is empirical evidence of a change in the cost of coverage under the Plan's health benefit provisions or if the cost of health benefit coverage under the Plan changes as a result of actions by an independent, third-party provider.

A Participant who is not an active Employee shall make contributions on an after-tax basis. Also, any contributions made by or on behalf of a Participant to pay for coverage for any Dependent (including a Domestic Partner) who is not a Code Section 152 dependent (as defined in Section 1.8) shall be made on an after-tax basis.

5.3    ALLOCATIONS TO AND DEBITING OF BENEFIT ACCOUNTS.    Amounts credited to a Participant's Participant Account shall be allocated, on the date credited, to the Benefit Accounts of the Participant. Such allocation shall be made pursuant to the election made by the Participant in accordance with Section 6.1. However, in no event may an amount in excess of the total amount credited to a Participant's Participant Account be credited to the Participant's Benefit Accounts. All payments of Benefit amounts under the Plan shall be debited against the appropriate Benefit Account.

5.4    CHANGES DURING PLAN YEAR.    Except as provided in Sections 3.5 or 5.2 and to the extent permitted under applicable law, a Participant shall not change (a) amounts to be credited to a Participant Account during a Plan Year pursuant to Sections 5.1 or 5.2 or (b) the allocation of such amounts to Benefit Accounts during the Plan Year pursuant to Section 5.3.

## ARTICLE 6
## BENEFITS

6.1    AVAILABLE BENEFIT ELECTIONS.    The benefits available for election pursuant to Article 3 shall be those provided through the Component Plans. The Participant cost of the Benefits will be determined by the Employer, and will be communicated to Participants from time to time.

Pursuant to a Participant's election of a Benefit provided under a Component Plan, the compensation of the Participant will be reduced by the amount necessary to provide that Benefit, and the Employer shall credit the amount of the salary reduction to the Component Plan on behalf of the Participant.

CD000101

The Plan's Benefit options are as follows:

(a)    Medical//Prescription Drug Coverage Account.  Each eligible Participant may elect on his or her Election Form to have sufficient Benefit Credits, if any, and/or Salary Reduction Contributions made pursuant to Section 5.2 credited to his or her Medical/Prescription Drug Coverage Account for one of the medical/prescription drug coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

Notwithstanding any provision of this Plan or its Appendix, as required by Code §4980B(f), the Plan's coverage for costs of pediatric vaccines will not be less than the Plan's coverage, if any, for those costs on May 1, 1993.  In addition, the Plan will comply with the reconstructive surgery requirements of the Women's Health and Cancer Rights Act of 1998.

(b)    Dental Coverage Account.  Each eligible Participant who is a Salaried Employee may elect Employer-provided Dental Coverage under one of the dental coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).  Each eligible Participant who is a Union Employee may elect on his or her Election Form to have sufficient Benefit Credits, if any, and/or Salary Reduction Contributions made pursuant to Section 5.2 credited to his or her Dental Coverage Account for one of the dental coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(c)    Vision Coverage Account.  Each eligible Participant may elect on his or her Election Form to have sufficient Benefit Credits, if any, and/or Salary Reduction Contributions made pursuant to Section 5.2 credited to his or her Vision Coverage Account for one of the vision coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(d)    Life Insurance\AD&D Coverage Account.  Each eligible Participant shall receive Employer-provided Life Insurance\accidental death & dismemberment ("AD&D") coverage under one of the life insurance\ AD&D coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(e)    Dependent Life Insurance Coverage Account.  Each eligible Participant may elect on his or her Election Form to have after-tax Salary Reduction Contributions made pursuant to Section 5.2 credited to his or her Dependent Life Insurance Coverage Account for one of the dependent life insurance coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).  Dependent life insurance is not offered under the Code §125 feature of the Plan.

(f)    Supplemental Life Insurance Coverage Account.  Each eligible Participant (other than a Union or a Pulpwood Non-Union Hourly Employee working at the Spring Grove, Pennsylvania location) may elect on his or her Election Form to have Salary Reduction Contributions made pursuant to Section 5.2 credited to his or her Supplemental Life Insurance Coverage Account for one of the supplemental life insurance coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(g)    Long Term Disability Coverage Account.  Each eligible Participant who is a full-time employee (as determined by the Employer, other than Cillicothe Ohio Union) shall receive Employer-provided Long Term Disability coverage under one of the Long Term Disability coverage

CD000102

options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(h)    Short Term Disability Coverage Account. Each eligible Participant who is a full-time employee (as determined by the Employer) shall receive Employer-provided Short Term Disability coverage under one of the Short Term Disability coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(i)    Business Travel Accident. Each eligible Participant shall receive Employer-provided business travel accident coverage under one of the coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(j)    Employee Assistance Plan ("EAP"). Each eligible Participant shall receive Employer-provided coverage under one of the EAP coverage options designated by the Employer (as those options are described in the Component Plan(s) included in the Appendix).

(k)    Health Care Flexible Spending Account. Each Participant may elect on his or her Election Form to have Benefit Credits, if any, and/or Salary Reduction Contributions made pursuant to Section 5.2 credited to his or her Health Care Flexible Spending Account according to guidelines established by the Administrator. The amount of Benefit Credits, if any, and Salary Reduction Contributions that may be credited to a Participant's Health Care Flexible Spending Account shall be no greater than (a) three thousand dollars ($3,000) per Plan Year in the case of a Participant who is a Union Employee or a Pulpwood Non-Union Hourly Employee working at the Spring Grove, Pennsylvania location of the Employer or (b) five thousand dollars ($5,000) per Plan Year in the case of all other Participants.

Payments from this Account shall be made to the Participant in cash as a reimbursement for health-related expenses incurred by the Participant or his or her spouse or dependent that:

(i)    Are not covered, paid or reimbursed under any other health plan coverage;

(ii)    Qualify as expenses for "medical care" (as defined in Code §213(d), but excluding qualified long term care expenses (as defined in Code §7702B(c)), including "medicine and drugs" (whether or not requiring a prescription), within the meaning of Treasury Regulations §1.213-1(e)(2);

(iii)    Qualify as reimbursable medical expenses under Code §125; and

(iv)    Are not taken as a deduction from income on the Participant's federal income tax return in any tax year.

For purposes of this subsection, "dependent" means any person who is a dependent of the Participant under Code §152 (determined without regard to subsections (b)(1), (b)(2) and (d)(1)(B) of Code §152).

Notwithstanding any provision in the Plan to the contrary, only expenses incurred during the Plan Year and while the Participant is a Participant for purposes of the Health Care Flexible Spending Account are subject to reimbursement. Unless the Administrator designates

Page 20

a later date, requests for reimbursement must be submitted by the ninetieth (90th) day following the earlier of (1) the end of the Plan Year or (2) the date the Participant ceases to be a Participant for purposes of the Health Care Flexible Spending Account.

Any amount remaining in a Participant's Health Care Flexible Spending Account after all properly submitted reimbursement requests have been paid will be forfeited.

(l)    <u>Dependent Care Flexible Spending Account</u>.  Each Participant may elect on his or her Election Form to have Benefit Credits, if any, and/or Salary Reduction Contributions made pursuant to Section 5.2 in an aggregate amount not to exceed five thousand dollars ($5,000) per calendar year (or, in the case of a married Participant filing a separate return for the taxable year in question, two thousand five hundred dollars ($2,500) per calendar year) credited to the Participant's Dependent Care Flexible Spending Account according to guidelines established by the Administrator.  Payments from this Account shall be made to the Participant in the form of an Employer-provided payment in accordance with the following provisions which the Employer intends will be interpreted in a manner which is consistent with Code §129.

(i)    A Participant is eligible to receive reimbursement for Employment Related Expenses (as defined below) incurred during the applicable Plan Year and while he or she is a Participant for purposes of the Dependent Care Flexible Spending Account.  The amount of any reimbursement may not exceed the remaining amount credited to the Participant's Dependent Care Flexible Spending Account at the time the claim for reimbursement is submitted.

(ii)    The aggregate amount of reimbursements from the Dependent Care Flexible Spending Account which may be received by the Participant on a tax-free basis shall not exceed the Earned Income (as defined below) of the Participant, or, if the Participant is married at the end of the Plan Year, the Earned Income of the Participant's spouse, if less.  Any amount of reimbursement received from the Dependent Care Flexible Spending Account during the Participant's tax year that exceeds the lesser of the Earned Income of the Participant or, if the Participant is married at the end of the Plan Year, the Earned Income of the Participant's spouse, shall be taxable to the Participant.

For purposes of this subsection, "Earned Income" means wages, salaries, tips and other employee compensation, including net earnings from self-employment, for the tax year of the Participant (computed without regard to any community property laws), and excluding pension and annuity income and income as a non-resident alien not connected with a United States business.  The Earned Income of a spouse who is a full-time student at an educational institution or who is physically or mentally incapable of self care shall be deemed to be not less than two hundred fifty dollars ($250) per month if there is one Qualifying Individual (as defined below) or five hundred dollars ($500) per month if there are two or more Qualifying Individuals.

(iii)    For purposes of this Section, "Employment Related Expenses" for which reimbursement may be made from the Dependent Care Flexible Spending Account are amounts paid by the Participant for:

(A)    expenses for Household Services (as defined below); and

(B)    expenses for the care of a Qualifying Individual;

so long as such expenses are incurred to enable the Participant or the Participant's spouse to be

CD000104

gainfully employed for a period for which there is at least one Qualifying Individual with respect to the Participant.

           (iv)     For purposes of this Section, "Household Services" means ordinary and usual services necessary for the maintenance of the Participant's home performed in and about the home and which are attributable in part to the care of a Qualifying Individual, as more fully defined by applicable law.

