# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLLEEN DWYER,

     Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA

     Defendant.

Case No. 2:19-cv-04751-GAM

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION FOR JUDGMENT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 52**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ ii

I.    INTRODUCTION ............................................................................................ 1

II.   GOVERNING STANDARD ............................................................................ 2

III.  MS. DWYER IS ENTITLED TO JUDGMENT ............................................. 3

   A.  Unum has Asserted a Single Basis for Denying Ms. Dwyer's Claim: Satisfaction of the LTD Elimination Period .................................................................. 3

   B.  Ms. Dwyer was Continuously Disabled Throughout her LTD Elimination Period and Through the Date her LTD Appeal was Denied ................................ 4

      1.  Unum and the Plan Administrator Made an Express Finding that Ms. Dwyer Was Disabled Through the LTD Elimination Period and Unum Was Not Free to Subsequently Disregard that Finding ............................................. 5

      2.  The Medical and Related Evidence Demonstrates that Ms. Dwyer was Disabled Through her LTD Elimination Period and Beyond ........................... 8

   C.  Unum's Explanation for Ms. Dwyer's Claim Denial Lacks Merit ................... 17

      1.  The STD and LTD Programs are "Connected" ........................................... 17

      2.  Unum Considered Records Beyond May 2018 ........................................... 18

      3.  Ms. Dwyer's Part-Time Work is Immaterial to her Eligibility for LTD benefits ...... 19

      4.  Unum's "Comprehensive" Physician Reviews of Ms. Dwyer's Claims were Anything but Comprehensive ........................................................................ 20

         a.  Dr. Norris' Opinion is Unsupported ...................................................... 21

         b.  Dr. Brown's Opinion is Similarly Meritless ......................................... 24

         c.  The Credibility of Both Dr. Norris and Dr. Brown are at Issue ............ 25

         d.  Dr. Norris' and Dr. Brown's Opinions Based Only on Records Reviews are of Little Evidentiary Value When Compared to that of Ms. Dwyer's Treating Clinicians ........... 26

   D.  Ms. Dwyer's Benefits Should be Reinstated with Interest Through the Date of Judgment and She Should be Awarded her Reasonable Attorneys' Fees and Costs ................................ 28

      1.  The Court may Award Ms. Dwyer all Past Due LTD Benefits Through the Date of Judgment, or as of the Date her LTD Appeal was Denied .................................. 28

      2.  The Amount of Benefits Owed to Plaintiff Continues to Grow ................................. 30

      3.  Ms. Dwyer is Entitled to Prejudgment Interest on all Back Benefits Awarded to Her ...... 30

      4.  Ms. Dwyer Should Be Permitted to Recover her Attorneys' Fees and Costs ........... 31

IV.   CONCLUSION ............................................................................................. 32

## TABLE OF AUTHORITIES

**Cases**

*Alfano v. Cigna Life Ins. Co. of New York*,
   Case No. 07 Civ. 9661 (GEL)., 2009 WL222351 (S.D.N.Y. Jan. 30, 2009)................... 12

*Billings v. UNUM Life Ins. Co. of Am.*,
   459 F.3d 1088 (11th Cir. 2006) ............................................................................. 29

*Black & Decker Disability Plan v. Nord*,
   538 U.S. 822 (2003).................................................................................... 11, 20

*Bledsoe v. Metro. Life Ins. Co.*,
   90 F. Supp. 3d 901 (C.D. Cal. 2015) .................................................................... 11

*Carney v. Int'l Bhd. of Elec. Workers Loc. Union 98 Pension Fund*,
   66 F. Appx. 381 (3d Cir. 2003).......................................................................... 29

*Cheney v. Standard Ins. Co.*, No. 13 C 4269,
   2014 WL 4259861 (N.D. Ill. Aug. 28, 2014) ................................................... 15

*Clark v. Unum Life Ins. Co. of Am.*,
   No. 17-cv-01119, 2018 WL 4931935 (M.D. Tenn. October 10, 2018)........................... 27

*Cook v. Liberty Life Assur. Co.*,
   320 F.3d 11 (1st Cir. 2003)................................................................................. 7

*Delaney v. Prudential Ins. Co. of Am.*,
   68 F. Supp. 3d 1214 (D. Or. 2014) ........................................................... 13, 14

*Dewsnup v. Unum Life Ins. Co. of Am.*,
   No. 2:17-cv-00126-TC, 2018 WL 6478886 (D. Utah Dec. 10, 2018)............................ 27

*Diaz v. Prudential Ins. Co. of America*,
   499 F.3d 640 (7th Cir. 2007) .......................................................................... 9, 16

*Doe v. Unum Life Ins. Co. of Am.*,
   116 F. Supp. 3d 221 (S.D. N.Y. 2015)................................................................ 28

*Doe v. Unum Life Ins. Co. of Am.*,
   No. 13-6900, 2014 WL 6454560 (E.D. Pa. Nov. 18, 2014) ............................................ 28

*Druhot v. Reliance Standard Life Ins. Co.*,
   No. 16-CV-2053, 2017 WL 4310653 (N.D. Ill. Sept. 28, 2017) ..................................... 16

*Duarte v. Aetna Life Ins. Co.*,
   No. SACV 13-00492-JLS, 2014 WL 1672855 (C.D. Cal. April 24, 2014)....................... 6

*Dwyer v. Unum Life Ins. Co.*,
   470 F. Supp. 3d 434, 437 (E.D. Pa. 2020) ..................................................... 2, 32

*Firestone Tire Rubber Co. v. Bruch*,
   489 U.S. 101 (1989)........................................................................................... 2

*Fleming v. Unum Life Ins. Co. of Am.*,
   No. SACV 17-01576-CJC, 2018 WL 6133859 (C.D. Cal. Nov. 20, 2018)..................... 27

*Fotta v. Mine Workers Health & Ret. Fund of 1974 Trs.*,
   319 F.3d 612 (3d Cir. 2003)............................................................................ 30

*Gessling v. Group Long Term Disability Plan for Emples. of Sprint/United Mgmt. Co.*,
    693 F. Supp. 2d 856 (S.D. Ind. 2010) ............................................................ 9

*Glista v. Unum Life Insurance Co. of America*,
    378 F.3d 113 (1st Cir. 2004) ......................................................................... 4

*Gordon v. Northwest Airlines, Inc.*,
    606 F. Supp. 2d 1017 (D. Minn. 2009) ........................................................ 12

*Granger v. Life Ins. Co.*,
    No. 6:14-cv-1820, 2016 WL 2851434 (M.D. Fla. Mar. 28, 2016) ................. 15

*Gross v. Sun Life Ass. Co.*,
    763 F.3d 73 (1st Cir. 2014) ......................................................................... 32

*Gross v. Sun Life Assurance Co. of Canada*,
    No. CV 09-11678-RWZ, 2016 WL 10747783 (D. Mass. July 13, 2016) ........ 30

*Hardt v. Reliance Std. Life Ins. Co.*,
    560 U.S. 242 (2010) ..................................................................................... 31

*Harlick v. Blue Shield of California*,
    686 F.3d 699 (9th Cir. 2012) ......................................................................... 3

*Heasley v. Belden & Blake Corp.*,
    2 F.3d 1249 (3d Cir. 1993) ............................................................................ 7

*Holmstrom v. Metro. Life Ins. Co.*,
    615 F.3d 758 (7th Cir. 2011) ....................................................................... 26

*Hoover v. Provident Life & Accident Ins. Co.*,
    290 F.3d 801 (6th Cir. 2002) ......................................................................... 2

*Javery v. Lucent Techs., Inc.*,
    741 F.3d 686 (6th Cir. 2014) ....................................................................... 26

*Juszynski v. Life Ins. Co. of N. Am.*,
    No. 06 CV 5503, 2008 WL 877977 (N.D. Ill. Mar. 28, 2008) ...................... 12

*Kellogg v. Metro. Life Ins. Co.*,
    549 F.3d 818 (10th Cir. 2008) ....................................................................... 4

*Kinser v. Plans Admin. Comm. of Citigroup, Inc.*,
    488 F. Supp. 2d 1369 (M.D. Ga. 2007) ....................................................... 27

*Krolnik v. Prudential Ins. Co. of Am.*,
    570 F.3d 841 (7th Cir. 2009) ......................................................................... 3

*Lain v. UNUM Life Ins. Co. of Am.*,
    279 F.3d 337 (5th Cir. 2002) ....................................................................... 15

*Lasser v. Reliance Standard Life Ins. Co.*,
    146 F. Supp. 2d 619 (D. N.J. 2001) ............................................................. 15

*Lasser v. Reliance Standard Life Ins. Co.*,
    344 F.3d 381 (3d Cir. 2003) ........................................................................ 15

*Levine v. Life Ins. Co. of N. Am.*,
    182 F. Supp. 3d 250 (E.D. Pa. 2016) .......................................................... 29

*McClure v. Life Ins. Co. of N. Am.*,
    84 F.3d 1129 (9th Cir. 1996) ....................................................................... 15

*McOsker v. Paul Revere Life Ins. Co.*,
   279 F.3d 586 (8th Cir. 2002) ........................................................................ 7

*Metropolitan Life Ins. Co. v. Glenn*,
   554 U.S. 105 (2008) ............................................................................... 15, 25

*Miller v. Am. Airlines, Inc.*,
   632 F.3d 837 (3d Cir. 2011) .......................................................................... 6

*Miller v. PNC Fin. Servs. Grp., Inc.*,
   278 F. Supp. 3d 1333 (S.D. Fla. 2017) ....................................................... 20