           (v)     For purposes of this Section, "Qualifying Individual" means:

           (A)     a Participant's dependent who is a qualifying child (within the meaning of Code §152) under the age of thirteen (13), or

           (B)     a dependent (within the meaning of Code §152, as it applies for purposes of a dependent care assistance program described in Code §129) or spouse (determined under federal law) of the Participant who is physically or mentally incapable of self-care and who has the same principal place of abode as the taxpayer for more than one-half of the applicable tax year of the Participant.  An individual is physically or mentally incapable of self-care if, because of a physical or mental defect, he or she is incapable of caring for his or her own hygiene or nutritional needs, or requires full-time attention of another person for his or her own safety or the safety of others.  The inability of an individual to engage in any substantial gainful activity or to perform the normal household functions of a homemaker or to care for minor children does not by itself establish that the individual is physically or mentally incapable of self-care.

           Notwithstanding any provision of this Plan to the contrary, "Qualifying Individual" at all times shall be interpreted to have the same meaning as that term has under Code §21(b)(1), as it applies for purposes of a dependent care assistance program described in Code §129.

           (vi)     Employment Related Expenses that are incurred for services outside the Participant's household will be entitled to reimbursement only:

           (A)     if incurred for the care of (i) a Qualifying Individual who is a qualifying child (within the meaning of Code §152) under thirteen (13) years or age, or (ii) another Qualifying Individual who regularly spends at least eight (8) hours each day in the Participant's household; or

           (B)     if incurred for services performed outside the Participant's household by a Dependent Care Center (as defined below), only if such Center complies with the applicable laws and regulations of a State or unit of local government and care is rendered to (i) a Qualifying Individual who is a qualifying child (within the meaning of Code §152) under thirteen (13) years or age, or (ii) another Qualifying Individual who regularly spends at least eight (8) hours per day in the Participant's household.  A "Dependent Care Center" means any facility that (a) provides care for more than six (6) individuals (other than individuals who reside at the facility), and (b) receives a fee, payment or grant for providing services for any of the individuals (regardless of whether such facility is operated for profit).

           (vii)     Any provision of the Plan to the contrary notwithstanding, no payments shall be made to a Participant for Employment Related Expenses for services rendered by an individual:

CD000105

(A)    for whom the Participant or his or her spouse (determined under federal law) is entitled to a deduction under Code §151(c) for the applicable tax year of the Participant or spouse, or

(B)    who is a son, stepson, daughter, stepdaughter or foster child of the Participant who will be under the age of nineteen (19) at the end of the tax year of the Participant during which the services are performed.

(viii)    Notwithstanding any provision of the Plan to the contrary, only expenses incurred during the Plan Year and while the Participant remains a Participant for purposes of the Dependent Care Flexible Spending Account are subject to reimbursement. Unless the Administrator designates a later date, requests for reimbursement must be submitted by the ninetieth (90th) day following the earlier of (1) the end of the Plan Year or (2) the date the Participant ceases to be a Participant for purposes of the Dependent Care Flexible Spending Account. Any amount remaining in a Participant's Dependent Care Flexible Spending Account after all properly submitted reimbursement requests have been paid will be forfeited.

(ix)    On or before each January 31 during which this Plan is in effect, the Administrator shall furnish to each Participant a written statement, which may be the Participant's W-2, showing the amounts paid or expenses incurred by the Employer in providing dependent care assistance to such Participant during the previous calendar year.

(x)    No amount shall be reimbursed to a Participant unless he or she provides the Plan Administrator with the name, address and tax identification number of the person performing services or if the service provider is an organization exempt under Code §501(a), the name and address of such service provider. This provision shall not apply if the Participant exercises due diligence in attempting to provide this information.

6.2    <u>UNUSED BENEFIT CREDITS</u>.    Benefit Credits, if any, not otherwise utilized pursuant to this Article will be forfeited to the Employer.

6.3    <u>INSURANCE CONTRACTS</u>.    The Employer has the right to enter into contracts with one or more insurance companies for the purpose of providing any Benefits under the Plan and to replace any of such insurance companies from time to time. Any dividends, retroactive rate or other refunds of any type which may become payable under any such insurance contracts shall not be assets of the Plan but shall be the property of, and shall be retained by, the Employer. If any Benefit hereunder is intended to be provided under an insurance contract, a Participant or eligible dependent may look only to the insurance company for payment of that benefit.

6.4    <u>SOURCE OF BENEFITS</u>. The Employer will pay any Benefits intended to be self-funded from its general assets.

6.5    <u>MAXIMUM CONTRIBUTIONS AND BENEFITS</u>.    The maximum amount of contributions and Benefits made available under the Plan to any Participant in any Plan Year shall be limited as provided in the Code.

6.6    <u>REQUESTS FOR REIMBURSEMENT</u>. Any Participant who wishes to receive a reimbursement from his or her Health Care Flexible Spending Account or Dependent Care Flexible Spending Account must submit to the Administrator (or Insurer or designee of the Administrator, if applicable) a request for reimbursement on a form provided by the Administrator, along with such evidence as the Administrator (or Insurer or designee of the Administrator, if applicable) requires

CD000106

regarding the amount, nature and payment of such reimbursement.  Such requests must be submitted by the date specified in Section 6.1(k) or 6.1(l), whichever applies.

       6.7    <u>MINIMUM REIMBURSEMENT AMOUNTS</u>.  The Administrator (or Insurer or designee of the Administrator, if applicable) may establish reasonable rules regarding the minimum amount of eligible expenses that must be submitted for reimbursement to be made under the Plan.

       6.8    <u>REQUESTS EXCEEDING ACCRUED DEPENDENT CARE FLEXIBLE SPENDING ACCOUNT BALANCE</u>Requests from a Participant for reimbursement of eligible expenses which exceed the accrued balance in the Participant's Dependent Care Flexible Spending Account will be held in a suspense account until the Account has been credited with sufficient amounts to permit such reimbursement, provided that such additional credits are made within the Plan Year to which the reimbursement is chargeable.

       6.9    <u>REQUESTS EXCEEDING ACCRUED HEALTH CARE FLEXIBLE SPENDING ACCOUNT BALANCE</u>Requests from a Participant for reimbursement of eligible expenses which exceed the accrued balance in the Participant's Health Care Flexible Spending Account will be paid at any time during the Plan Year upon submission of satisfactory documentation of the expense, but only up to the maximum annual amount elected by the Participant for the Plan Year, notwithstanding that such account has not been credited with sufficient Salary Reduction Contributions to cover the reimbursement.

### ARTICLE 7
### HEALTH INFORMATION PRIVACY AND SECURITY

       7.1    <u>SCOPE OF ARTICLE</u>.  This Article 7 is intended to provide for the Plan's compliance with all applicable requirements of final Regulations issued by the Department of Health and Human Services pursuant to the Administrative Simplification provisions of the Health Insurance Portability and Accountability Act of 1996 and published as the "Standards for Privacy of Individually Identifiable Health Information" (the "Privacy Regulations") and the "Health Insurance Reform: Security Standards"(the "Security Standards").

       Each Component Plan that is a group health plan subject to the Privacy Regulations (each of which is referred to separately in this Article as "the Health Plan") will comply with all applicable requirements of the Privacy Regulations, as provided in this Article and in the Privacy Regulations and as interpreted pursuant to any authoritative guidance issued by the Department of Health and Human Services.  If there is any conflict between the requirements of the Privacy Regulations and any provision of this Plan, the Privacy Regulations will control.  Also, any amendment or revision or authoritative interpretation of the Privacy Regulations is incorporated into the Plan as of the effective date of that guidance.

       7.2    <u>PROTECTED HEALTH INFORMATION</u>For purposes of the Health Plan, "Protected Health Information" has the same meaning as provided for that term in the Privacy Regulations and is limited to information that is Protected Health Information with respect to the Health Plan.

       7.3    <u>DISCLOSURE OF PROTECTED HEALTH INFORMATION TO THE EMPLOYER</u>The Health Plan will disclose Protected Health Information to the Employer only as follows:

CD000107

(a)    Summary Health Information.  The Health Plan, or a health insurance issuer or HMO with respect to the Health Plan may disclose Protected Health Information that is summary health information (as defined in Section 164.504(a) of the Privacy Regulations) to the Employer, if the Employer requests the summary health information for the purpose of:

(i)    Obtaining premium bids from insurance issuers for providing health insurance coverage under the Health Plan; or

(ii)    Modifying, amending or terminating the Health Plan.

(b)    Enrollment Information.  The Health Plan, or a health insurance issuer or HMO with respect to the Health Plan, may disclose to the Employer information on whether an individual is participating in the Health Plan, or is enrolled in or has disenrolled from a health option or HMO offered by the Plan.

(c)    Other Disclosures to Employer.  Except as provided in Sections 7.3(a) and 7.3(b), or under the terms of an applicable individual authorization, the Health Plan may disclose Protected Health Information to the Employer and may permit the disclosure of Protected Health Information by a health insurance issuer or HMO with respect to the Health Plan to the Employer only if the Employer requires the Protected Health Information to administer the Health Plan.  The Employer, by signing this Plan document, certifies that it:

(i)    will not use or further disclose Protected Health Information other than as permitted by the Health Plan or as required by law;

(ii)    will ensure that any agents to whom it provides Protected Health Information received from the Health Plan agree to the same restrictions and conditions that apply to the Employer with respect to such information;

(iii)    will not use or disclose Protected Health Information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan of the Employer;

(iv)    will report to the Health Plan any use or disclosure, of which it becomes aware, of Protected Health Information that is inconsistent with the uses or disclosures permitted under the Plan;

(v)    will make Protected Health Information available to the individual who is the subject of that information in accordance with Section 164.524 of the Privacy Regulations;

(vi)    will consider requested amendments to an individual's Protected Health Information in accordance with Section 164.526 of the Privacy Regulations;

(vii)    will make available the information required to provide an accounting of disclosures of Protected Health Information in accordance with Section 164.528 of the Privacy Regulations;

(viii)    will make its internal practices, books, and records relating to the use and disclosure of Protected Health Information received from the Health Plan available to the

Page 25

CD000108

Secretary of Health and Human Services for purposes of determining compliance by the Health Plan with the Privacy Regulations;

      (ix)    if feasible, will return or destroy all Protected Health Information received from the Health Plan that the Employer still maintains in any form and will retain no copies of such information when no longer needed for the purpose for which disclosure was made, except that, if return or destruction is not feasible, the Employer will limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible; and

      (x)    will ensure that the adequate separation of the Health Plan and the Employer as required in this Article is established.