*Ministeri v. Reliance Standard Life Ins. Co.*,
   No. CV 18-10611-LTS, 2021 WL 495151 (D. Mass. Feb. 10, 2021) ............ 4

*Nat'l Sec. Sys., Inc. v. Iola*,
   700 F.3d 65 (3d Cir.2012) ............................................................................ 30

*Paese v. Hartford Life & Accident Ins. Co.*,
   449 F.3d 435 (2d Cir. 2006) .................................................................... 16, 30

*Perez v. Koresko*,
   86 F. Supp. 3d 293 (E.D. Pa. 2015) ........................................................... 30

*Pesacov v. Unum Life Ins. Co.*,
   463 F. Supp. 3d 571, 583 (E.D. Pa. 2020) ............................................... 3, 28

*Petrusich v. Unum Life Ins. Co. of Am.*,
   984 F. Supp. 2d 1112 (D. Or. 2013) ........................................................... 28

*Reich v. Ladish Co. Inc.*,
   306 F.3d 519 (7th Cir. 2002) ........................................................................ 4

*Rist v. Hartford Life & Accident Ins. Co.*,
   No. 1:05-cv-492, 2011 WL 2489898 (S.D. Ohio April 18, 2011) ................ 14

*Ruckelshaus v. Sierra Club*,
   463 U.S. 680 (1983) ..................................................................................... 31

*Saffon v. Wells Fargo & Co. Long Term Disability Plan*,
   522 F.3d 863 (9th Cir. 2008) ........................................................................ 7

*Sallavanti v. Unum Life Ins. Co. of Am.*.
   No. 11-cv-2263 2012 BL 452092 (M.D. Pa. July 25, 2012) ....................... 25

*Salomaa v. Honda Long Term Disability Plan*,
   642 F.3d 666 (9th Cir. 2011) ...................................................................... 16

*Schwartz v. Metro. Life Ins. Co.*,
   463 F. Supp. 2d 971 (D. Ariz. 2006) .......................................................... 30

*Scippio v. Fla. Combined Life Ins. Co.*,
   585 F. Supp. 2d 1317 (N.D. Fla. 2008) ...................................................... 14

*Sheehan v. Metro. Life Ins. Co.*,
   368 F. Supp. 2d. 228, 255 (S.D.N.Y. 2005) ............................................... 26

*Skretvedt v. E.I. DuPont De Nemours*,
   372 F.3d 193 (3d Cir. 2004) ........................................................................ 30

*Sloan v. Hartford Life & Accident Ins. Co.*,
   475 F.3d 999 (8th Cir. 2007) ...................................................................... 16

iv

*Smith v. Metro. Life Ins. Co.*,
  274 Fed. Appx. 251 (4th Cir. 2008)............................................................29
*Templin v. Indep. Blue Cross*,
  785 F.3d 861 (3d Cir. 2015)..................................................................31, 32
*Till v. Lincoln Nat'l Life Ins. Co.*,
  678 Fed. Appx. 805 (11th Cir. 2017)........................................................20
*Troy v. Unum Life Ins. Co. of Am.*,
  No. 03-9975, 2006 WL 846355 (S.D.N.Y. Mar. 31, 2006)........................27
*Ursic v. Bethlehem Mines*,
  719 F.2d 670 (3d Cir. 1983)......................................................................31
*Vastag v. Prudential Ins. Co. of Am.*,
  No. CV 15-6197, 2018 WL 2455921 (D.N.J. May 31, 2018).....................29
*Viera v. Life Ins. Co. of N. Am.*,
  642 F.3d 407 (3d Cir. 2011)........................................................................2
*Westphal v. Eastman Kodak Co.*,
  No. 05-6120, 2006 WL1720380 (W.D.N.Y. June 21, 2006)........................27
*Zorn v. Principal Life Ins. Co.*,
  No. 09-cv-81, 2012 WL 112949 (S.D. Ga. Jan. 12, 2012)..........................14

**Statutes**
29 U.S.C. § 1001......................................................................................1
29 U.S.C. § 1002......................................................................................7
29 U.S.C. § 1102....................................................................................18
29 U.S.C. § 1104......................................................................................7
29 U.S.C. § 1132..........................................................................2, 28, 31
29 U.S.C. § 1133................................................................................3, 20
42 U.S.C. § 423................................................................................16, 17

**Rules**
Fed. R. Civ. Proc. 52.................................................................................2
Fed. R. Civ. Proc. 54........................................................................31, 32

**Regulations**
20 C.F.R. § 404.1505................................................................................16
20 C.F.R. § 404.1510................................................................................16
20 C.F.R. Part 404, Subpart P, Appx. 2.....................................................16
29 C.F.R. §2560.503-1.......................................................................3, 11, 20, 23

Plaintiff Colleen Dwyer ("Ms. Dwyer"), through her undersigned counsel and pursuant to Federal Rule of Civil Procedure 52, hereby submits the following Memorandum of Law in Support of her Motion for Judgment.[1]

## I.    **INTRODUCTION**

The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") is a remedial statute enacted to protect "the interests of participants in employee benefit plans and their beneficiaries" by requiring the establishment of uniform standards of disclosure, conduct, and fiduciary responsibility. 29 U.S.C. § 1001(b).  Unfortunately, in the present matter, Unum Life Insurance Company of America ("Unum"), an employee benefit plan fiduciary, failed to discharge its fiduciary duties in the sole interest of Plan participants and beneficiaries as is required under ERISA Section 404, 29 U.S.C. § 1104.  Instead, it acted in its own financial self-interest when it denied Ms. Dwyer's claim for long-term disability ("LTD") benefits under the Glatfelter Health and Welfare Benefits Plan ("the Plan"), which Unum insured and for which it was responsible for adjudicating claims.

Unum's incorrect claim decision did not occur in a vacuum; it occurred mere weeks after Unum had determined that Ms. Dwyer was entitled to receive short-term disability ("STD") benefits under the Plan for the maximum duration possible under a nearly identical definition of disability.  The only material difference between Ms. Dwyer's LTD and STD claims was that Unum was financially responsible for paying Ms. Dwyer's LTD benefits, whereas her former employer self-insured the Plan's STD benefits.  Against this backdrop, Unum's adverse claim

---

[1] Ms. Dwyer incorporates her Proposed Findings of Fact in Support of her Motion for Judgment Pursuant to Federal Rule of Civil Procedure 52 ("PFOF") submitted with this Memorandum by reference as if it was fully restated at length herein.  To the extent that there are additional facts that are cited in this Memorandum that are not cited in the PFOF, such omission is inadvertent, and Ms. Dwyer respectfully requests that any such facts also be treated as proposed findings of fact.

determination cannot withstand scrutiny. Its inconsistent claim determinations are irreconcilable, they are not supported by the weight of the evidence, and the justifications Unum has advanced for its conduct are not credible nor are they supported by the record. Accordingly, as is discussed more fully below: (a) Ms. Dwyer's Motion for Judgment should be granted; (b) her LTD benefits should be reinstated through the date of judgment and into the future subject to the terms of the Plan; (c) she should be awarded prejudgment interest on all past due LTD benefits; and (d) she should be awarded her costs and reasonable attorneys' fees pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g).

## II.    GOVERNING STANDARD

The default standard of adjudication in an ERISA suit for benefits brought under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), is *de novo*, unless the plan gives the administrator discretionary authority to determine eligibility for benefits. *Firestone Tire Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the parties agree that the *de novo* standard applies in this case. *See Dwyer v. Unum Life Ins. Co.*, 470 F. Supp. 3d 434, 437 (E.D. Pa. 2020) (ECF No. 18) (hereinafter "*Dwyer I*"). Furthermore, the parties have stipulated to a bench trial on the papers pursuant to Federal Rule of Civil Procedure 52. *See* Scheduling Order (ECF No. 23).

The Court's role on *de novo* review is to determine whether Unum made a correct decision. *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). "'The administrator's decision is accorded no deference or presumption of correctness.' The court must review the record and 'determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan.'" *Id.* (quoting *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002)). Thus, the Court renders an independent decision regarding whether benefits are due under the plan. *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843

(7th Cir. 2009). In the context of a long-term disability claim such as Ms. Dwyer's, "she is required to prove it is more likely than not that she was disabled." *Pesacov v. Unum Life Ins. Co.,* 463 F. Supp. 3d 571, 583 (E.D. Pa. 2020) (citations omitted). Nothing more is required of Plaintiff, and the record demonstrates that she meets this standard.

### III.    MS. DWYER IS ENTITLED TO JUDGMENT

More than a preponderance of the evidence in the record demonstrates that Ms. Dwyer was continuously disabled under the terms of the Plan during the LTD elimination period at the time Unum denied her LTD claim, throughout the LTD appeal period, on the date Unum denied her LTD appeal, and that she continues to remain disabled to this day. Unum's adverse claim determination is irreconcilably inconsistent with its own decision approving Ms. Dwyer's STD claim for the maximum duration benefits were payable, and it is inconsistent with the weight of the evidence. Unum's rationale for finding otherwise is not credible as it was motivated by its financial conflict of interest.