    (d)    <u>Prohibited Disclosures</u>. The Health Plan will not disclose Protected Health Information to the Employer for purposes of employment-related actions or decisions or in connection with any other benefit or employee benefit plan of the Employer.

    7.4    <u>SEPARATION OF HEALTH PLAN AND THE COMPANY</u>. The Employer has designated and trained certain employees to be the only employees of the Employer who will have access to Protected Health Information on behalf of the Health Plan. Those employees are identified on the attached Schedule A. If there are any changes to the group of employees who are authorized to have access to Protected Health Information on behalf of the Health Plan, Schedule A will be revised to reflect those changes. Any revised Schedule A is incorporated into the Plan as of the effective date of the revision without the need for further amendment to the Plan. Except as otherwise permitted under applicable law and this Plan, Employees listed on Schedule A will use or disclose Protected Health Information only to the extent appropriate for performing administrative services that the Employer provides for the Health Plan.

    The Employer will work with the Health Plan's designated Privacy Official to establish effective policies and procedures for identifying, investigating, remedying and disciplining any alleged instances of noncompliance with the requirement that employees of the Employer who have access to Protected Health Information use that Protected Health Information only for the purposes specified in this Article.

    7.5    <u>PRIVACY NOTICE</u>. The Health Plan will comply with the applicable requirements of the Privacy Notice issued by the Plan pursuant to the requirements of the Privacy Regulations and the Plan's Privacy Notice is incorporated into the Plan by this reference. If the Privacy Notice is revised, the Health Plan will comply with the revised Privacy Notice as of the effective date of the revision. A revised Privacy Notice is incorporated into the Health Plan as of the effective date of each revision without the need for further amendment of the Plan.

    7.6    <u>SECURITY STANDARDS</u>The Health Plan will comply with all applicable requirements of the Security Standards, as provided in this Article and in the Security Standards and as interpreted pursuant to any authoritative guidance issued by the Department of Health and Human Services. If there is any conflict between the requirements of the Security Standards and any provision of this Plan, the Security Standards will control. Also, any amendment or revision or authoritative interpretation of the Security Standards is incorporated into the Plan on the effective date of that guidance.

    In addition, the Employer, by adopting this document, certifies that, beginning on the date this Section becomes effective, the Employer will

CD000109

(a)     Reasonably and appropriately safeguard electronic Protected Health Information created, received, maintained, or transmitted to or by the Employer on behalf of the Health Plan;

(b)     Implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic protected health information that it creates, receives, maintains, or transmits on behalf of the Health Plan;

(c)     Ensure that the adequate separation required by Section 164.504(f)(2)(iii) of the Privacy Regulations is supported by reasonable and appropriate security measures;

(d)     Ensure that any agent, including a subcontractor, to whom it provides electronic Protected Health Information agrees to implement reasonable and appropriate security measures to protect that information; and

(e)     Report to the Health Plan any security incident of which it becomes aware.

## ARTICLE 8
## ADMINISTRATION

8.1     THE ADMINISTRATOR. Except as to those functions reserved within the Plan or a Component Plan to the Company or an Insurer, the Administrator shall control and manage the operation and administration of the Plan and shall be a "named fiduciary" for purposes of ERISA. The Administrator shall be the Company and/or any other person or committee appointed by the Company to administer the Plan. The Administrator or any person who is a member of a committee that is appointed to be the Administrator may or may not be a Participant in the Plan.

8.2     ADMINISTRATIVE RULES AND DETERMINATIONS. Subject to the limitations of the Plan, the Administrator shall establish rules for the administration of the Plan and the transaction of its business. The Administrator has the exclusive right (except as to matters reserved to the Company or an Insurer by the Plan or a Component Plan) to interpret the Plan and to decide all matters arising thereunder, including the right to remedy possible ambiguities, inconsistencies, or omissions. All determinations of the Administrator or the Company in respect to any matter hereunder shall be conclusive and binding on all persons. Without limiting the generality of the foregoing, the Administrator has the following powers and duties:

(a)     To require any person to furnish such information, including, but not limited to, the execution of any agreements, as the Administrator may request for the purpose of the proper administration of the Plan as a condition to receiving any Benefits under the Plan;

(b)     To make and enforce such rules and regulations and prescribe the use of such forms as the Administrator deems necessary for the efficient administration of the Plan;

(c)     To decide on questions concerning the Plan and the eligibility of any employee to participate in the Plan, in accordance with the provisions of the Plan; and

(d)     To determine the amount of Benefits which shall be payable to any person in accordance with the provisions of the Plan, to inform the Employer of the amount of such Benefits and to provide a full and fair review to any Participant whose claim for Benefits has been denied in

CD000110

whole or in part.

In carrying out its duties herein, the Administrator shall have discretionary authority to exercise all powers and to make all determinations, consistent with the terms of the Plan, in all matters entrusted to it, and its determinations shall be given deference and shall be final and binding on all interested parties.

Benefits under the Plan will be paid only if the Plan Administrator decides in its discretion that the applicant is entitled to them. Because of this reservation of discretionary power to Plan fiduciaries, any judicial review of a Plan fiduciary's decision would not be made on a "de novo" basis, but would be made under the deferential "arbitrary and capricious" standard of review described in <u>Firestone v. Bruch</u>, 489 U.S. 101 (1989).

8.3     <u>DELEGATION AND RELIANCE</u>.  The Administrator, subject to approval of the Company, may employ the services of such firms or persons as it may deem necessary or desirable in connection with the Plan.  The Administrator may delegate any of its powers or duties to another person or persons.  Without limiting the generality of the preceding sentence, the Administrator shall specifically have the power to delegate to any Insurer the power and responsibility to determine claims and benefits under any policy issued by such Insurer, and the Administrator shall be protected in relying upon such Insurer's determinations.  The Administrator and the Company (and any person to whom the Administrator may delegate any duty or power in connection with the administration of the Plan) and all persons connected therewith may rely upon all tables, valuations, certificates, reports and opinions furnished by any duly appointed actuary, accountant (including employees of the Employer who are actuaries or accountants) or legal counsel, or other specialist, and they shall be fully protected in respect to any action taken or permitted in good faith in reliance thereon.  All actions so taken or permitted shall be conclusive upon all persons.

8.4     <u>INDEMNIFICATION AND INSURANCE</u>.  To the extent permitted by law, neither the Administrator, nor any other person performing duties hereunder, shall incur any liability for any act done, determination made or failure to act, if in good faith, and the Employer shall indemnify the Administrator, its members and such other persons against any and all liability which is incurred as a result of the good faith performance or non-performance of their duties hereunder.  Nothing in this Plan shall preclude the Employer from purchasing liability insurance to protect such persons with respect to their duties under this Plan.

8.5     <u>COMPENSATION, EXPENSES AND BOND</u>Unless otherwise agreed to by the Company, the Administrator shall serve without compensation for its services as such, but all reasonable expenses incurred in the performance of its duties shall be paid by the Employer.  Unless otherwise determined by the Company or unless required by any federal or State law, the Administrator shall not be required to give any bond or other security in any jurisdiction.

8.6     <u>ADMINISTRATIVE EXPENSES PAID BY EMPLOYER</u>.  All administrative expenses incurred in connection with the Plan, including but not limited to administrative expenses and compensation and other expenses and charges of any actuary, counsel, accountant, specialist or other person who shall be employed by the Administrator in connection with the Plan, shall be paid by the Employer or from Participant contributions, as determined by the Employer.

**ARTICLE 9**
**CLAIMS PROCEDURES**

9.1     <u>CLAIMS PROCEDURES–IN GENERAL</u>.  This Article 9 is based on final

CD000111

regulations issued by the Department of Labor and published in the Federal Register on November 21, 2000 and codified at 29 C.F.R. §2560.503-1. If any provision of this Article 9 conflicts with the requirements of those regulations, the requirements of those regulations will prevail.

9.2    INITIAL CLAIMS. If a Participant or a Participant's spouse, dependent or beneficiary (referred to in this Article as a "Claimant") is denied any Benefit under this Plan, the Claimant may file a claim with the Administrator, or Insurer, if applicable (referred to in this Article as the "Reviewer"). "Claimant" also includes any properly authorized representative (as determined by the Reviewer) of the person who is the subject of the claim. All claims must be submitted in writing, except to the extent oral notice is permitted for certain urgent care health benefit claims, as described in this Article. The Reviewer will review the claim itself or appoint an individual or an entity to review the claim.

(a)    Non-Health and Non-Disability Benefit Claims. For a claim for a benefit other than a health or disability benefit, the Claimant will be notified within ninety (90) days after the claim is filed whether the claim is allowed or denied, unless the Claimant receives written notice from the Reviewer before the end of the ninety (90) day period stating that special circumstances require an extension of the time for decision, such extension not to extend beyond the day which is one hundred eighty (180) days after the day the claim is filed.

(b)    Health Benefit Claims.