### A.    Unum has Asserted a Single Basis for Denying Ms. Dwyer's Claim: Satisfaction of the LTD Elimination Period

In its letter denying Ms. Dwyer's LTD appeal, Unum relied on the same basis for denying her claim as it had during the initial claims process: that she had not been continuously disabled from her regular occupation through the duration of her LTD elimination period because she ceased to be disabled on May 7, 2018. AR002436. No other alternative explanation was offered. As a result, Unum may not now assert any new bases for the denial of Ms. Dwyer's claim. *See* 29 U.S.C. § 1133; 29 C.F.R. §2560.503-1(j) (requiring a fiduciary to provide the specific reason(s) for the adverse claim determination on appeal as part of providing a full and fair review); *see also, e.g., Harlick v. Blue Shield of California*, 686 F.3d 699, 719 (9th Cir. 2012) ("A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise

3

that reason for the first time when the denial is challenged in federal court, unless the beneficiary has waived the objection"); *Reich v. Ladish Co. Inc.*, 306 F.3d 519, 524 n.1 (7th Cir. 2002); *Kellogg v. Metro. Life Ins. Co.,* 549 F.3d 818, 828-29 (10th Cir. 2008) (limiting insurer in a *de novo* review claim to those rationales asserted in claim denial letter); *Ministeri v. Reliance Standard Life Ins. Co.*, No. CV 18-10611-LTS, 2021 WL 495151, at *14-15 (D. Mass. Feb. 10, 2021) (citing *Glista v. Unum Life Insurance Co. of America,* 378 F.3d 113 (1st Cir. 2004) and barring insurer from introducing new reasons for claim denial in litigation in *de novo* review case). In fact, at no point throughout discovery has Unum even attempted to identify another explanation for the denial of Ms. Dwyer's claim. Instead, Unum has confirmed that her LTD claim was denied because Unum believed she was not continuously disabled through her LTD elimination period. *See* Exhibit E (Phillips Dep.) at 63:2-64:22.

**B.    Ms. Dwyer was Continuously Disabled Throughout her LTD Elimination Period and Through the Date her LTD Appeal was Denied**

Although Unum contends that Ms. Dwyer ceased to be disabled as defined by the Plan as of May 7, 2018, the record evidence shows otherwise. Instead, the record evidence, much of which Unum relied upon in approving Ms. Dwyer's claim for STD benefits, shows by more than a preponderance of the evidence that Ms. Dwyer was disabled through her LTD elimination period. Although her Meniere's disease is her primary disabling condition, she suffers from a combination of impairments that render her unable to perform the material and substantial duties of her Regular Occupation. AR-002069. These impairments impact her ability to safely ambulate and reliably perform a full day's work on a full-time sustained basis. AR-002069 to AR-002070.

1.    **Unum and the Plan Administrator Made an Express Finding that Ms. Dwyer Was Disabled Through the LTD Elimination Period and Unum Was Not Free to Subsequently Disregard that Finding**

As an initial matter, Unum approved Ms. Dwyer's STD claim though August 5, 2018, which was the date the LTD elimination period ended. AR-001397. As is noted in Ms. Dwyer's PFOF, the definitions of disability are effectively identical for both STD benefits and the first 24 months of LTD benefits. To be disabled under the Plan's STD program, Ms. Dwyer had to be "certified as unable to perform the material and substantial duties of [her] regular occupation and not working in any gainful occupation." AR-000923 (emphasis added). Under the LTD program, Ms. Dwyer simply had to be unable to perform the material and substantial duties of her regular occupation. AR-000962. If anything, the standard for receiving disability benefits is actually higher under the STD program. *Compare* AR-000923 *with* AR-000962.

After Unum determined that Ms. Dwyer was disabled through the maximum benefit date for the STD program, P.H. Glatfelter Co. ("Glatfelter"), the Plan's named fiduciary and Plan Administrator with the full authority to interpret the Plan, did not disturb this finding. Pursuant to Article 8 of the Plan, Unum was not then free to change its finding as Glatfelter is the Plan's Administrator and the ultimate authority on the topic as it relates to both the STD and LTD program. *See* AR-000827 to AR-000828; 29 U.S.C. § 1104 (requiring plans to be administered according to their terms). Although the Plan document permits Glatfelter to delegate some or all of its authority to an insurer, there is no evidence in the Plan document or the Plan's Summary Plan Description that any such delegation was made to Unum other than the authority that is contained in the insurance policy funding the LTD benefits. Thus, while Unum may have had the right to adjudicate claims under the group insurance policy, there is no indication that it was free to make changes to a finding Glatfelter ratified or adopted as to Ms. Dwyer's disabled status. *See*

*id.* and AR-000931 (noting that a delegation had been made to the prior insurer, Cigna, but not indicating that any delegation had been made to Unum.)

In many respects, Ms. Dwyer's situation is similar to that in *Duarte v. Aetna Life Ins. Co.,* No. SACV 13-00492-JLS, 2014 WL 1672855 (C.D. Cal. April 24, 2014). In *Duarte*, the plaintiff participated in her employer's self-funded STD plan and its fully insured LTD plan. *Id.* at *1-2. Aetna administered claims under the employer's STD plan and insured and administered claims under the LTD plan. *Id.* Aetna denied the plaintiff's STD claim and then subsequently denied her LTD claim, asserting that the plaintiff failed to satisfy her LTD elimination period, which ran concurrently with her STD benefits. *Id.* at *2-6. Aetna subsequently determined that the plaintiff was entitled to STD benefits through the maximum benefit duration, which coincided with the end of her LTD elimination period. *Id.* at *6-7. The Court held that the plaintiff was entitled to the insured LTD benefits, noting that the insurer's finding that the plaintiff was entitled to the maximum STD benefit "represents a finding by Aetna that Plaintiff remained disabled from August 3, 2012 through at least December 2, 2012, the end of the STD benefits period." *Id.* at *9. As such, the "decision denying LTD benefits on the ground that Plaintiff did not meet the 26–week waiting period is no longer valid." *Id.* at *10. The decision denying the LTD benefits was vacated.

In the present matter, as in *Duarte*, to find that that the same quantum and character of evidence that was sufficient to support Ms. Dwyer's STD claim through the STD maximum benefit date was insufficient to demonstrate that she satisfied a concurrent LTD elimination period with an indistinguishable definition of disability is plainly wrong on its face and would constitute an abuse of discretion under a more deferential standard of review. *See, e.g., Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 848 (3d Cir. 2011) ("An administrator's reversal of its decision to award a claimant benefits without receiving any new medical information to support this change in position

is an irregularity that counsels towards finding an abuse of discretion") (emphasis added); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008) ("MetLife had been paying [the plaintiff] long-term disability benefits for a year, which suggests that she was already disabled. In order to find her no longer disabled, one would expect the MRIs to show an improvement, not a lack of degeneration"); *Cook v. Liberty Life Assur. Co.,* 320 F.3d 11, 23 (1st Cir. 2003); *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589-90 (8th Cir. 2002). By previously accepting Ms. Dwyer's medical evidence as adequate proof of her disability, Unum established a contractual course of dealing as to the quantum and character of evidence necessary to perfect her claim.

Indeed, Unum is a Plan fiduciary (*see* 29 U.S.C. § 1002(21)(A)) and is therefore required to prudently interpret the Plan "solely in the interest of the participants and beneficiaries" and exclusively for the purpose of "providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). It is neither prudent nor in the interest of Plan participants to interpret the term "disabled" one way for purposes of adjudicating claims under the Plan's self-funded STD program but to interpret it differently when adjudicating claims under the Plan's fully insured LTD program when the term has functionally identical definitions under both programs. In fact, Unum has confirmed that Ms. Dwyer is the only Plan participant this has <u>ever</u> happened to. *See* Exhibit C (Unum's Supplemental Discovery Responses) at Responses to Interrogatories 8 and 9. Moreover, to the extent there is any ambiguity in the meaning of the definition of disabled under the LTD program as it related to the STD program, that ambiguity is required to be construed in Ms. Dwyer's favor and against Unum under the *contra proferentem* doctrine. *See, e.g., Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1258 (3d Cir. 1993) (adopting the *contra proferentem* doctrine in ERISA cases).

### 2. The Medical and Related Evidence Demonstrates that Ms. Dwyer was Disabled Through her LTD Elimination Period and Beyond

With respect to Ms. Dwyer's Meniere's disease, the medical records and other documents in the file are clear: she was unable to perform her regular occupation. *See, e.g.,* AR-002158 to AR-002160; AR-002162 to AR-002167. Ms. Dwyer has stated that she cannot perform her regular occupation. Each physician who evaluated Ms. Dwyer and who was asked to opine on the subject has unequivocally stated that she is disabled from her regular occupation. The Social Security Administration has found Ms. Dwyer to be totally disabled. The only evidence to the contrary in the record is the unsupported assertions of Unum's in-house medical consultants who offered speculative opinions that are contrary to, and disregard the weight of, the medical evidence.

As an initial matter, there is no dispute that Ms. Dwyer suffers from Meniere's disease, or any of her other conditions that have been corroborated by medical testing and the opinions of her primary care physician, two separate otolaryngologists, and her psychologist. AR-000720 to AR-721; AR-00727 to AR-000728; AR000783. Unum has not challenged those diagnoses. *See, e.g.,* Exhibit F (Norris Dep.) at 119:2-9. Meniere's disease causes uncontrollable dizziness and nausea. AR-002148 to AR-002151.

Without restating the factual record at length here, it suffices to say that the evidence demonstrates that since February 2018, Ms. Dwyer has suffered between two and five flares of this condition per week, which causes severe vertigo, nausea, and vomiting. AR-002156; AR-002163; AR-002167. That remains the case to this day and there is no evidence to the contrary. None of the medications that Ms. Dwyer has taken to treat these flares has provided any meaningful relief of her symptoms for more than three years. AR-002162 to AR-002163. Moreover, the consensus of her treating physicians is that she had no sensible treatment options as they could render her deaf and result in further impaired balance, which is a problem because she

is a bilateral below the knee amputee and already suffers from deafness in one ear. AR-000744; AR-000783; AR-001762. The extensive lengths Ms. Dwyer has gone to attempt to remedy her condition, as well as the various treatments she has attempted are strong evidence that her symptoms are real and disabling. *See, e.g., Diaz v. Prudential Ins. Co. of America*, 499 F.3d 640, 646 (7th Cir. 2007); *Gessling v. Group Long Term Disability Plan for Emples. of Sprint/United Mgmt. Co.*, 693 F. Supp. 2d 856, 866 (S.D. Ind. 2010) (citing *Diaz, supra*).