(i)    Urgent Care Claims. If a claim is for urgent care health benefits, the Reviewer will notify the Claimant of the Plan's benefit determination (whether adverse or not) as soon as possible, taking into account the medical exigencies, but not later than seventy-two (72) hours after the Plan receives the claim, unless the Claimant fails to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the Plan. In the case of such a failure, the Reviewer will notify the Claimant as soon as possible, but not later than twenty-four (24) hours after the Plan receives the claim, of the specific information necessary to complete the claim. The notice may be oral unless written notice is requested by the Claimant. The Claimant will be afforded a reasonable amount of time, taking into account the circumstances, but not less than 48 hours, to provide the specified information. The Reviewer will notify the Claimant of the Plan's determination as soon as possible, but in no case later than forty-eight (48) hours after the earlier of (1) the Plan's receipt of the specified additional information or (2) the end of the period afforded the Claimant to provide the specified additional information.

If any person fails to follow the Plan's procedures for submitting an urgent care claim, but provides information to a person or organizational unit that is customarily responsible for handling benefit matters and the information provided identifies a specific Participant or Dependent, a specific medical condition or symptom and a specific treatment, service, or product for which approval is requested; the Plan Administrator or Reviewer will notify the potential Claimant, as soon as reasonably possible but no later than twenty-four (24) hours after the information is provided, of the failure to properly submit a claim and of the proper procedures for submitting the claim. This notice may be oral unless written notice is requested by the Claimant.

A health benefits claim is considered an urgent care claim if applying the time periods for making non-urgent care determinations could seriously jeopardize the life or health of the Claimant or the ability of the Claimant to regain maximum function or, in the opinion of a physician with knowledge of the Claimant's medical condition, would subject the Claimant to severe pain that could not be adequately managed without the care or treatment which is the subject

CD000112

of the claim.

(ii)    Pre-service Health Benefit Claims.  For a pre-service health benefit claim, the Reviewer will notify the Claimant of the Plan's benefit determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than fifteen (15) days after the Plan receives the claim.  If, due to matters beyond the control of the Plan, the Reviewer needs additional time to process a claim, the Claimant will be notified, within fifteen (15) days after the Plan receives the claim, of those circumstances and of when the Reviewer expects to make its decision.  Under no circumstances may the Reviewer extend the time for making its decision beyond thirty (30) days after receiving the claim.  However, if an extension is necessary because the Claimant failed to submit all information necessary to decide the claim, the notice of extension will specifically describe the required information, the Claimant will be afforded at least forty-five (45) days from receipt of the notice to provide the specified information.

If any person fails to follow the Plan's procedures for submitting a pre-service health benefit claim, but provides information to a person or organizational unit that is customarily responsible for handling benefit matters and the information provided identifies a specific Participant or Dependent, a specific medical condition or symptom and a specific treatment, service, or product for which approval is requested; the Plan Administrator or Reviewer will notify the potential Claimant as soon as possible but no later than five (5) days after the information is provided, of the failure to properly submit a claim and of the proper procedures for submitting a pre-service claim.  The notice may be oral unless written notice is requested by the Claimant.

A health benefit claim is considered a pre-service claim if the claim requires approval, in part or in whole, in advance of obtaining the health care in question.

(iii)    Post-service Health Benefit Claims.  For a post-service health benefit claim, the Reviewer will notify the Claimant of the Plan's adverse benefit determination within a reasonable period of time, but not later than thirty (30) days after receipt of the claim.  If, due to matters beyond the control of the Plan, the Reviewer needs additional time to process a claim, the Claimant will be notified, within thirty (30) days after the Reviewer receives the claim, of those circumstances and of when the Reviewer expects to make its decision.  Under no circumstances may the Reviewer extend the time for making its decision beyond forty-five (45) days after receiving the claim.  However, if such an extension is necessary because the Claimant failed to submit all information necessary to decide the claim, the notice of extension will specifically describe the required information, and the Claimant will be afforded at least forty-five (45) days from receipt of the notice to provide the specified information.

A health benefit claim is considered a post-service claim if it is a request for payment for services which the Claimant has already received.

(iv)    Concurrent Care Claims. Notwithstanding any other provision of this Article, if the Plan has previously approved an ongoing course of health care treatment to be provided over a period of time or number of treatments, any reduction or termination by the Plan of the previously approved course of treatment (other than by Plan amendment or termination) before the approved time period or number of treatments will constitute an adverse initial benefit determination. These determinations will be known as "concurrent care" decisions. The Reviewer will notify the Claimant of an adverse concurrent care decision at a time sufficiently in advance of the reduction or termination to allow the Claimant to appeal and obtain a determination on review of that adverse benefit determination before reduction or termination of the benefit.

CD000113

Any request by a Claimant to extend a course of urgent care treatment beyond the approved period of time or number of treatments will be decided as soon as possible, taking into account the medical exigencies, and the Reviewer will notify the Claimant of the benefit determination, whether adverse or not, within twenty-four (24) hours after the Plan receives the claim, provided that the claim is submitted at least twenty-four (24) hours before the expiration of the prescribed period of time or number of treatments.

(c)    <u>Disability Benefit Claims</u>.  For a disability benefits claim, the Reviewer will notify the Claimant of the Plan's adverse benefit determination within a reasonable period of time, but not later than forty-five (45) days after the Plan receives the claim.  If, due to matters beyond the control of the Plan, the Reviewer needs additional time to process a claim, the Claimant will be notified, within forty-five (45) days after the Plan receives the claim, of those circumstances and of the date by which the Plan expects to make its decision, which date will be no later than seventy-five (75) days after the Plan receives the claim.   If the Reviewer still needs additional time to process a claim, the Claimant will be notified during the first extension period (i.e., within seventy-five (75) days after the Plan receives the claim), of those circumstances and of the date by which the Reviewer expects to make its decision, which date will be no later than one hundred and five (105) days after the Plan receives the claim.  Any extension notice will specifically explain the standards on which entitlement to a disability benefit is based, the unresolved issues that prevent a decision on the claim and any additional information needed from the Claimant to resolve those issues, and the Claimant will be afforded at least forty-five (45) days to provide any requested additional information.

(d)    <u>Manner and Content of Denial of Initial Claims</u>.  If the Reviewer denies a claim, it will provide to the Claimant a written or electronic notice that includes:

(i)    a description of the specific reasons for the denial;

(ii)    a reference to any Plan provision or insurance contract provision upon which the denial is based;

(iii)    a description of any additional information or material that the Claimant must provide in order to perfect the claim;

(iv)    an explanation of why such additional material or information is necessary;

(v)    a statement that the Claimant has a right to request a review of the claim denial and information on the steps to be taken if the Claimant wishes to request a review of the claim denial; and

(vi)    a statement of the participant's right to bring a civil action under ERISA §502(a) following a denial on review of the initial denial.

In addition, for a denial of a claim for health benefits or disability benefits, the following must be provided:

(vii)    a copy of any rule, guideline, protocol, or other similar criterion relied upon in making the adverse determination (or a statement that the same will be provided upon request by the Claimant and without charge); and

Page 31

CD000114

(viii) if the adverse determination is based on a medical necessity requirement, an experimental treatment exclusion or a similar restriction, either an explanation of the scientific or clinical judgment applying the restriction to the Claimant's medical circumstances or a statement that an explanation will be provided upon request and without charge.

For any adverse benefit determination concerning an urgent care health claim, the information described in this Section may be provided to the Claimant orally within the permitted time frame, provided that a written or electronic notice in accordance with this Section is furnished not later than three (3) days after the oral notice.

9.3    REVIEW PROCEDURES.

(a)    Non-Health and Non-Disability Benefit Claims.  A request for review of a denied claim for a benefit other than health or disability benefits must be made in writing to the Reviewer within sixty (60) days after receiving notice of denial.  The decision upon review will be made within sixty (60) days after the Reviewer's receives the request for review, unless special circumstances require an extension of time for processing, in which case a decision will be rendered not later than one hundred twenty (120) days after the request for review is received.  A notice of such an extension must be provided to the Claimant within the initial sixty (60) day period and must explain the special circumstances and provide an expected date of decision.

The Reviewer will afford the Claimant an opportunity to review and receive, without charge, all relevant documents, information and records and to submit issues and comments in writing to the Reviewer.  The Reviewer will take into account all comments, documents, records and other information submitted by the Claimant relating to the claim regardless of whether the information was submitted or considered in the initial benefit determination.

(b)    Health and Disability Benefit Claims.  A request for review of a denial of an initial claim for health or disability benefits must be submitted in writing to the Reviewer no later than one hundred eighty (180) days after the Claimant receives the notice of denial of the initial claim.

Notwithstanding the preceding, following a denial of an initial urgent care health benefits claim, the Claimant may request an expedited review of the claim and such a request may be submitted orally or in writing at the discretion of the Claimant.  If an expedited review is requested, all necessary information, including the plan's benefit determination on review, will be transmitted between the Reviewer and the Claimant by telephone, facsimile, or other available similarly expeditious method, whenever possible.

In addition to providing the Claimant the right to review documents and submit comments as described in (a) above, a review of a denial of a health or disability benefits claim will meet the following requirements:

(i)    The Plan will provide a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the Plan who did not make the initial determination that is the subject of the appeal and who is not a subordinate of the individual who made the determination.

(ii)    The appropriate named fiduciary of the Plan will consult with a health

CD000115

care professional with appropriate training and experience in the field of medicine involved in the medical judgment before making a decision on review of any adverse initial determination based in whole or in part on a medical judgment, including determinations regarding whether a particular treatment, drug or other item is experimental, investigational or not medically necessary or appropriate.  The professional engaged for purposes of a consultation described in the preceding sentence will be an individual who was not consulted in connection with the initial determination that is the subject of the appeal, nor the subordinate of any such individual.