Ms. Dwyer's medical records also demonstrate that her episodes of Meniere's disease leave her incapacitated and result in nausea that in turn results in vomiting or diarrhea, as well as dizziness that makes it dangerous and difficult to drive or ambulate. *See, e.g.,* AR000749; AR-000780; AR-001531; AR-002156; AR-002163. When she is symptomatic, Ms. Dwyer often must confine herself to bed or the restroom because of the likelihood she will vomit or, even worse, involuntarily defecate as well as the difficulty she has ambulating back and forth to the bathroom. AR-000756; AR-001761. Because Ms. Dwyer relies on two prosthetic legs to walk, her balance is impaired when she is feeling well. When she experiences dizziness, she is at a higher risk of falling and broke her ribs in one such fall. AR-0001585; AR-00146; AR-002393. Lastly, the medication she takes for these episodes heavily sedates her, resulting in a further inability to work. AR-002159; AR-002165.

Given these symptoms, Ms. Dwyer cannot perform her regular occupation or any gainful occupation while in a vertiginous state laying on the bathroom floor, much less when she is vomiting and defecating uncontrollably. Ms. Dwyer's healthcare providers agree that she is unable to perform her Regular Occupation. As is noted at length in the record and Ms. Dwyer's PFOF, Dr. Wilson, her primary care physician, has repeatedly opined that Ms. Dwyer is unable to perform her regular occupation, including through the date she submitted her LTD appeal. *See, e.g.,* AR-

000766 to AR-000767; AR-000772; AR-000779 to AR-000780; AR-001537; AR-001581; AR-002162 to AR-002167. Her symptoms are daily, severe, constantly interfere with her attention and concentration, and completely limit her ability to perform regular work activities. AR-002162 to AR-002167. Her medications cause drowsiness and sedation. AR-02165. Dr. Wilson believes her condition limits her ability to sit more than 20 minutes at a time during an eight-hour workday and that she would be limited to sitting no more than two hours per workday. AR-002165 to AR-002166. She would need to take at least eight breaks of 30 minutes each per day and would likely miss more than one week of work per month. AR-002166 to AR-002167. Likewise, Dr. Isaacson, one of her otolaryngologists, stated that her symptoms "interfere extremely" with her regular activities, such as working. AR-000742.

Dr. Revell, Ms. Dwyer's psychologist, has similarly opined, based on her first-person assessment of Ms. Dwyer, as to how Ms. Dwyer's Meniere's disease symptoms impact her functional abilities. She too has repeatedly opined that Ms. Dwyer is disabled from her regular occupation due to her Meniere's disease. AR-000749 to AR-000750; AR-000755 to AR-000760; AR-002154 to AR-002161. Dr. Revell has been unequivocal in her assessment that Ms. Dwyer is unable to perform her regular occupation. *Id.* "The frequency of the vertigo and treatment for episodes prevents patient from being able to consistently perform any work." AR-002159. Dr. Revell concurs that Ms. Dwyer's symptoms, which would frequently interfere with the attention and concentration needed to perform simple tasks in the workday, would also cause her to be absent from work for more than four days in a month (AR-002159 to AR-002160), which is equivalent to missing more than nine weeks of work per year. Dr. Revell further opined that Ms. Dwyer would need to take from one to three unscheduled breaks throughout the average workday and to rest for more than two hours before being able to return to work. AR-002160. Moreover,

the symptoms cause her a great deal of distress and adversely affect her mental health. Although Dr. Revell is not a physician, she has assessed Ms. Dwyer on a first-person basis and, given her treatment of Ms. Dwyer, is in a position to assess her credibility as it relates to her reported symptoms.

Although ERISA does not contain a treating physician rule, fiduciaries like Unum are not free to disregard the opinions of a treating physician in assessing whether one is disabled under an ERISA disability plan. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003). *See also* 29 C.F.R. § 2560.503-1(j)(6)(i)(A) (requiring a claim fiduciary to explain a basis for disagreeing with the opinion of a treating physician). Moreover, under Unum's Regulatory Settlement Agreement ("RSA"), the Plan's LTD program is required to be interpreted in a way that gives "significant weight" to the opinion of a treating physician in most circumstances. Exhibit B (RSA) at RSA-000069. Plainly, that did not occur here, despite the fact that neither Unum nor its physician reviewers doubted the veracity of Dr. Wilson, Dr. Revell, or Ms. Dwyer. Exhibit F (Norris Dep.) at 89:21-90:2, 102:18-22, 109:18-114:20; Exhibit G (Brown Dep.) 53:22-25, 55:20-22; 71:14-16, 72:11-13. If the Court was to give weight or "significant weight" to the opinions of Ms. Dwyer's treating clinicians, which is how the Plan should be interpreted under the RSA, there is more than a preponderance of the evidence that Ms. Dwyer was disabled under the terms of the Plan.

The parties agree that Ms. Dwyer's regular occupation is performed at a sedentary level of exertion. AR-001485. The evidence shows, however, that Ms. Dwyer cannot reliably perform sedentary work because she cannot remain seated at a desk for at least six hours of an eight-hour workday. AR-002164 to AR-002166. *See, e.g., Bledsoe v. Metro. Life Ins. Co.* 90 F. Supp. 3d 901, 919 (C.D. Cal. 2015) (citing *Alfano v. Cigna Life Ins. Co. of New York*, No. 07 Civ 9661

(GEL)., 2009 WL222351, at *18 (S.D.N.Y. Jan. 30, 2009) and noting that a sitting tolerance of "6 hours per day [is] generally recognized as the minimum tolerance required for sedentary work" according to the Department of Labor). As a result, courts have corrected disability insurers for finding a claimant can perform sedentary work with less than six hours of daily sitting ability. *See, e.g., Gordon v. Northwest Airlines, Inc.*, 606 F. Supp. 2d 1017, 1037 (D. Minn. 2009) (finding against insurer in an ERISA LTD claim and noting "the PAA also says that [the claimant] cannot walk, sit, or stand more than 2.5 hours per day. Common sense dictates that someone who cannot walk, sit, or stand more than 2.5 hours per day cannot do sedentary work."); *Juszynski v. Life Ins. Co. of N. Am.*, No. 06 CV 5503, 2008 WL 877977, at *7 (N.D. Ill. Mar. 28, 2008) (explaining a restriction of sitting to not more than 5.5 hours per day is insufficient to qualify one for a "sedentary" occupation, which generally requires sitting at least six hours per day under both Social Security and Department of Labor guidelines). The only evidence to the contrary is the self-serving opinion Unum obtained from its in-house consultant, Dr. Norris, which as is discussed below, should be afforded little to no weight by the Court.

Moreover, as Ms. Dwyer explained in the declaration she submitted in support of her appeal, in her numerous conversations with Unum personnel, and as her treating health care providers stated in their assessments, she cannot perform her regular occupation because she cannot concentrate or use the analytical skills her occupation requires when experiencing these incapacitating symptoms or while sedated from the medications used to treat her symptoms. *Compare, e.g.,* AR-002390 to AR-002394; AR-002154 to AR-002167 *with* AR-000258 to AR-000259; AR-000290. Indeed, no reasonable person could. It strains belief that a reasonable employer would want someone experiencing such symptoms to come to work as the employee would be unproductive and a safety risk that could increase its exposure to liability under the

12

workers' compensation statute or otherwise. Unum recognized as much when it approved her STD benefits through the end of her elimination period under a nearly identical definition of disability. AR-001114. There is no basis for finding otherwise now.

Ms. Dwyer's situation is nearly identical to that in *Delaney v. Prudential Ins. Co. of Am.*, 68 F. Supp. 3d 1214 (D. Or. 2014). In *Delaney*, the Plaintiff participated in a long-term disability plan with a definition of disability nearly identical to that of Ms. Dwyer's disability benefits plan. *Id.* at 1222. She worked in a sedentary position that required various cognitive and functional skills similar to Ms. Dwyer. *Id.* She had a longstanding history of Meniere's Disease, but experienced a long-term flare up that became increasingly debilitating. *Id.* at 1222-1223. Eventually, she began experiencing three to four episodes of vertigo per week with nausea and vomiting. *Id.* at 1224. Her claim for long-term disability benefits was denied by the insurer.

The *Delaney* Court held that the insurer erred in denying her long-term disability benefits because the record demonstrated that the episodic flareups of her Meniere's disease would cause the plaintiff to miss at least two days of work per week and such frequent absences from work would prevent her regularly attending work – a material duty of all fulltime occupations:

> Regular job attendance is a requirement of virtually all jobs, and certainly a requirement of those jobs which would provide the requisite income to disentitle Delaney to LTD benefits under the Plan if she could otherwise perform them. In the social security context, legions of cases rest in whole or in part on vocational expert testimony that missing two or more days of work per month renders a claimant unemployable. *See, e.g., Ghanim v. Colvin*, 763 F3d 1154, 1159 (9th Cir 2014) (missing two or more days per month would preclude work as a kitchen helper or commercial cleaner); *Brewes v. Comm'r of Social Sec. Admin.*, 682 F3d 1157, 1163 (9th Cir 2012) (missing two or more days per month would make claimant unemployable as a photocopying machine operator, laundry worker, or janitor); *Yurt v. Colvin*, 758 F3d 850, 855 (7th Cir 2014) (vocational expert testimony that "in competitive employment workers were expected to be on task 80 to 85 percent of the time and could not miss more than one or two days per month and up to approximately ten per year"); *Garcia v. Colvin*, 741 F3d 758, 760 (7th Cir 2013) (vocational expert testimony that "a worker who misses work more than

one day a month (beyond sick days, vacation days, and other authorized leave) would 'have difficulty sustaining competitive employment'"); *Douglas v. Bowen*, 836 F2d 392, 396 (8th Cir 1987)(vocational expert testimony that if the claimant "had more than two absences a month due to his impairments, he could not find work in the national economy").