(iii)    The Plan will identify to the Claimant the medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the review, without regard to whether the advice was relied upon in making the benefit review determination.

(c)    Deadline for Review Decisions.

(i)    Urgent Health Benefit Claims.  For urgent care health claims, the Reviewer will notify the Claimant of the Plan's determination on review as soon as possible, taking into account the medical exigencies, but not later than seventy-two (72) hours after the Plan receives the Claimant's request for review of the initial adverse determination.

(ii)    Other Health Benefit Claims.

(A)    For a pre-service health claim, the Reviewer will notify the Claimant of the Plan's determination on review within a reasonable period of time appropriate to the medical circumstances, but in no event later than thirty (30) days after the Plan receives the Claimant's request for review of the initial adverse determination.

(B)    For a post-service health claim, the Reviewer will notify the Claimant of the Plan's benefit determination on review within a reasonable period of time, but in no event later than sixty (60) days after the Plan receives the Claimant's request for review of the initial adverse determination.

(iii)    Disability Benefit Claims.  For disability claims, the decision on review will be made within forty-five (45) days after the Reviewer receives a request for review, unless special circumstances require an extension of time for processing, in which case a decision will be rendered not later than ninety (90) days after receipt of a request for review.  A notice of such an extension will be provided to the Claimant within the initial forty-five (45) day period and will explain the special circumstances and provide an expected date of decision.

(d)    Manner and Content of Notice of Decision on Review.  Upon completion of its review of an adverse initial claim determination, the Reviewer will provide the Claimant a written or electronic notice that includes:

(i)    a description of its decision;

(ii)    an explanation of the specific reasons for the decision;

(iii)    a reference to any relevant Plan provision or insurance contract provision on which its decision is based;

(iv)    a statement that the Claimant is entitled to receive, upon request and

CD000116

without charge, reasonable access to, and copies of, all documents, records and other information in the Plan's files which is relevant to the Claimant's claim for benefits;

(v)    a statement describing the Claimant's right to bring an action for judicial review under ERISA §502(a);

(vi)    if an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination on review, a statement that a copy of the rule, guideline, protocol or other similar criterion will be provided without charge to the Claimant upon request; and

(vii)    if the adverse determination on review is based on a medical necessity requirement, an experimental treatment exclusion or a similar restriction, either an explanation of the scientific or clinical judgment on which the determination was based, applying the terms of the Plan to the Claimant's medical circumstances, or a statement that an explanation will be provided without charge upon request.

9.4    <u>CALCULATION OF TIME PERIODS</u>. For purposes of the time periods specified in this Article, the period of time during which a benefit determination is required to be made begins at the time a claim is filed in accordance with the Plan procedures without regard to whether all the information necessary to make a decision accompanies the claim. If a period of time is extended because a Claimant fails to submit all information necessary, the period for making the determination will be tolled from the date the notification is sent to the Claimant until the date the Claimant responds.

9.5    <u>FAILURE OF PLAN TO FOLLOW PROCEDURES</u>. If the Plan fails to follow the claims procedures required by this Article, a Claimant shall be deemed to have exhausted the administrative remedies available under the Plan and shall be entitled to pursue any available remedy under ERISA section 502(a) on the basis that the Plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

9.6    <u>FAILURE OF CLAIMANT TO FOLLOW PROCEDURES</u>. A Claimant's compliance with the foregoing provisions of this Article 9 is a mandatory prerequisite to the Claimant's right to commence any legal action with respect to any claim for Benefits under the Plan.

9.7    <u>PREEMPTION OF STATE LAW</u>. For any insured benefit under this Plan, nothing in this Article shall be construed to supercede any provision of any applicable State law that regulates insurance, except to the extent that such law prevents application of this Article.

**ARTICLE 10**
**AMENDMENT OR TERMINATION OF PLAN**

10.1    <u>AMENDMENT</u>. The Company reserves the power at any time and from time to time, and retroactively if deemed necessary or appropriate, to modify or amend, in whole or in part, any or all of the provisions of the Plan or the insurance contracts maintained to provide Benefits under the Plan.

10.2    <u>TERMINATION</u>. The Company reserves the power to discontinue or terminate the Plan at any time. In the event of the dissolution, merger, consolidation or reorganization of the

CD000117

Company, the Plan shall terminate unless it is continued by a successor to the Company.

10.3    REDUCTION OR TERMINATION OF BENEFITS.  Participants in the Plan, including future retirees and retirees who have already retired, if any, have no right to Plan Benefits after a Plan termination or a partial Plan termination affecting them, and have no right to Plan Benefits to the extent that they are eliminated or reduced by a Plan amendment, except that such Participants are entitled to Benefits with respect to covered events giving rise to Benefits and occurring before the effective date of the Plan termination or applicable Plan amendment.

10.4    EFFECTIVE DATES{}.  Any such amendment, discontinuance or termination shall be effective at such date as the Company shall determine.

10.5    PROCEDURE.  An amendment, discontinuance or termination under this Article shall be valid only if it is approved by the Company's Board of Directors at a duly called meeting at which a quorum thereof is present or by written consent of the members of the Company's Board of Directors executed in accordance with applicable State law.

## ARTICLE 11
## GENERAL PROVISIONS

11.1    NO EMPLOYMENT CONTRACT.  Nothing contained in this Plan shall be construed as a contract of employment between the Employer and any employee, or as a right of any employee to be continued in the employment of the Employer, or as a limitation of the right of the Employer to discharge any of its employees with or without cause.

11.2    APPLICABLE LAW.  The provisions of the Plan shall be construed, administered and enforced according to applicable federal law and, where not preempted by federal law, the laws of the State of Pennsylvania.

11.3    NON-ALIENATION PROVISIONS.  No Benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to do so shall be void.  No Benefit under the Plan shall in any manner be liable for or subject to the debts, contracts, liabilities, engagements or torts of any person.

Notwithstanding the foregoing, the Plan will honor any Qualified Medical Child Support Order ("QMCSO") which provides for Plan coverage for an Alternate Recipient, in the manner described in ERISA §609(a) and in the Plan's QMCSO Procedures.

11.4    PAYMENTS TO INCOMPETENTS.  If the Administrator knows that any person entitled to payments under the Plan is incompetent by reason of physical or mental disability, age or some other cause, it may cause all payments thereafter becoming due to such person to be made to the person's legal guardian for the person's benefit, without responsibility to follow the application of amounts so paid.  Payments made pursuant to this Section shall completely discharge the Administrator and the Employer.

11.5    INABILITY TO LOCATE RECIPIENT.  If the Administrator is unable to make payment to any Participant or other person to whom a payment is due under the Plan because it cannot ascertain the identity or whereabouts of such Participant or other person after reasonable efforts have been made to identify or locate such person (including a notice of the payment so due mailed to the last known address of such Participant or other person as shown on the records of the Employer), such payment and all subsequent payments otherwise due to such Participant or other

CD000118

person shall be forfeited eighteen (18) months after the date such payment first became due or after such period as is provided in the applicable insurance contract.

11.6    PLAN COMMUNICATIONS.  All communications in connection with the Plan made by a Participant shall become effective only when duly executed on forms provided by and filed with the Administrator.

11.7    SOURCE OF BENEFITS.  The Company (and any insurance contracts purchased or held by the Company) shall be the sole source of Benefits under the Plan.  No Employee or other person shall have any right to, or interest in, any assets of the Company upon termination of employment or otherwise, except as provided from time to time under the Plan, and then only to the extent of the Benefits payable under the Plan to such Employee or other person.

11.8    INTERPRETATION.  This Plan is to be interpreted so as to be consistent in all respects with the requirements of the Code and ERISA.

11.9    SUBROGATION.  As a condition to receiving medical, disability or any other benefits under the Plan, covered person(s), including all dependents, agree to transfer to the Plan their rights to make a claim, sue and recover damages when the injury or illness giving rise to the benefits occurs through the act or omission of another person.  Alternatively, if a covered person receives any full or partial recovery, by way of judgment, settlement or otherwise, from another person or business entity, the covered person agrees to reimburse the Plan, in first priority, for any medical, disability or any other benefits paid by it (i.e., the Plan shall be first reimbursed fully, to the extent of any and all benefits paid by it, from any monies received, with the balance, if any, retained by the covered person).  The obligation to reimburse the Plan, in full, in first priority, exists regardless of whether the judgment or settlement, etc. specifically designates the recovery, or a portion thereof, as including medical, disability or other expenses.  Furthermore, the obligation to reimburse the Plan, in full, in first priority, exists regardless of whether the judgment, settlement or other recovery, together with all other  previous or anticipated recoveries, fully compensates the covered person for any damages the covered person may have experienced.  This provision is effective regardless of whether an agreement to this effect is actually signed.  The Plan's rights of full recovery, either by way of subrogation or right of reimbursement, may be from funds the covered person receives or is entitled to receive from the third party, any liability or other insurance covering the third party, the covered person's own uninsured motorist insurance or underinsured motorist insurance, any medical, disability or other benefit payments, no-fault or school insurance coverage, or other amounts which are paid or payable to or on behalf of the covered person.  The Plan may enforce its reimbursement or subrogation rights by requiring the covered person to assert a claim to any of the foregoing coverage to which he or she may be entitled.  The Plan will not pay attorney fees or costs associated with the covered person's claim without prior express written authorization by the Plan.  The Plan will not be subject to any "make whole" or other subrogation rule.

11.10    MEDICARE AND MEDICAID SECONDARY PAYOR RULES.  The Plan at all times will be operated in accordance with any applicable Medicare and Medicaid secondary payor and non-discrimination rules, including, but not limited to the rules of §1144(a) of the Social Security Act.  These rules include, where applicable, but are not necessarily limited to, rules concerning individuals with end stage renal disease, rules concerning active employees age 65 or over, and rules concerning working disabled individuals.