The record conclusively establishes that Delaney would miss more than two days of work per month due to the severe attacks she regularly and unpredictably suffers and the hours of fatigue that follow. Even assuming that Delaney could perform her job as an escrow officer in the days after such an attack, the episodes and their immediate aftermath are sufficiently severe and occur with sufficient regularity that she would be absent from work at least two days per month, which in and of itself precludes employment. The implication that Delaney simply suffers from transitory vertigo from which she quickly recovers is untenable. Assuming that Delaney could find refuge at work sufficient to endure the initial vertigo, nausea, ataxia, and vomiting that accompany her episodes, the severe fatigue that follows, necessitating that she sleep for several hours, would constitute an unscheduled break or absence from work that would prevent her from performing the duties of any job.

Putting aside for the moment whether Delaney could perform her job on every "episode-free" day, including those that immediately follow a day on which she has an "episode," the great weight of the evidence indicates that she is precluded from employment by the number of days she has episodes and the resulting hours of incapacity she suffers on those days. Delaney has more than met her burden of establishing that she not able to perform the material and substantial duties of her former job as an escrow officer.

*Id.* at 1229–1230. *See also*, *e.g.*, *Scippio v. Fla. Combined Life Ins. Co.*, 585 F. Supp. 2d 1317 (N.D. Fla. 2008) (finding an employee who was constantly in the bathroom due to a medical condition was disabled under an ERISA disability plan); *Zorn v. Principal Life Ins. Co.*, No. 09–cv–81, 2012 WL 112949 (S.D. Ga. Jan. 12, 2012) (same); *Rist v. Hartford Life & Accident Ins. Co.*, No. 1:05-cv-492, 2011 WL 2489898 (S.D. Ohio April 18, 2011) (same).

In the present matter, the evidence shows that Ms. Dwyer would be unable to regularly attend and perform work while symptomatic and that she is generally symptomatic several days every week.  Ms. Dwyer cannot regularly and effectively perform her regular occupation from the

bathroom, in bed, or otherwise when she is experiencing her Meniere's symptoms. Indeed, Ms. Dwyer's inability to perform any one material duty of her regular occupation, whether it is sitting for six hours out of an eight-hour workday, regularly attending work, having adequate attention and concentration, or something else, requires a finding that Ms. Dwyer is disabled under the Plan. *See*, *Lasser v. Reliance Standard Life Ins. Co.*, 146 F. Supp. 2d 619, 642 (D. N.J. 2001), *aff'd*, 344 F.3d 381 (3d Cir. 2003) (holding that a surgeon who could not perform all of the material duties of his regular occupation was disabled); *Granger v. Life Ins. Co.*, No. 6:14-cv-1820, 2016 WL 2851434, at *10 (M.D. Fla. Mar. 28, 2016) (citing *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 345 (5th Cir. 2002), abrogated on other grounds by *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008); and *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1133-34 (9th Cir. 1996); *Cheney v. Standard Ins. Co.*, No. 13 C 4269, 2014 WL 4259861, at *10 (N.D. Ill. Aug. 28, 2014). Unum recognized as much when it approved Ms. Dwyer's short-term disability claim and there is no reason for it not to with respect to her long-term disability claim. Thus, for the same reasons as in *Delaney*, Unum has erred in denying Ms. Dwyer's claim.

Lastly, Ms. Dwyer was approved for Social Security Disability Insurance ("SSDI") benefits on August 26, 2019, after her internal LTD appeal was denied, retroactive to August 2018 and the Social Security Administration ("SSA") found that she had been continuously disabled since February 2018. Complaint Exhibit C (ECF No. 1-3). She has continually received such benefits since then. The Plan required Ms. Dwyer to apply for SSDI benefits and Unum benefits from Ms. Dwyer's receipt of them in that it is permitted to offset her LTD benefits by a significant portion of the SSDI benefits she receives. AR-000964 to AR-000967.

In order to receive SSDI, Ms. Dwyer had to persuade the SSA that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505; 20 C.F.R. § 404.1510.  Given Ms. Dwyer's age and educational background, the SSA's determination was necessarily based on a finding that Ms. Dwyer lacked the ability to perform sedentary work.  *See, e.g.,* 20 C.F.R. Part 404, Subpart P, Appx. 2.  The SSA's determination was made at least in part based on the medical records that Unum produced to it.  *See* Complaint Exhibit C (ECF No. 1-3) and AR-002334 to AR-002337; AR-002342.

Courts have routinely recognized that an award of SSDI is probative evidence that an individual is disabled under an ERISA regulated LTD plan when the definitions of disability under the Social Security Act and the LTD plan are substantially similar, or if the Social Security Act's definition of disability requires a greater showing than under the ERISA-regulated LTD plan.  *See, e.g., Sloan v. Hartford Life & Accident Ins. Co*., 475 F.3d 999, 1004-1005 (8th Cir. 2007) (affirming a District Court's decision to admit evidence of an SSDI award on *de novo* review in a Rule 52 bench trial on the papers and treating it as probative evidence of disability under ERISA disability plan); *Paese v. Hartford Life & Accident Ins. Co*., 449 F.3d 435, 442-443 (2d Cir. 2006) (same); *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 679 (9th Cir. 2011) ("Social Security disability awards do not bind plan administrators, but they are evidence of disability"); *Diaz*, 499 F.3d at 644-45 (noting the that differences between the standard for receiving SSDI and "any gainful occupation" LTD benefits are minor and that an SSDI award is relevant to a LTD determination); *Druhot v. Reliance Standard Life Ins. Co.*, No. 16-CV-2053, 2017 WL 4310653, at *11 (N.D. Ill. Sept. 28, 2017) (finding an SSDI award to be probative evidence of disability on *de novo* review when it was not included in the "administrative record").   In the present matter, the standard for "regular occupation" LTD benefits is a lower standard than that for receiving

SSDI.  *Compare* AR-000962 *with* 42 U.S.C. § 423(d)(1)  Moreover, if Unum had learned of Ms. Dwyer's SSDI award prior to adjudicating her LTD appeal, it would have been required to afford that decision "significant weight" under the terms of the RSA (*see* Exhibit B (RSA) at RSA-000012), which is further evidence of the persuasive effect to be given to Ms. Dwyer's SSDI benefits as they relate to her claim for LTD benefits.  Thus, Ms. Dwyer's receipt of SSDI is strong evidence that she was also disabled under the terms of the Plan.

### C.    Unum's Explanation for Ms. Dwyer's Claim Denial Lacks Merit

As is discussed above and in the PFOF, Unum made inconsistent findings with respect to Ms. Dwyer's disabled status from May 7, 2018 through August 5, 2018.  It found she was disabled under the Plan's STD program but was not disabled under the Plan's LTD program over the same period of time and despite the nearly identical definitions of disability under both programs.  In its letter denying Ms. Dwyer's LTD appeal, Unum attempted to explain its inconsistent positions by suggesting that it denied Ms. Dwyer's LTD claim because: 1) "Ms. Dwyer's employer's Short Term Disability plan is not connected to the Long Term Disability policy;" 2) "[the STD] claim did not consider medical records beyond May 3, 2018;" 3) Unum learned that Ms. Dwyer was performing part-time work; 4) the LTD claim was reviewed by Unum physicians as well as nurses and that "[t]he comprehensive medical reviews included discussions with Ms. Dwyer's medical providers."  AR002441.   Each explanation is meritless.  In reality, the only difference between Ms. Dwyer's STD and LTD claims was that Glatfelter paid for the STD benefits and Unum was financially liable for the payment of LTD benefits.

### 1.    The STD and LTD Programs are "Connected"

Unum's assertion that the STD and LTD program are not "connected" is false.  Glatfelter provides both STD and LTD benefits through a single, integrated, employee welfare benefit plan:

the Plan.    AR-000796 to AR-000854; Complaint Exhibit A (ECF No. 1-1).    Every employee

benefit plan must be established pursuant to a written instrument. 29 U.S.C. § 1102.    In this matter,

that instrument is the Glatfelter Health and Welfare Benefits Plan plan document.    *See* AR-000796

to AR-000854; Complaint Exhibit A (ECF No. 1-1).    Article 6 of the Plan states that the Plan

provides both STD and LTD benefits, in addition to other welfare benefits.    AR-000818 to AR-

000820.    STD and LTD benefits are simply constituent parts of the Plan and that fact that the STD

program is self-funded and the LTD program is insured does not eliminate the self-evident

connections between the two forms of benefit.

### 2.    Unum Considered Records Beyond May 2018

Unum's statement that it did not consider records after May 2018 in reviewing Ms.

Dwyer's STD claim is also false.    The STD claim file is clear that at least as of July 23, 2018

Unum received a letter Dr. Revell dated July 16, 2018 summarizing Ms. Dwyer's recent mental

health treatment and her observations regarding the impact Ms. Dwyer's Meniere's disease was

having on her life.[2]    AR-001416 to AR-001417.    Unum likewise continued to receive medical

records through July 2018 related to her STD claim.    *See, e.g.,* AR-001431 to AR-001446.