11.11    NON-DISCRIMINATION AND OTHER RULES.  All benefits and elections under this Plan shall be subject to all applicable non-discrimination and other rules under the Code and

CD000119

other applicable law (e.g., the non-discrimination rules of Code §§105(h), 125, 129 and 79, the Code §125 key employee 25% concentration rules, the Americans with Disabilities Act rules, etc.) and the Employer shall test the Plan for compliance with such rules and may take any actions it considers advisable for the purpose of ensuring the Plan's compliance with such rules.

11.12   HEALTH CARE CONTINUATION COVERAGE RULES.  Notwithstanding any provision of the Plan to the contrary, the Employer shall provide Participants and Dependents with all health care continuation coverage rights to which they are entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and any other similar, applicable State law.

11.13   HIPAA RULES.  Notwithstanding any provision of the Plan to the contrary, the Plan shall be administered at all times in accordance with the preexisting condition limitation, creditable coverage, certificate of coverage delivery, special enrollment period, notification, administrative simplification and other applicable requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

11.14   STATUTE OF LIMITATIONS.  Notwithstanding any otherwise applicable statutory statute of limitations, no legal action may be commenced or maintained to recover benefits under this Plan more than twelve (12) months after the final review decision by the Plan Administrator has been rendered (or deemed rendered).

11.15   COORDINATION OF BENEFITS.  The coordination of benefits provisions specified in the Appendix, as interpreted by the Plan Administrator in its discretion, shall control coordination of benefits situations involving the Plan and other payors.  Notwithstanding any provision of this Plan to the contrary, in any case where a claimant receives benefits under a Component Plan that could have been paid in part under another plan, the Plan Administrator has the right to seek reimbursement from that other plan.

11.16   HEALTHCARE INTEGRITY AND PROTECTION DATA BANK.  To the extent required by §221(a) of the Health Insurance Portability and Accountability Act of 1996 (as codified at 42 U.S.C. §1320a-7e) and applicable regulations, the Plan will report any "final adverse action" (as described under those regulations) taken on behalf of a group health plan offered under the Plan to the Healthcare Integrity and Protection Data Bank.

11.17   FAMILY AND MEDICAL LEAVE REQUIREMENTS.  Notwithstanding any provision of the Plan to the contrary, benefits will be made available during certain periods of leave in accordance with the applicable requirements of the Family and Medical Leave Act of 1993 and any similar applicable state law.

11.18   MEDICAL NECESSITY REQUIREMENT.  For purposes of medical benefits provided under the Plan, except as otherwise expressly provided in a Component Plan, no benefits will be provided for services that are not medically necessary, as determined by the Plan Administrator or, if applicable, by the Insurer.  Except as otherwise expressly provided in a Component Plan, a service will be considered medically necessary only if the Plan Administrator or Insurer determines that it is provided or prescribed by a qualified provider and is (i) essential for the symptoms and the diagnosis or treatment of a condition, illness or injury; (ii) provided for the diagnosis or the direct care and treatment of a condition, illness or injury; (iii) consistent with current standards of good medical practice; (iv) not primarily for the convenience of the covered person or the provider; (v) not considered experimental or investigative; and (vi) the most appropriate level of service or supplies that can be safely provided to the covered person.  Medical necessity is only one requirement for benefits to be covered and nothing in this Section shall be construed to require that

CD000120

the Plan cover any service merely because it is medically necessary under this Section.

11.19  NON-ASSIGNMENT OF BENEFITS. Except as may be required pursuant to a Qualified Medical Child Support Order, which provides for plan coverage for an alternate recipient, no participant or beneficiary may transfer, assign or pledge any Plan benefit.

11.20  PATIENTS TO EVALUTE CARE.  The Plan assumes no responsibility for the medical care reimbursed by the Plan that is provided by any practitioner.  Each patient should evaluate the quality of care and act accordingly.  No Plan provision expressed should be interpreted to restrict the access to or delivery of medically necessary services.  A patient's decision to forego such care should not be based on his or her interpretation of this Plan document or the Summary Plan Description.

11.21  <u>FAMILY AND MEDICAL LEAVE REQUIREMENTS</u>.  Notwithstanding any provision of the Plan to the contrary, benefits will be made available during certain periods of leave in accordance with the applicable requirements of the Family and Medical Leave Act of 1993 and any similar applicable state law.

**IN WITNESS WHEREOF**, the Company has caused this document to be executed and its seal to be affixed hereto, effective as specified herein.

**ATTEST/WITNESS:**

Print Name: _Theresa Kway_

**P.H. GLATFELTER COMPANY**

By: _William T. Yanavitch_ (SEAL)

Print Name: _William T. Yanavitch_

Date: _12-31-05_

CD000121

## SCHEDULE A–HIPAA PRIVACY-TRAINED EMPLOYEES

The following persons have been designated by the Plan Sponsor as authorized to use or disclose Protected Health Information for purposes of the Plan and have received appropriate training regarding the Plan's Health Information Privacy Policies and Procedures and the applicable requirements of the Privacy Regulations.  Any person on this list is authorized to access PHI on behalf of the Plan beginning on the date training has been completed and ending on the date that he or she is no longer authorized to access PHI (e.g., because of termination of employment or a change in responsibilities).

| Name | Date training completed | Date no longer authorized to access PHI |
|------|------------------------|------------------------------------------|
|      |                        |                                          |
|      |                        |                                          |
|      |                        |                                          |
|      |                        |                                          |
|      |                        |                                          |
|      |                        |                                          |
|      |                        |                                          |
|      |                        |                                          |
|      |                        |                                          |

CD000122

# HIPAA Compliance Training
## Documentation of Trainees

TRAINING

| NAME (please print) | Location | Position | Signature | Date |
|---|---|---|---|---|
| Jamc R. S. µ | York | Internal Auditor | | 5/28/08 |
| REONA CASSEL | SG | PR | Reona Cassel | 5/28/08 |
| LYDIA CHODNICKI | York | A/P - PR Mgr | | 5/28/08 |
| CHRISTNE COOL | SpringGrove | Payroll Admin | Christine Cool | 5/28/08 |
| JESSICA SISKE | SG | PR | Jessica Siske | 5/28/08 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

# HIPAA Compliance Training
## Documentation of Trainees

**Chillicothe:**

| | Signature | Date |
|---|---|---|
| Angela Ward | *Angela Ward* | 8-24-07 |
| Lori McCullough | *Lori L. McCullough* | 8/6/07 |
| Lori Theobald | *Lori J. Theobald* | August 06 2007 |
| Amy Parsons | *Amy Parsons* | 8-6-07 |
| Debbie Banks | *Debbie S. Banks* | 8-6-07 |
| Cari Larabee | *Cari L. Larabee* | 8-29-07 |
| Mitzi Anderson | *Mitzi L. Anderson* | 8-24-07 |
| Perry Hall | | |

# HIPAA Compliance Training
## Documentation of Trainees

**York:**

| | Signature | Date |
|---|---|---|
| Katherine Bolin | | 8/4/07 |
| Laurie Donahue | | 8/6/07 |
| Carolyn Gross | | 12-27-07 |
| Jay O'Keefe | | 12/27/07 |
| Karen Funk | | 8/6/07 |
| Theresa Kwayi | | 8/6/07 |
| George Skidmore | | 8/6/07 |

# HIPAA Compliance Training
## Documentation of Trainees

**Spring Grove:**

| | Signature | Date |
|---|---|---|
| Anjie Kauffman | *[signature]* | 8/6/07 |
| Judy Kershner | *[signature]* | 8/24/07 |
| Mark Phillips | *[signature]* | 8/6/07 |

CD000126

717 812 0251

# HIPAA Compliance Training
## Documentation of Trainees

**Fremont:**

| | Signature | Date |
|---|---|---|
| Cheryl Missler | *Cheryl Missler* | 8-6-07 |

CD000127

# SCHEDULE B–REQUIRED NOTICES

**1.      Notice of Required Coverage Following Mastectomies - Women's Health and Cancer Rights**

In compliance with the Women's Health and Cancer Rights Act of 1998, the Medical Plan provides the following benefits to all Plan participants who elect breast reconstruction in connection with a mastectomy, to the extent that the benefits otherwise meet the requirements for coverage under the Plan:

- Reconstruction of the breast on which the mastectomy has been performed;
- Surgery and reconstruction of the other breast to produce a symmetrical appearance; and
- Coverage for prostheses and physical complications of all stages of the mastectomy, including lymphedemas.

The benefits shall be provided in a manner determined in consultation with the attending physician and the patient.

The Plan will not deny eligibility, or continued eligibility, to enroll or to renew coverage solely to avoid providing these benefits.  Further, the Plan will not penalize or otherwise reduce or limit the reimbursement of an attending provider, or provide incentives (monetary or otherwise) to an attending provider, to induce the provider to provide care to an individual participant or beneficiary in a manner inconsistent with the Women's Health and Cancer Rights Act of 1998.

Of course, Plan terms such as any annual or lifetime maximums, deductibles, coinsurance and so on, as described in the Plan, apply to these benefits.  Please contact the Plan Administrator or refer to your Medical Plan Benefits Handbook for more detailed information regarding deductibles and coinsurance for these benefits under the Plan.

These benefits are subject to the Plan's regular deductible and co-payment.  For additional information, please contact your local Human Resources representative.

**2.      Maternity Stay Coverage Notice pursuant to the Newborns' & Mothers' Health Protection Act**

The Plan and any health insurance company insuring health benefits under the Plan, generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following vaginal delivery, or less than 96 hours following a cesarean section.  However, Federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother and/or her newborn earlier than 48 hours or 96 hours, as applicable.  In any case, the Plan and any health insurance company may not, under Federal law require that a provider obtain authorization from the Plan or health insurance company, if any, for prescribing a length of stay not in excess of 48 hours or 96 hours, as applicable.