Moreover, Unum's explanation, even if true, is meaningless because the additional medical

records it received for Ms. Dwyer related to her LTD claim were either duplicates or entirely

consistent with the records it had previously received in connection with Ms. Dwyer's STD claim.

*Compare* AR-001162 to AR-00163l; AR-001218 to AR-001226; AR-001286 to AR-001287; AR-

001331 to AR-001339; AR-001416 to AR-001417; AR-001432 to AR-001446 *with* AR-001547

to AR-001557; AR-001564 to AR-001565; AR-001573 to AR-001581; AR-001790 to AR-

---

[2] The STD claim file was produced in discovery, but it is also included in the so-called "Administrative Record" at AR-001104 to AR001483.    *See also* AR-002226 for an index of documents submitted with Ms. Dwyer's LTD appeal to Unum.

001802; AR-001833 to AR-001847; AR-001869 to AR-001870; AR-001932 to AR-001935; AR-002068 to AR-002070; AR-001361 to AR001362.  Both sets of records show that Ms. Dwyer suffered from Meniere's disease and experienced debilitating symptoms as a result.  *Id.*  The only new record that Unum received in connection with the LTD claim that is qualitatively different than the records received in connection with the STD claim is Ms. Dwyer's prescription drug fill history.  AR-001636 to AR-001651. That document alone does not provide much if any evidence regarding the disabling nature of Ms. Dwyer's condition or her level of functional impairment. It just shows what prescriptions she filled and when.  In reality, much of the medical records found in the so-called administrative record that post-date the summer of 2018 were submitted in connection with Ms. Dwyer's LTD appeal.  *See* AR002226.  Thus, Unum's contention that it received additional medical records to support the initial denial of the LTD claim relative to the STD claim is at best a red herring because it reviewed the same records in considering her LTD and STD claims and any new records received were consistent with those supporting her STD claim.

### 3.      Ms. Dwyer's Part-Time Work is Immaterial to her Eligibility for LTD benefits

Unum's suggestion that Ms. Dwyer's LTD claim was properly denied because she was able to return to part time work does not support a finding that Ms. Dwyer was not disabled during the LTD elimination period or otherwise.  The Plan required Ms. Dwyer to be disabled from her regular occupation during the LTD elimination period and for the first 24 months thereafter, including a 20% loss in her indexed monthly earnings.[3]  AR-000962  The record shows that Ms. Dwyer's regular occupation was that of a program/project manager and that she earned in excess of $100,000 per year in that role.  AR-000287; AR-000005.  The part-time work Ms. Dwyer

---

[3] Unum has never contested the fact that Ms. Dwyer experienced a greater than 20% loss in earnings.

performed included working as a cashier at a car dealership, working at an insurance agency, selling merchandise online through India Hicks' multi-level marketing program, and occasionally performing weddings as a duly licensed wedding officiant.

Unum has not identified any evidence in the record or otherwise that the work Ms. Dwyer performed on a part-time basis is consistent with her regular occupation, as that term is defined in the Plan. Moreover, Ms. Dwyer's health caused her to cease working at the car dealership and insurance agency, both of which were run by friends of hers and both which permitted her to set her own hours. Indeed, Unum's corporate designee admitted as much on behalf of the company. *See* Exhibit E (Phillips Dep.) at 37:10-38:9. Moreover, that work was part time and paid her less than 20% of her indexed monthly earnings. *See, e.g.,* AR-000459 to AR-000460. Thus, here too, Unum has relied on an invalid basis for denying Ms. Dwyer's claim.

### 4. Unum's "Comprehensive" Physician Reviews of Ms. Dwyer's Claims were Anything but Comprehensive

Unum did not rely on "comprehensive" physician reviews of Ms. Dwyer's LTD claim to support its finding that she was not continuously disabled throughout the LTD elimination period. It relied on superficial, factually flawed, and self-serving medical reviews of its own in-house medical consultants, to the complete exclusion of the opinions of Ms. Dwyer's treating clinicians and violated ERISA Section 503, 29 U.S.C. § 1133, 29 C.F.R. § 2560.503-1, and the RSA in the process. *See also, Nord*, 538 U.S. at 832-834.

As an initial matter, the opinions of the Unum record-reviewing clinicians who first reviewed Ms. Dwyer's initial LTD claim are irrelevant as ERISA required Unum not to give any deference to their opinions during the claim appeal process. *See* 29 C.F.R. § 2560.503-1(h)(3)(ii) and (4); *see also Miller v. PNC Fin. Servs. Grp., Inc.*, 278 F. Supp. 3d 1333, 1343 (S.D. Fla. 2017) (citing *Till v. Lincoln Nat'l Life Ins. Co.*, 678 Fed. Appx. 805, 808 n.2 (11th Cir. 2017) for the

proposition that the only issue before the Court in an ERISA benefits case is the decision reached on appeal).  This makes sense for a variety of reasons, not the least of which being that Unum's initial record reviewing consultants and claims handlers were working off of a different factual record than the reviewers who considered Ms. Dwyer's appeal.  Yet, Unum improperly relied on them, at least in part, in adjudicating the appeal of Ms. Dwyer's claim.  Exhibit E (Phillips Dep.) at 34:24-35:11.

Additionally, neither of the two Unum-employed onsite physicians who reviewed Ms. Dwyer's appeal offered credible, much less comprehensive, evaluations and opinions regarding her claim. Both Dr. Norris and Dr. Brown offered opinions that Ms. Dwyer was not disabled due to either physical or mental illness.  Neither doctor personally evaluated Ms. Dwyer.  Neither doctor spoke with Ms. Dwyer.  Neither doctor spoke with any of Ms. Dwyer's treating health care providers.  Neither doctor is licensed to practice medicine in Pennsylvania.  Exhibit F (Norris Dep.) at 11:9-12:3; Exhibit G (Brown Dep.) at 10:4-15.  Instead, they each rendered an opinion based solely on a records-only review of Ms. Dwyer's claim.

### a.      Dr. Norris' Opinion is Unsupported

Dr. Norris' opinion as to Ms. Dwyer's capacity to perform her regular occupation cannot withstand scrutiny.   First, with respect to Ms. Dwyer's part-time work, Dr. Norris opined that Ms. Dwyer's reported inability to perform her regular occupation was not consistent with her part time work.  AR-002289 to AR-002292; Exhibit F (Norris Dep.) at 59:18-60:7.  As to Ms. Dwyer's capacity to perform part-time work, Dr. Norris testified that her reported symptoms were inconsistent with performing any work.  *Id.* at 62:15-63:21.  Yet, Dr. Norris had no information regarding the attendance requirements of  Ms. Dwyer's part-time work, that she was working for family friends, or whether she could set her own hours.  *Id.* at 63:22-64:13.    Similarly, the

requirements of Ms. Dwyer's regular occupation that Dr. Norris focused on were those related to her ability to lift, carry, push, and pull.  Norris 64:14-65:8.  Ms. Dwyer did not contend that she could not meet the lifting requirements of her regular occupation.  *Id*. 65:21-23. Dr. Norris did not review her job duties or consider how the duties of her regular occupation compared to the duties for the part-time jobs she performed.  *Id*. at 65:21-66:6.

Next, with respect to her prescription drug fills and refills, Dr. Norris contended that they were inconsistent with the reported severity of her symptoms.  *Id*. at 66:17-67:6.  Dr. Norris could not, confirm, however, that the list of prescription drug fills that he referenced was a complete list of her prescription drug fills.  67:24-68:1.  He also did not know how much of the medications Ms. Dwyer had in her home and if she refrained from filling prescriptions because she already possessed them. *Id*. at 68:2-10.  He also acknowledged that many of the medications Ms. Dwyer had been prescribed were used to treat Meniere's disease.  *Id*. at 68:11-70:6; 71:4-78:6. Similarly, he conceded that drowsiness or sedation are potential side effects of those medications.  *Id.*  He also acknowledged that one of the suppositories Ms. Dwyer took for her Meniere's disease symptoms could be expelled from her body due to the diarrhea she experienced due to the Meniere's disease.  *Id.* at 71:18-72:1.  Although Dr. Norris did not recall Ms. Dwyer reporting drowsiness and sedation from the medications prescribed to treat her symptoms, there was in fact evidence of such side-effects reported in the record in multiple places as well as Ms. Dwyer's reluctance to take her medications due to the side effects. *See, e.g.,* AR-001177; AR-002158; AR-002391.  In reality, Dr. Norris could not identify anything specifically inconsistent between Ms. Dwyer's prescription drug fill and refill history and her reported symptoms.

Third, Dr. Norris opined that Ms. Dwyer's medical treatment was inconsistent with her reported symptoms, but that too is incorrect.  For example, he identified her decision to decline an

22

intratympanic injection that could have resulted in deafness and impaired balance. Norris at 78:22-79:22. Yet, he also acknowledged that Ms. Dwyer was already nearly deaf in one ear and that her balance was already impaired by virtue of being a double amputee. *Id*. at 79:15-80:9. Moreover, he conceded that one of her physicians had recommended that she not undergo any other procedures in her left ear. *Id*. at 80:10-13. Dr. Norris also acknowledged that he would not have recommended she undergo any additional treatment, and he did not take issue with the frequency with which she saw her primary care physician for treatment. *Id.* at 81:22-82:4, 83:17-84:7. Instead, he asserted, implausibly, that she should have gone to an urgent care facility or emergency room each time she experienced intractable symptoms for a chronic condition that afflicted her multiple times per week on a weekly to near weekly basis and for which she had been told she was receiving the only pragmatic treatment available. *Id*. at 84:8-86:2.