For any coverage provided on an insured basis, different maternity stay coverage rights may apply.  If your medical coverage is insured, please see your Summary Plan Description or Insurer's Certificate Booklet for additional details.

**If you have any questions about these Notices please send your questions, in writing to:**

P.H. Glatfelter Company
Attn: Benefits Department
96 S. George Street
York, PA 17401

CD000128

## SCHEDULE C– QUALIFIED MEDICAL CHILD SUPPORT ORDER PROCEDURES

As required by §609 of ERISA, the following are the procedures used by the Plan to determine whether a medical child support order is a "Qualified Medical Child Support Order" which is to be honored by the Plan as described in §609 of ERISA.

I.  Determination of an Order's status as a Qualified Medical Child Support Order.

The Plan will honor the terms of a medical child support order if the order is determined by the Plan Administrator to be a Qualified Medical Child Support Order ("QMCSO").  An order will be determined by the Plan Administrator to be a QMCSO only if the answer to each of the following questions is "Yes":

**Yes   No**

☐   ☐   (1)   Is the order a judgment, decree or order by a court or by an administrative process having the force and effect of State law (including an approval of a property settlement agreement) which:

☐   ☐   (a)   provides for child support with respect to a child of a Plan Participant or provides for health benefit coverage to such a child (such a child referred to herein as an "alternate recipient");

☐   ☐   (b)   is made pursuant to a State domestic relations law (including a community property law); and

☐   ☐   (c)   relates to benefits under the Plan or enforces a law related to medical child support described in §1908 of the Social Security Act with respect to the Plan?

☐   ☐   (2)   Does the order create or recognize the existence of an alternate recipient's right to, or assign to an alternate recipient the right to, receive benefits for which a Participant or dependent is eligible under the Plan?

(3)   Does the order clearly specify the following:

☐   ☐   (a)   The name and the last known mailing address (if any) of the Participant covered by the order?

☐   ☐   (b)   The name and mailing address of each alternate recipient covered by the order?

☐   ☐   (c)   A reasonable description of the type of coverage to be provided by the Plan to each such alternate recipient, or the manner in which the type of coverage is to be determined?

**Yes   No**

☐   ☐   (d)   The period to which the order applies?

☐   ☐   (e)   Each plan to which the order applies?

☐   ☐   (4)   Does the order require the Plan to provide only a type or form of benefit, or an option, which currently is provided under the Plan (except to the extent necessary to meet the requirements of a law relating to medical child support described in §1908 of the Social Security Act).  (Answer this question "No" if the order (i) requires the Plan to provide a type or form of benefit, or an option, which currently is not provided under the Plan and (ii) does not purport to provide a type or form of benefit, or an

CD000129

option, which is necessary to meet the requirements of a law relating to medical child support described in §1908 of the Social Security Act.)

If any question above is answered "No", the Plan Administrator will instruct legal counsel to take appropriate action to resist the order, or to take the steps necessary to ensure that the order is amended to be a QMCSO.

II.    <u>QMCSO Procedures</u>.

Upon receipt of an order, the Plan Administrator promptly will notify the Plan Participant and each alternate recipient of the Plan Administrator's receipt of the order and the Plan Administrator's procedures for determining if the order is a QMCSO. Within a reasonable period of time after receipt of the order (e.g., 30 days), the Plan Administrator will make its determination concerning whether the order is a QMCSO and will notify the Participant and each alternate recipient of the Plan Administrator's determination. The Plan Administrator will notify the alternate recipient(s) of the Plan Administrator's determination by written notice mailed to the address specified in the order. Alternate recipients may designate a representative to receive copies of the notice that is required to be sent to alternate recipients.

If the Plan Administrator determines that an order is a QMCSO:

(A)    The Administrator will notify the following people that the order is a QMCSO:
- The Participant
- All alternate recipients
- Any representatives designated by the alternate recipients to receive copies of notices
- And, any and all affected carriers, vendors and claims payers.

(B)    Alternate recipients will be considered dependents under the Plan.

(C)    Alternate recipients will be considered participants under the Plan for purposes of the reporting and disclosure requirements of ERISA (e.g., Summary Plan Description delivery, annual reporting on Form 5500, etc.).

(D)    Any payment made by the Plan pursuant to the QMCSO that is reimbursement for expenses paid by an alternate recipient or alternate recipient's custodial parent or legal guardian will be made to the alternate recipient or alternate recipient's custodial parent or legal guardian.

CD000130

## SCHEDULE D– NOTICE OF HEALTH INFORMATION PRIVACY PRACTICES

TO:     Participants in health plans sponsored by Glatfelter

FROM: Plan Administrator

The health plan options sponsored by Glatfelter (referred to in this Notice as the "**Health Plans**") may use or disclose health information about participants (employees and their covered dependents) as required for purposes of administering the Health Plans, such as for reviewing and paying claims and utilization review. Some of these functions are handled directly by Glatfelter employees who are responsible for overseeing the operation of the Health Plans, while other functions may be performed by other companies under contract with the Health Plans (those companies are generally referred to as "service providers"). Regardless of who handles health information for the Health Plans, the Health Plans have established policies that are designed to prevent the misuse or unnecessary disclosure of protected health information.

Please note that the rest of this Notice uses the capitalized word, "**Plan**" to refer to each Health Plan sponsored by Glatfelter, including any Glatfelter employees who are responsible for handling health information maintained by the Health Plans as well as any service providers who handle health information under contract with the Health Plans. This Notice applies to each Health Plan maintained by Glatfelter, including plans or programs that provide medical, vision, prescription drug, dental, long term care and health care flexible spending account benefits.

As required by Federal law, this Notice is being provided to you to describe the Plan=s health information privacy procedures and policies. It also provides details regarding certain rights you may have under Federal law regarding medical information about you that is maintained by the Plan.

You should review this Notice carefully and keep it with other records relating to your health coverage. The Plan is required by law to abide by the terms of this Notice while it is in effect. This Notice is effective beginning April 14, 2003 and will remain in effect until it is revised.

If the Plan's health information privacy policies and procedures are changed so that any part of this Notice is no longer accurate, the Plan will provide a new updated Privacy Notice. The Plan reserves the right to apply any changes in its health information policies retroactively to all health information maintained by the Plan, including information that the Plan received or created before those policies were revised.

### Protected Health Information

This Notice applies to health information possessed by the Plan that includes identifying information about an individual. Such information, regardless of the form in which it is kept, is referred to in this Notice as **Protected Health Information** or **"PHI"**. For example, any health record that includes details such as your name, street address, date of birth or Social Security number would be covered. However, information taken from a document that does not include such obvious identifying details is also Protected Health Information if that information, under the circumstances, could reasonably be expected to allow a person who receives that information to identify you as the subject of the information.

Information that the Plan possesses that is not Protected Health Information is not covered by this Notice and may be used for any purpose that is consistent with applicable law and with the Plan=s policies and requirements.

CD000131

How the Plan Uses or Discloses Health Information

       Protected Health Information may be used or disclosed by the Plan as necessary for the operation of the Plan. For example, PHI may be used or disclosed for the following Plan purposes:

●     ***Treatment.*** If a provider who is treating you requests any part or all of your health care records that the Plan possesses, the Plan generally will provide the requested information. (There is an exception for psychotherapy notes. In the unlikely event that the Plan possesses any psychotherapy notes, those documents, with rare exceptions, will be used or disclosed only according to your specific authorization.)

       For example, if your current physician asks the Plan for PHI in connection with a treatment plan the physician has for you, the Plan generally will provide that PHI to the physician.

●     ***Payment.*** The Plan's agents or representatives may use or disclose PHI about you to determine eligibility for plan benefits, facilitate payment for services you receive from health care providers, to review claims and to coordinate benefits. This includes, if appropriate, disclosing information to the Plan Sponsor, as needed to facilitate the Plan's payment function.

       For example, if the Plan needs to process a payment to your current physician, but requires additional PHI to process that payment, it may request that PHI from the physician.

●     ***Other health care operations.*** The Plan may also use or disclose PHI if needed for various purposes that are related to the operation of the Plan. These purposes include utilization review programs, quality assurance reviews, contacting providers regarding treatment alternatives, contacting participants to provide appointment reminders or to provide information about treatment alternatives or other heath-related benefits and services that may be of interest to them, insurance or reinsurance contract renewals and other functions that are appropriate for purposes of administering the Plan. This includes, if appropriate, disclosing information to the Plan Sponsor, as needed to facilitate the Plan's health care operations function.

       For example, if the Plan wishes to undertake a review of utilization patterns under the Plan, it may request necessary PHI from your physician.

In addition to the typical Plan purposes described above, Protected Health Information also may be used or disclosed as permitted or required under applicable law for the following purposes:

●     ***Use or disclosure required by law.*** To the extent that the Plan is legally required to provide Protected Health Information to a government agency or anyone else, it will do so. However, the Plan will not use or disclose more information than it determines is required by applicable law.

●     ***Disclosure for public health activities.*** The Plan may disclose PHI to a public health authority that is authorized to collect such information (or to a foreign government agency, at the direction of a public health authority) for purposes of preventing or controlling injury, disease or disability.

       The Plan may also disclose PHI to a public health authority or other government agency that is responsible for receiving reports of child abuse or neglect.

       In addition, certain information may be provided to pharmaceutical companies or other businesses that are regulated by the Food and Drug Administration (FDA), as appropriate for purposes relating to the quality, safety and effectiveness of FDA-regulated products. For example, disclosure might be appropriate for purposes of reporting adverse reactions, assisting with recalls and contacting patients who have received products that have been recalled.