Dr. Norris was hardly a qualified expert to evaluate Ms. Dwyer's claim. Aside from having no firsthand knowledge of her health condition, he has minimal clinical experience generally, and no clinical experience since 2010. *Id.* at 14:4-18:10. Prior to becoming employed at Unum, Dr. Norris served in the Air Force as a physician, but only a small portion of his work was performed in a primary care and clinical setting. For example, as a squadron commander, he typically treated patients "roughly two to three times maybe in a month. . . . Usually it would be in half-a-day periods." Norris 16:16-19. He has almost zero experience treating a patient with Meniere's disease, having only treated a "handful" of such individuals, none of whom were bilateral below the knee amputees about 12-13 years before Ms. Dwyer's claim accrued. Norris 70:5-25. ERISA requires, however, that Unum have a professional with appropriate training and experience review Ms. Dwyer's appeal. 29 C.F.R. § 2560.503-1(h)(3)-(4). Dr. Norris' paucity of clinical experience

in recent years and in treating individuals with Ms. Dwyer's condition rendered him unqualified to opine on Ms. Dwyer's ability to perform the material duties of her regular occupation.

<strong>b.        Dr. Brown's Opinion is Similarly Meritless</strong>

Dr. Brown, Unum's onsite physician specializing in psychiatry, opined that Ms. Dwyer was not disabled due to a psychiatric illness.  He rendered no opinion as to Ms. Dwyer's disabled status from a physical medicine standpoint.  Like Dr. Norris, however, his opinion is flawed and offers Unum no support in this matter.

As an initial matter, although Dr. Brown seemingly has more clinical experience, he has not treated patients since the year 2000.  Exhibit G (Brown Dep.) at 13:1-2.  Aside from working at Unum full time, his only other clinical practice involves conducting forensic evaluations of competency and related issues of prisoners once or twice a year in capital punishment cases.  *Id*. at 12:22-14:4.

More importantly, however, Dr. Brown did not evaluate Ms. Dwyer in person or speak with her psychologist.  *Id.* at 55:13-22, 81:20-82:6.  Aside from not having evaluated Ms. Dwyer, Dr. Brown could not be certain that he reviewed all of Ms. Dwyer's medical records.  Brown 37:2-7.  He simply assumed that all of Ms. Dwyer's treatment records had been made available to him on Unum's computer systems.  *Id*. at 37:12-38:15.  Similarly, although Dr. Brown is a licensed physician, he assumed that Dr. Norris' assessment of Ms. Dwyer's physical function was correct.  *Id*. at 39:6-40:1. He undertook no independent analysis as to Ms. Dwyer's physical health.  *Id*. at 39:23-40:1.  Thus, if Dr. Norris' assessment of Ms. Dwyer was incorrect, it could affect the validity of Dr. Brown's "whole person" analysis of Ms. Dwyer.  *Id*.

The factual premise of certain aspects of Dr. Brown's report were also flawed.  For example, he claimed that the "claimant and her psychologist noted that the claim was ill suited for

24

her position." AR-002311. That is not correct and is in fact the characterization of one of Unum's other in-house clinicians, which Ms. Dwyer's psychologist specifically disputed. *See* Brown 41:9-45:25; *see also* AR-002043 to AR002044; AR-000753-AR000754. Dr. Brown also pointed to Ms. Dwyer's part-time work as evidence that she was not functionally impaired, when he had no understanding of how the requirements of those positions compared to her regular occupation. Exhibit G (Brown Dep.) 47:22-49:8.

<blockquote>

**c.    The Credibility of Both Dr. Norris and Dr. Brown are at Issue**

</blockquote>

Dr. Norris and Dr. Brown, who are both Unum employees, have a conflict of interest in that if they reach an opinion that Ms. Dwyer was disabled and if her claim for benefits was approved, such an opinion would be adverse to their employer's financial interests. This fact alone puts their credibility at issue. Indeed, this conflict of interest is inherent and systemic as Unum is responsible for adjudicating and paying claims under the Plan. *Glenn*, 554 U.S. at 112.

The conflict of interest identified above is borne out by Dr. Norris' and Dr. Brown's testimony. Both admitted that they did not doubt Ms. Dwyer's credibility as it related to her reported symptoms, nor did they doubt the veracity of her treating clinicians. Exhibit F (Norris Dep.) at 89:21-90:3; Exhibit G (Brown Dep.) at 53:22-25, 55:20-22; 71:14-16. They also did not doubt her diagnoses. Exhibit F (Norris Dep.) at 93:18-24; AR-002295. They both nonetheless concluded that Ms. Dwyer was not functionally impaired from performing her regular occupation. Such decision-making is not isolated. Although their conflict of interest does not render Drs. Norris and Brown's opinion meaningless, the court sitting in its role of the trier of fact may take it into consideration when assessing his credibility. *See, e.g., Sallavanti v. Unum Life Ins. Co. of Am..* No 11-cv-2263 2012 BL 452092 (M.D. Pa. July 25, 2012), appended to Plaintiff's Letter Motion for Discovery as Exhibit H (ECF No. 16-8).

> **d.    Dr. Norris' and Dr. Brown's Opinions Based Only on Records Reviews are of Little Evidentiary Value When Compared to that of Ms. Dwyer's Treating Clinicians**

Blindly endorsing the opinion of a record reviewing physician who never spoke with or examined Ms. Dwyer over the opinions of those health care providers that treated Ms. Dwyer, who are familiar with her and her condition, and failing to offer any explanation as to why, by definition denied Ms. Dwyer a full and fair review of her claim and violated Unum's obligations to interpret the Plan consistent with the RSA.  When dealing with subjective symptoms, such as pain, nausea, vertigo, and mental health, the opinion of an expert that has assessed an individual in person has particular value over the opinion of an expert that has conducted a records-only review.  *See*, *e.g., Holmstrom v. Metro. Life Ins. Co.,* 615 F.3d 758, 774-75 (7th Cir. 2011) (holding benefit denial arbitrary and capricious for providing no reason that plan credited its consultants' opinions over treating physicians where consulting physicians only reviewed records, and the treating physician who rendered an opinion stated the claimant was disabled due to subjective symptoms that are difficult to assess without evaluating the patient).

Moreover, as to Dr. Brown's mental health review, courts have routinely held that as they relate to mental health claims, records-only reviews of disability claimants are of nominal to no value.  *See*, *e.g., Javery v. Lucent Techs., Inc.*, 741 F.3d 686, 702 (6th Cir. 2014) (stating "file reviews are questionable as a basis for identifying whether an individual is disabled by mental illness" and expressing concern that file reviewer denied existence of evidence that was in the file, and then drew adverse inferences from the purported absence). *See also Sheehan v. Metro. Life Ins. Co.,* 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005) ("[W]hen a psychiatrist evaluates a patient's mental condition, 'a lot of this depends on interviewing the patient and spending time with the patient,' . . . a methodology essential to understanding and treating the fears, anxieties, depression,

and other subjective symptoms the patient describes.") (citation omitted); *Kinser v. Plans Admin. Comm. of Citigroup, Inc.*, 488 F. Supp. 2d 1369, 1383 (M.D. Ga. 2007) ("There can be no serious doubt that a psychiatric opinion of a treating psychiatrist is more reliable than an opinion based on a one-time file review"); *Westphal v. Eastman Kodak Co.*, No. 05-6120, 2006 WL1720380, at *4-5 (W.D.N.Y. June 21, 2006) (same); *Troy v. Unum Life Ins. Co. of Am.*, No. 03-9975, 2006 WL 846355, at *10 (S.D.N.Y. Mar. 31, 2006) (same). In fact, Dr. Brown admitted that he would never render an opinion as to one his own patients without having met with the patient in person. Exhibit G (Brown Dep.) at 57:17-21. He further acknowledged that the American Psychiatric Association's "Goldwater Rule"[4] is premised upon the general principal that psychiatrists should not opine on one's mental health without having examined such individual. *Id.* at 58:10-59:13.

On several occasions, at least one court in this District and courts elsewhere have overturned Unum's denials of disability benefits when they were based on the records-only reviews of Drs. Norris or Brown. *See, e.g., Clark v. Unum Life Ins. Co. of Am.*, 2018 WL 4931935, at *15-17 (M.D. Tenn. October 10, 2018) (noting the potential conflict of interest and criticizing Dr. Norris' report for being self-serving to Unum's interests); *Dewsnup v. Unum Life Ins. Co. of Am.*, No. 2:17-cv-00126-TC, 2018 WL 6478886, at *10 (D. Utah Dec. 10, 2018) (crediting the opinion of a treating healthcare provider over that of Dr. Norris and others in a *de novo* review case because Dr. Norris did not personally assess the plaintiff); *Fleming v. Unum Life Ins. Co. of Am.*, No. SACV 17-01576-CJC, 2018 WL 6133859, at *10 (C.D. Cal. Nov. 20, 2018) (declining to credit the opinion of Dr. Norris over those of the plaintiff's treating physicians who evaluated the plaintiff in a *de novo* ERISA disability case); *Petrusich v. Unum Life Ins. Co. of Am.*, 984 F.

---

[4] *See* American Psychiatric Association, "The Principles of Medical Ethics with Annotations Especially Applicable to Psychiatry," 2013 Ed. At Sec. 7.3 *available at*
https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/Ethics/principles-medical-ethics.pdf

Supp. 2d 1112, 1120-21 (D. Or. 2013) (accusing Unum's record reviewing consultants in a case in which Dr. Brown was involved in the appeal of misstating the record in their review); *Doe v. Unum Life Ins. Co. of Am.*, 116 F. Supp. 3d 221, 231 (S.D. N.Y. 2015) (accusing Unum of engaging in "petty, if not blatantly deceptive" medical review practices by its in-house consultants including Dr. Brown); *Doe v. Unum Life Ins. Co. of Am.*, No. 13-6900, 2014 WL 6454560, at *6 (E.D. Pa. Nov. 18, 2014) (overturning Unum's denial of disability benefits because, *inter alia*, it relied on Dr. Brown's report, which was based on incomplete information).