       Also, to the extent permitted by applicable law, the Plan may disclose PHI, as part of a public health investigation or intervention, to an individual who may have been exposed to a communicable disease or may otherwise be at risk of contracting or spreading a disease or condition.

●     ***Disclosures about victims of abuse, neglect or domestic violence.*** (The following does not apply to disclosures regarding child abuse or neglect, which may be made only as provided under

CD000132

*Disclosure for public health activities*.)

If required by law, the Plan may disclose PHI relating to a victim of abuse, neglect or domestic violence, to an appropriate government agency. Disclosure will be limited to the relevant required information. The Plan will inform the individual if any PHI is disclosed as provided in this paragraph or the next one.

If disclosure is not required by law, the Plan may disclose relevant PHI relating to a victim of abuse, neglect or domestic violence to an authorized government agency, to the extent permitted by applicable law, if the Plan determines that the disclosure is necessary to prevent serious harm to the individual or to other potential victims. Also, to the extent permitted by law, the Plan may release PHI relating to an individual to a law enforcement official, if the individual is incapacitated and unable to agree to the disclosure of PHI and the law enforcement official indicates that the information is necessary for an immediate enforcement activity and is not intended to be used against the individual.

- **Health oversight activities.** The Plan may disclose protected health information to a health oversight agency (this includes Federal, State or local agencies that are responsible for overseeing the health care system or a particular government program for which health information is needed) for oversight activities authorized by law. This type of disclosure applies to oversight relating to the health care system and various government programs as well as civil rights laws. This disclosure would not apply to any action by the government in investigating a participant in the Plan, unless the investigation relates to the receipt of health benefits by that individual.

- **Disclosures for judicial and administrative proceedings.** The Plan may disclose protected health information in the course of any judicial or administrative proceeding in response to an order from a court or an administrative tribunal. Also, if certain restrictive conditions are met, the Plan may disclose PHI in response to a subpoena, discovery request or other lawful process. In either case, the Plan will not disclose PHI that has not been expressly requested or authorized by the order or other process.

- **Disclosures for law enforcement purposes.** The Plan may disclose protected health information for a law enforcement purpose to a law enforcement official if certain detailed restrictive conditions are met.

- **Disclosures to medical examiners, coroners and funeral directors following death.** The Plan may disclose protected health information to a coroner or medical examiner for the purpose of identifying a deceased person, determining a cause of death, or other duties as authorized by law. The Plan also may disclose PHI to a funeral director as needed to carry out the funeral director=s duties. PHI may also be disclosed to a funeral director, if appropriate, in reasonable anticipation of an individual=s death.

- **Disclosures for organ, eye or tissue donation purposes.** The Plan may disclose protected health information to organ procurement organizations or other entities engaged in the procurement, banking, or transplantation of cadaveric organs, eyes, or tissue for the purpose of facilitating organ, eye or tissue donation and transplantation.

- **Disclosures for research purposes.** If certain detailed restrictions are met, the Plan may disclose protected health information for research purposes.

- **Disclosures to avert a serious threat to health or safety.** The Plan may, consistent with applicable law and standards of ethical conduct, use or disclose protected health information, (1) if it believes the use or disclosure is necessary to prevent or lessen a serious and imminent threat to the health or safety of a person or the public; and the disclosure is made to a person or persons reasonably able to prevent or lessen the threat, including the target of the threat; or (2) if it believes the disclosure is necessary for law enforcement authorities to identify or apprehend an individual because of a statement by an individual admitting participation in a violent crime that the Plan reasonably believes may have caused serious physical harm to the victim or where it appears that the individual has escaped from a correctional institution or from lawful custody.

- **Disclosures for specialized government functions.** If certain conditions are met, the Plan may use and disclose the protected health information of individuals who are Armed Forces personnel for

CD000133

activities deemed necessary by appropriate military command authorities to assure the proper execution of the military mission. Also, the Plan may use and disclose the PHI of individuals who are foreign military personnel to their appropriate foreign military authority under similar conditions.

The Plan may also use or disclose PHI to authorized federal officials for the conduct of lawful intelligence, counter-intelligence, and other national security activities or for the provision of protective services to the President or other persons as authorized by Federal law relating to those protective services.

- **Disclosures for workers' compensation purposes.** The Plan may disclose protected health information as authorized by and to the extent necessary to comply with laws relating to workers' compensation or other similar programs.

## Uses and Disclosures That Are Not Permitted Without Your Authorization

The Plan will not use or disclose Protected Health Information for any purpose that is not mentioned above, except as specifically authorized by you. If the Plan needs to use or disclose PHI for a reason not listed above, it will request your permission for that specific use and will not use PHI for that purpose except according to the specific terms of your **authorization**. In addition, you may complete an Authorization Form if you want the Plan to use or disclose health information to you, or to someone else at your request, for any reason.

Any authorization you provide will be limited to specified information, and the intended use or disclosure as well as any person or organization that is permitted to use, disclose or receive the information must be specified in the Authorization Form. Also, an authorization is limited to a specific limited time period and it expires at the end of that period. Finally, you always have the right to revoke a previous authorization by making a written request to the Plan. The Plan will honor your request to revoke an authorization but the revocation will not apply to any action that the Plan took in accord with the authorization before you informed the Plan that you were revoking the authorization.

## Your Health Information Rights

Under Federal law, you have the following rights:

- *You may request restrictions with regard to certain types of uses and disclosures.* This includes the uses and disclosures described above for treatment, payment and other health care operations purposes. If the Plan agrees to the restrictions you request, it will abide by the terms of those restrictions. However, under the law, the Plan is not required to accept any restriction. If the Plan determines that a requested restriction will interfere with the efficient administration of the Plan or is otherwise inappropriate, it may decline the restriction. If you want to request a restriction, you should submit a written request describing the restriction to the Privacy Contact person listed in this Notice.

CD000134

- *You may request that certain information be provided to you in a confidential manner.* This right applies only if you inform the Plan in writing (submitted to the Privacy Contact person listed in this Notice) that the ordinary disclosure of part or all of the information might endanger you. For example, an individual may not want information about certain types of treatment to be sent to his or her home address because someone else who lives there might have access to it. In such a case, the individual could request that the information be sent to an alternate address. The Plan will honor such a request if it is reasonable, but reserves the right to reject a request that would impose too much of an administrative burden or financial risk on the Plan.

- *You may request access to certain medical records possessed by the Plan and you may inspect or copy those records.* This right applies to all enrollment, claims processing, medical management and payment records maintained by the Plan and also to any other information possessed by the Plan that is used to make decisions about you or your health coverage. However, there are certain limited exceptions. Specifically, the Plan may deny access to psychotherapy notes and to information prepared in anticipation of litigation.

  If you want to request access to any medical records, you should contact the Privacy Contact person listed in this Notice. If you request copies of any records, the Plan may charge reasonable fees to cover the costs of providing those copies to you, including, for example, copying charges and the cost of postage if you request that copies be mailed to you. You will be informed of any fees that apply before you are charged.

- *You may request that protected health information maintained by the Plan be amended.* If you feel that certain information maintained by the Plan is inaccurate or incomplete, you may request that the information be amended. The Plan may reject your request if it finds that the information is accurate and complete. Also, if the information you are challenging was created by some other person or organization, the Plan ordinarily would not be responsible for amending that information unless you provide information to the Plan to establish that the originator of the information is not in a position to amend it. If you want to request that any medical record maintained by the Plan be amended, you should provide your request in writing to the Privacy Contact person listed in this Notice. Your request should describe the records that you want to be changed, each change you are requesting and your reasons for believing that each requested change should be made.

  The Plan normally will respond to a request for an amendment within 60 days after it receives your request. In certain cases, the Plan may take up to 30 additional days to respond to your request.

  If the Plan denies your request, you will have the opportunity to prepare a statement to be included with your health records to explain why you believe that certain information is incomplete or inaccurate. If you do prepare such a statement, the Plan will provide that statement to any person who uses or receives the information that you challenged. The Plan may also prepare a response to your statement and that response will be placed with your records and provided to anyone who receives your statement. A copy will also be provided to you.

- *You have the right to receive details about certain non-routine disclosures of health information made by the Plan.* You may request an accounting of all disclosures or health information, with certain exceptions. This accounting would not include disclosures that are made for Treatment, Payment and other health plan operations, disclosures made pursuant to an individual authorization from you, disclosures made to you and certain other types of disclosures. Also, your request will not apply to any disclosures made before April 14, 2003, or for any period longer than 6 years before the date your request is properly submitted to the Plan. You may receive an accounting of disclosures once every 12 months at no charge. The Plan may charge a reasonable fee for any additional requests during a 12-month period.

- *You have the right to request and receive a paper copy of this Privacy Notice.* If the Plan provides this Notice to you in an electronic form, you may request a paper copy and the Plan will provide one. You should contact the Privacy Contact identified at the end of this Notice if you want a paper copy.

CD000135

**Health Information Privacy Complaint Procedures—Privacy Contact**

If you believe your health information privacy rights have been violated, you may file a complaint with the Plan. To file a complaint, you should contact:

      P.H. Glatfelter Company
      Attn: Corporate Benefits Department
      96 S. George St.
      York, PA 17401
      Phone:  888-60-PAPER (888-607-2737)

In addition to your right to file a complaint with the Plan, you may file a complaint with the U.S. Department of Health & Human Services.  (Details are available on the Internet at www.hhs.gov/ocr/hipaa.)  You will never be retaliated against in any way as a result of any complaint that you file.

**Additional Information**

After reading this Notice, if you have questions about the Plan's health information privacy policies and procedures or if you need additional information, you should contact:

      P.H. Glatfelter Company
      Attn: Corporate Benefits Department
      96 S. George St.
      York, PA 17401

CD000136

APPENDIX

CD000137