> **D.    Ms. Dwyer's Benefits Should be Reinstated with Interest Through the Date of Judgment and She Should be Awarded her Reasonable Attorneys' Fees and Costs**

In the event the Court finds in Ms. Dwyer's favor, she should be awarded all past due LTD benefits through the date of judgment with prejudgment interest, along with her costs and reasonable attorneys' fees (*see* 29 U.S.C. § 1132(g)) in addition to having her benefits reinstated prospectively subject to the terms of the Plan. Because Unum's violations of ERISA are ongoing, and because interest and attorneys' fees continue to accrue, the precise amount of relief cannot be determined at this time. That said, Ms. Dwyer's entitlement to each form of relief can be addressed at least at part at this time, and each is addressed in turn below.

> **1.    The Court may Award Ms. Dwyer all Past Due LTD Benefits Through the Date of Judgment, or as of the Date her LTD Appeal was Denied**

When the Court considers a claim on *de novo* review, it has several options in awarding Plan benefits under Section 502(a), 29 U.S.C. § 1132(a). ERISA provides the Court with broad powers to fashion a remedy when it finds that benefits were wrongly denied. When, as is the case here, the denial of benefits was *de novo* wrong based on the factual record and not due to a purely procedural violation, the appropriate remedy is to award past due benefits to the claimant in lieu of a remand to the administrator. *See, e.g., Pesacov*, 463 F. Supp. 3d at 583-84; *Levine v. Life Ins.*

*Co. of N. Am.*, 182 F. Supp. 3d 250, 266 (E.D. Pa. 2016); *Vastag v. Prudential Ins. Co. of Am.*, No. CV 15-6197, 2018 WL 2455921, at \*14-15 (D.N.J. May 31, 2018);  *see also, Carney v. Int'l Bhd. of Elec. Workers Loc. Union 98 Pension Fund*, 66 F. Appx. 381, 386-87 (3d Cir. 2003)*; Cook*, 320 F.3d at 24-25; *Billings v. UNUM Life Ins. Co. of Am.*, 459 F.3d 1088, 1095-97 (11th Cir. 2006) (upholding award of LTD benefits to plaintiff with Meniere's disease through the date of judgment even though there was no evidence in the record that the claimant remained impaired from the illness from the date of trial to judgment).

In the present matter, Ms. Dwyer was continually receiving benefits under the Plan pursuant to its STD program through the maximum benefits date.  Unum then terminated her benefits by wrongly determining that she failed to be disabled throughout the LTD elimination period.  As previously stated, the LTD elimination period ran concurrent with the STD benefits period and Unum  found Ms. Dwyer to be disabled for the STD maximum benefits period.  Under these facts, a remand to Unum would be inequitable in that it would allow Unum a second opportunity to engage in additional wrongful conduct and further delay Ms. Dwyer's receipt of the LTD benefits to which she is entitled.

Additionally, as in the cases cited above, Ms. Dwyer's benefits should be reinstated through the date of judgment.  Ms. Dwyer continues to receive SSDI benefits through the present date which, in and of itself, is evidence that she remains disabled and that she is disabled from any gainful occupation because of, *inter alia,* her inability to meet the exertional requirements of sedentary work.  Thus, on these facts, there is probative evidence in the record for the Court to find that Ms. Dwyer is incapable of any gainful occupation as defined under the Plan.  *See Smith v. Metro. Life Ins. Co.,* 274 Fed. Appx. 251, 257-58 (4th Cir. 2008) (affirming retroactive award of LTD benefits through the date of judgment and beyond the own occupation/any occupation

transition date); *Paese,* 449 F.3d at 447-49 (awarding both own occupation and any-occupation benefits through bench trial date); *Schwartz v. Metro. Life Ins. Co.*, 463 F. Supp. 2d 971, 986 (D. Ariz. 2006) (same); *Gross v. Sun Life Assurance Co. of Canada*, No. CV 09-11678-RWZ, 2016 WL 10747783 at *1 (D. Mass. July 13, 2016).

### 2.    The Amount of Benefits Owed to Plaintiff Continues to Grow

Because Unum continues to deny Plaintiff the LTD benefits to which she is entitled, the precise amount of benefits owed to her continues to change.    The record evidence demonstrates that Ms. Dwyer's LTD benefit is 50% of her pre-disability earnings.    AR-000963   The Parties apparently agree that amount is $4,500.00.  *See* AR-001488.  Unum is entitled to offset her monthly LTD benefit by the amount of her initial monthly SSDI benefit, which is $2,059.90.  *See* Complaint Exhibit C (ECF No. 1-3).   Thus, the monthly disability benefit at issue in this case is $2,440.10 ($4,500 -  $2059.90 = $2,440.10).  That amount multiplied by the number of months for which the Court awards LTD benefits is the total amount of back benefits due to Ms. Dwyer.

### 3.    Ms. Dwyer is Entitled to Prejudgment Interest on all Back Benefits Awarded to Her

It is well-settled in this Circuit that a successful benefit plan participant is presumptively entitled to prejudgment interest on past due benefits awarded by the Court.  *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 208 (3d Cir. 2004); *Fotta v. Mine Workers Health & Ret. Fund of 1974 Trs*., 319 F.3d 612, 617 (3d Cir. 2003). The amount of interest to award is within the discretion of the trial court.  *Id*.  "In ERISA cases, '[p]rejudgment interest exists to make [plan participants and beneficiaries] whole and to preclude defendants from garnering unjust enrichment.'"  *Perez v. Koresko*, 86 F. Supp. 3d 293, 396 (E.D. Pa. 2015) (quoting *Nat'l Sec. Sys., Inc. v. Iola,* 700 F.3d 65, 102 (3d Cir.2012)).

Given that Defendant continues to withhold LTD benefits from Plaintiff it is not presently possible to calculate the full amount of prejudgment interest owed to her. Thus, Plaintiff respectfully requests that the Court award her prejudgment interest from the date her LTD Claim accrued—August 5, 2018—through the date of judgment at a rate and amount to be determined in a motion made pursuant to Federal Rule of Civil Procedure 54 following a decision on the merits of her claim.

### 4.    Ms. Dwyer Should Be Permitted to Recover her Attorneys' Fees and Costs

Lastly, Plaintiff is entitled to an award of attorneys' fees against Unum, regardless of whether she ultimately prevails in this matter. Pursuant to 29 U.S.C. § 1132(g)(1), the Court in its discretion may award attorneys' fees to a party in an action arising under 29 U.S.C. § 1132(a). This provision does not require a party to be a prevailing party in order to receive an award of fees; rather, the party must achieve "some degree of success on the merits." *Hardt v. Reliance Std. Life Ins. Co.,* 560 U.S. 242, 255 (2010). "A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Id*. (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n. 9 (1983)). Even if a party achieves "some degree of success on the merits," the Court is still required to apply the five-factor test set forth *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983). *Templin v. Indep. Blue Cross*, 785 F.3d 861, 867 (3d Cir. 2015).

In the present matter, should Plaintiff prevail in this action in whole or in part, she will have achieved "some degree of success on the merits" and should be permitted to submit a motion for her attorneys' fees. Additionally, Plaintiff is entitled to recover at least some of her attorneys'

fees as a result of various events that have occurred during this litigation.  For example, Unum initially contested the standard of review applicable to her claims.  In persuading Unum to stipulate to the *de novo* standard of review, Plaintiff has achieved some degree of success on the merits of her claim.  *See, e.g., Gross v. Sun Life Ass. Co.,* 763 F.3d 73, 78-80 (1st Cir. 2014) (noting that obtaining a favorable outcome changing the standard of review from abuse of discretion to de novo is some success on the merits); *see also, Templin*, 785 F.3d at 869 ("The 'catalyst theory' of recovery is available to the Appellants, and judicial action is not required under that theory in order to establish some degree of success").

Likewise, the Court's ruling as to the permissible scope of discovery in this case was more than purely procedural victory for Plaintiff.  *See Dwyer I*, (ECF Nos. 18 and 19). That decision resulted in a published opinion regarding the scope of permissible discovery in a *de novo* review claim arising under ERISA.  *Dwyer I* has the potential to benefit countless ERISA plan participants in this District and Circuit, as well as elsewhere.  Moreover, in this case, it led to the discovery of evidence (*i.e.*, the depositions of Drs. Norris and Brown and Mr. Phillips) undermining the validity Unum's adverse claim determination in this case.

As is the case with prejudgment interest, full briefing on Plaintiff's request for attorneys' is presently premature as the Court has not fully adjudicated the merits of her claim and her fees will grow as the parties' cross motions for judgment are briefed.  Accordingly, Plaintiff respectfully requests leave to file a motion for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54(d) following a decision on the merits of her claim.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Ms. Dwyer respectfully requests: that her Motion for Judgment be granted; that she be awarded all LTD benefits wrongly withheld from August 5, 2018 through

the date of judgment with interest; that her benefits be reinstated prospectively subject to the terms

of the Plan; that she be awarded costs and reasonable attorneys' fees; and that the Court grant all

other relief that it deems just and proper.

Respectfully submitted,

/s/ Adam H. Garner
Adam Harrison Garner (I.D. 320476)
Melanie J. Garner (I.D. 315058)
The Garner Firm, Ltd.
1515 Market Street, Suite 1200
Philadelphia, PA 19102
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

Dated: March 29, 2021